**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND; and CHARLES A. WHOBREY, as Trustee, | ) | Case No. 26-cv-11188 |
| *Plaintiffs*, | ) | Judge |
| v. | ) | Magistrate Judge |
| MIRACLE EXPRESS, INC., a Minnesota corporation, | ) | |
| *Defendant*. | ) | |

**COMPLAINT**

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund, Central States, Southeast and Southwest Areas Health and Welfare Fund, and Charles A. Whobrey, one of the Funds' present trustees, allege as follows:

**JURISDICTION AND VENUE**

1. This is an action to recover employer contributions, interest, and other related amounts owed to both Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund") and Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Health and Welfare Fund" and, together with the Pension Fund, the "Funds"), and to collect withdrawal liability (plus interest and other related amounts) owed by an employer to the Pension Fund as a result of a withdrawal from a multiemployer pension plan.

2. This action is brought and maintained in accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq*. This Court has

jurisdiction over this action under 29 U.S.C. §§ 1132(e), 1132(f) and 1451(c).

3. Venue lies in this Court under 29 U.S.C. §§ 1132(e)(2) and 1451(d), in that the Funds are ERISA employee benefit plans administered at their principal place of business in Chicago, Illinois. Venue is also proper in this Court pursuant to the forum selection clauses contained in the Pension Fund's Trust Agreement and the Health and Welfare Fund's Trust Agreement (collectively, the "Trust Agreements"), which designate this District as the appropriate forum for lawsuits to collect unpaid contributions and withdrawal liability.

## PARTIES

4. The Pension Fund is a multiemployer pension plan within the meaning of 29 U.S.C. §§ 1002(37) and 1301(a)(3), with its principal and exclusive office located at 8647 West Higgins Road in Chicago, Illinois.

5. The Pension Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT") on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing pension benefits to participants and beneficiaries of the Pension Fund and paying the administrative expenses of the Pension Fund.

6. The Health and Welfare Fund is an employee benefit plan and trust, with its principal and exclusive office located at 8647 West Higgins Road in Chicago, Illinois.

7. The Health and Welfare Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the IBT on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive

purpose of providing health and welfare benefits to participants and beneficiaries of the Health and Welfare Fund and paying the administrative expenses of the Health and Welfare Fund.

8. Plaintiff Charles A. Whobrey is a trustee and "fiduciary" of the Funds as that term is defined in 29 U.S.C. § 1002(21)(A). Pursuant to 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), Charles A. Whobrey is authorized to bring this action on behalf of the Funds and their participants and beneficiaries in his capacity as a trustee and fiduciary.

9. Defendant Miracle Express, Inc. ("Miracle Express") is a corporation organized under the laws of the State of Minnesota.

## BACKGROUND INFORMATION

### I. The collective bargaining and participation agreements.

10. Local Union No. 120 of the IBT ("Local 120") is a labor organization which represents, for the purpose of collective bargaining, certain employees of Miracle Express and employees of other employers in industries affecting interstate commerce.

11. During relevant times, Miracle Express and Local 120 have been parties to collective bargaining agreements (the "CBAs") pursuant to which Miracle Express has been required to make contributions to the Funds on behalf of certain of its covered employees represented by Local 120.

12. Miracle Express and Local 120 are also parties to a participation agreement (the "Participation Agreement") under which Miracle Express has been required to pay contributions to the Funds on behalf of certain of its covered employees represented by Local 120.

### II. The Funds' Trust Agreements.

13. Miracle Express agreed to be bound by the terms of the Funds' Trust Agreements and all rules and regulations promulgated by the Funds' trustees under said Trust Agreements.

14. Under Article III, Section 1 of the Trust Agreements, Miracle Express was required to "remit continuing and prompt Employer Contributions to the [Funds] as required by the applicable collective bargaining agreement, participation agreement, this Agreement, and/or other written agreement to which the Employer is a party . . . ."

15. Article XIV, Section 4 of the Pension Fund's Trust Agreement provides:

> Non-payment by an Employer of any moneys due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any Employer Contributions due to the Trustees from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law. The interest payable by an Employer with respect to past due Employer Contributions . . . prior to the entry of a judgment, shall be computed and charged to the Employer (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater) . . . . Any judgment against an Employer for Employer Contributions owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid Employer Contributions. The interest rate after entry of a judgment against an Employer for Employer Contributions . . . shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater), and such interest shall be compounded annually.

16. Similarly, Article XI, Section 4 of the Health and Welfare Fund's Trust Agreement provides:

> Non-payment by an Employer of any moneys due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any Employer Contributions from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as are permitted by law. The interest payable by an Employer, in accordance with the preceding sentence, shall be computed and charged to the Employer (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized rate of 7.5% (whichever is greater). Any judgment against an Employer for Employer Contributions owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid Employer Contributions. The interest rate after entry of a judgment against an Employer for contributions and/or other amounts due shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized rate of 7.5% (whichever is greater), and such interest shall be compounded annually.

17. The Funds rely upon participating employers to self-report the work history of eligible employees. The self-reporting system requires participating employers to identify those employees for whom contributions are owed and requires the employers to identify the days/weeks worked by the covered employees. Based upon the employee work history reported by the employers, the Funds bill the employers for contributions.

## II. The 2017 Lawsuit, 2017 Judgment, and 2018 Agreement.

18. On April 18, 2017, the Funds and Arthur H. Bunte, Jr., as trustee, filed a lawsuit against Miracle Express in the United States District Court for the Northern District of Illinois, *Central States, Southeast and Southwest Areas Pension Fund, et al. v. Miracle Express, Inc.*, Case

No. 17-cv-2915 (the "2017 Lawsuit"), to collect unpaid contributions owed by Miracle Express to the Funds.

19. On July 27, 2017, the district court in the 2017 Lawsuit entered a judgment against Miracle Express and in favor of the Funds (the "2017 Judgment").

20. The portion of the 2017 Judgment in favor of the Pension Fund was in the total amount of $181,414.44.

21. The portion of the 2017 Judgment in favor of the Health and Welfare Fund was in the total amount of $163,293.68.

22. In 2018, the Funds and Miracle Express entered into a settlement agreement relating to, among other things, the 2017 Judgment and the contributions found to be owed in that judgment (the "2018 Agreement").

23. Under the 2018 Agreement, Miracle Express was required to pay the Funds additional contributions, plus interest thereon, through monthly payments to each of the Funds beginning on November 1, 2018 and continuing until the Funds had been paid in full.

## STATUTORY AUTHORITY

24. 29 U.S.C. § 1145 provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

25. 29 U.S.C. § 1132(g)(2) provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan --
>
> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,

(C) an amount equal to the greater of--

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

**COUNT I – DELINQUENT CONTRIBUTIONS TO THE PENSION FUND FOR THE PERIOD OF DECEMBER 31, 2023 THROUGH SEPTEMBER 27, 2025**

26. Plaintiffs hereby reallege and incorporate each allegation made in paragraphs 1 through 25 of this Complaint as though fully set forth herein.

27. This Count is brought on behalf of the Pension Fund and its Trustee, Charles A. Whobrey.

28. Miracle Express reported the work history of its covered employees to the Pension Fund for the period of December 31, 2023 through September 27, 2025.

29. Based upon the employee work history that has been reported to the Pension Fund by Miracle Express, Miracle Express has breached the provisions of ERISA, the CBAs, the Participation Agreement, and the Pension Fund's Trust Agreement by failing to pay all of the contributions (and interest due thereon) owed to the Pension Fund for the period of December 31, 2023 through September 27, 2025.

30. Miracle Express owes the Pension Fund at least $103,651.94 for unpaid contributions (not including interest) for the period of December 31, 2023 through September 27, 2025 as a result of the conduct set forth in paragraph 29.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment in favor of the Pension Fund and against Miracle Express, pursuant to 29 U.S.C. § 1132(g)(2), for:

(i) $103,651.94 in unpaid contributions;

(ii) interest on unpaid and/or delinquent contributions computed and charged at the greater of (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) an annualized interest rate of 7.5%;

(iii) an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions; and

(iv) attorney's fees and costs.

(b) Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

(c) such further or different relief as this Court may deem proper and just.

## COUNT II –ADDITIONAL DELINQUENT CONTRIBUTIONS TO THE FUNDS UNDER THE 2018 AGREEMENT

31. Plaintiffs hereby reallege and incorporate each allegation made in paragraphs 1 through 25 of this Complaint as though fully set forth herein.

32. This Count is brought on behalf of the Pension Fund, the Health and Welfare Fund, and their Trustee, Charles A. Whobrey.

33. Under the terms of the 2018 Agreement, if Miracle Express failed to timely make its monthly payments to one or both the Funds, Miracle Express would trigger a default.

34. In the event of a default, Miracle Express would owe the Pension Fund contributions in an amount equal to $264,231.49, minus certain payments made to the Pension Fund under the 2018 Agreement, plus all interest owed to the Pension Fund under the 2018 Agreement.

35. In the event of a default, Miracle Express would owe the Health and Welfare Fund contributions in an amount equal to $566,028.46, minus certain payments made to the Health and Welfare Fund under the 2018 Agreement, plus all interest owed to the Health and Welfare Fund under the 2018 Agreement.

36. In September 2019, Miracle Express defaulted on the 2018 Agreement by failing to pay amounts owed under the 2018 Agreement and not curing the failure within the 10-day grace period provided for in the 2018 Agreement.

37. As a result of this default, Miracle Express owes the Pension Fund at least $230,705.00 for unpaid additional contributions (not including interest) under the 2018 Agreement.

38. As a result of this default, Miracle Express owes the Health and Welfare Fund at least $511,870.02 for unpaid additional contributions (not including interest) under the 2018 Agreement.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment in favor of the Funds and against Miracle Express, pursuant to 29 U.S.C. § 1132(g)(2), for:

(i) $230,705.00 in unpaid contributions to the Pension Fund and $511,870.02 in unpaid contributions to the Health and Welfare Fund;

(ii) interest on unpaid and/or delinquent contributions computed and charged at the greater of (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) an annualized interest rate of 7.5%;

(iii) for each Fund, an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions; and

(iv) attorney's fees and costs for each Fund.

(b) Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

(c) such further or different relief as this Court may deem proper and just.

**<u>COUNT III – WITHDRAWAL LIABILITY TO THE PENSION FUND</u>**

39. Plaintiffs hereby reallege and incorporate each allegation made in paragraphs 1 through 25 of this Complaint as though fully set forth herein.

40. This Count is brought on behalf of the Pension Fund and its Trustee, Charles A. Whobrey.

41. The Pension Fund determined that on or about September 28, 2025, Miracle Express permanently ceased to have an obligation to contribute to the Pension Fund and/or

permanently ceased all covered operations, thereby effecting a "complete withdrawal" from the Pension Fund within the meaning of 29 U.S.C. § 1383.

42. As a result of the complete withdrawal, the Pension Fund determined that Miracle Express incurred withdrawal liability to the Pension Fund in the principal amount of $6,540,803.57, as determined under 29 U.S.C. § 1381(b).

43. On or about March 23, 2026, Miracle Express received a notice and demand for payment of the withdrawal liability issued by the Pension Fund in accordance with 29 U.S.C. §§ 1382(2) and 1399(b)(1). In the notice and demand, the Pension Fund demanded full payment of the entire amount of the withdrawal liability by April 1, 2026, pursuant to 29 U.S.C. § 1399(c)(5)(B) and Appendix E § 5(e)(2) of the Pension Fund's Plan. The amount demanded was $6,540,803.57, the balance owed at that time on the withdrawal liability.

44. Miracle Express did not timely request review of the withdrawal liability assessment pursuant to 29 U.S.C. § 1399(b)(2)(A) and has not attempted to initiate arbitration under 29 U.S.C. § 1401(a)(1).

45. Timely requesting review is a statutory prerequisite to initiating arbitration under 29 U.S.C. § 1401(a)(1). Consequently, Miracle Express has waived its rights to dispute the withdrawal liability, and the amount demanded by the Pension Fund is due and owing pursuant to 29 U.S.C. § 1401(b)(1).

46. Miracle Express has failed to pay the required withdrawal liability payment (or any portion thereof) to the Pension Fund.

**WHEREFORE,** Plaintiffs request the following relief:

(a) A judgment in favor of the Pension Fund and against Miracle Express, pursuant to 29 U.S.C. §§ 1132(g)(2) and 1451(b), for --

(i) $6,540,803.57 in withdrawal liability;

(ii) interest on the withdrawal liability computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged;

(iii) an amount equal to the greater of interest on the past due withdrawal liability or liquidated damages of 20% of the past due withdrawal liability; and

(iv) attorney's fees and costs.

(b) Post-judgment interest computed and charged on the entire judgment at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged, compounded annually; and

(c) such further or different relief as this Court may deem proper and just.

Respectfully submitted,

*/s/ Gabrielle Pilgrim*
Gabrielle Pilgrim (ARDC #6346422)
Central States Law Department
8647 W. Higgins Road, 8th Floor
Chicago, Illinois 60631
847-939-2508
gpilgrim@centralstatesfunds.org

September 14, 2026

*ATTORNEY FOR PLAINTIFFS*