**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND; and CHARLES A. WHOBREY, as Trustee, | ) | Case No. 26-cv-11188 |
| *Plaintiffs*, | ) | Judge Elaine E. Bucklo |
| v. | ) | Magistrate Judge Beth W. Jantz |
| MIRACLE EXPRESS, INC., a Minnesota corporation, | ) | |
| *Defendant*. | ) | |

**PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT**

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund"), Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Health Fund", and together with the Pension Fund, the "Funds") and Charles A. Whobrey, as trustee, hereby move, pursuant to Rule 55(a) and (b) of the Federal Rules of Civil Procedure, for entry of default and default judgment against Defendant, Miracle Express, Inc. ("Miracle Express"). In support of this Motion, Plaintiffs state as follows:

**A. Jurisdiction and venue.**

1. On September 14, 2026, Plaintiffs filed this lawsuit against Miracle Express under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq*., to recover employer contributions owed to the Funds and to collect withdrawal liability owed to the Pension Fund, as well as interest, statutory damages, attorneys' fees and costs. (*See* Dkt. 1 ("Compl.,").)

2. This Court has jurisdiction over this action under 29 U.S.C. §§ 1132(e), 1132(f) and 1451(c).

3. The Pension Fund is a multiemployer pension plan which is administered at its principal and exclusive place of business at 8647 West Higgins Road, Chicago, Illinois. (Compl., ¶ 4.)[1] The Health Fund is an employee benefit plan and trust, with its principal and exclusive office located at 8647 West Higgins Road in Chicago, Illinois. (Compl., ¶ 6.) Accordingly, venue properly lies in this Court under 29 U.S.C. §§ 1132(e)(2) and 1451(d).

4. On the date this action was filed and to the present date, Plaintiff Charles A. Whobrey has been one of the trustees and a fiduciary of each of the Funds within the meaning of 29 U.S.C. § 1002(21)(A). (Compl., ¶ 8.) Pursuant to 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), Charles A. Whobrey is authorized to bring this action on behalf of the the Funds and their participants and beneficiaries in his capacity as trustee and fiduciary.

**B. Miracle Express is in default.**

5. On September 28, 2026, Miracle Express was served with a copy of the Summons and the Complaint. (*See* Return of Service filed September 29, 2026, Dkt. 11.)

6. To date, Miracle Express has not filed an answer or other responsive pleading to the Complaint.

7. Miracle Express is in default because it has failed to file an answer or otherwise responsive pleading within the time limit prescribed by Rule 12 of the Federal Rules of Civil Procedure.

8. By this motion, Plaintiffs ask the Court to hold Miracle Express in default under Rule 55(a) of the Federal Rules of Civil Procedure and to enter default judgment against Miracle

[1] Upon default, all factual allegations of the complaint are taken as true, except those relating to the amount of damages. See Fed R. Civ. P. 55(a); *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012).

Express under Rule 55(b) of the Federal Rules of Civil Procedure. Plaintiffs' counsel corresponded with Defendant's counsel, Todd A. Miller, who indicated that he opposes this motion.

### C. Miracle Express is liable for delinquent contributions to the Pension Fund for the period of December 31, 2023 through September 27, 2025 (Count I).

9. During relevant times, Miracle Express was bound by collective bargaining agreements (the "CBAs") with Local Union No. 120 affiliated with the International Brotherhood of Teamsters ("Local 120"), pursuant to which Miracle Express was required to make contributions to the Funds on behalf of certain of its employees. (Compl., ¶ 11; paragraph 4 of the Affidavit of Daniel Shepard, a copy of which is attached hereto as Exhibit A ("Shepard Aff., ¶ _").) During relevant times, Miracle Express and Local 120 were also parties to a participation agreement (the "Participation Agreement"), which required Miracle Express to make contributions to the Funds on behalf of employees covered by the CBAs. (Compl., ¶ 12; Shepard Aff., ¶ 4.) Miracle Express also agreed to be bound by the terms of the Funds' Trust Agreements and all rules and regulations promulgated by the Funds' Trustees thereunder. (Compl., ¶ 13; Shepard Aff., ¶ 5.)

10. The Funds rely upon participating employers to self-report the work history of eligible employees. (Compl., ¶ 17.) The self-reporting system requires participating employers to identify those employees for whom contributions are owed and requires the employers to identify the days/weeks worked by the covered employees. (*Id.*) Based upon the employee work history reported by the employers, the Funds bill the employers for contributions. (*Id.*)

11. Miracle Express reported the work history of its covered employees to the Pension Fund for the period of December 31, 2023 through September 27, 2025 (Compl., ¶ 28), but Miracle Express has failed to pay all of the contributions (and interest due thereon) for that period and, therefore, has breached the provisions of ERISA, the CBAs, the Participation Agreement, and the Pension Fund's Trust Agreement. (Compl., ¶ 29.)

### D. **Miracle Express is liable to both Funds for additional delinquent contributions under the 2018 Agreement (Count II).**

12. On April 18, 2017, the Funds filed a lawsuit against Miracle Express in the United States District Court for the Northern District of Illinois, *Central States, Southeast and Southwest Areas Pension Fund, et al. v. Miracle Express, Inc.*, Case No. 17-cv-2915 (the "2017 Lawsuit"), to collect unpaid contributions owed by Miracle Express to the Funds. (Compl., ¶ 18.) On July 27, 2017, the district court in the 2017 Lawsuit entered a judgment against Miracle Express and in favor of the Funds (the "2017 Judgment"). (Compl., ¶ 19.)

13. The portion of the 2017 Judgment in favor of the Pension Fund was in the total amount of $181,414.44. (Compl., ¶ 20.) The portion of the 2017 Judgment in favor of the Health Fund was in the total amount of $163,293.68. (Compl., ¶ 21.)

14. In 2018, the Funds and Miracle Express entered into a settlement agreement relating to, among other things, the 2017 Judgment and the contributions found to be owed in that judgment (the "2018 Agreement"). (Compl., ¶ 22; Shepard Aff., ¶ 12.) Under the 2018 Agreement, Miracle Express was required to pay the Funds additional contributions, plus interest thereon, through monthly payments to each of the Funds beginning on November 1, 2018 and continuing until the Funds had been paid in full. (Compl., ¶ 23; Shepard Aff., ¶ 12.)

15. Under the terms of the 2018 Agreement, if Miracle Express failed to timely make its monthly payments to one or both the Funds, Miracle Express would trigger a default. (Compl., ¶ 33; Shepard Aff., ¶ 13.) Under the terms of the 2018 Agreement, Miracle Express would, upon default, owe the Pension Fund contributions in an amount equal to $264,231.49, minus certain payments made to the Pension Fund under the 2018 Agreement, plus all interest owed to the Pension Fund under the 2018 Agreement. (Compl., ¶ 34; Shepard Aff., ¶ 14.) Likewise, in the event of default, Miracle Express would owe the Health Fund contributions in an amount equal to

$566,028.46, minus certain payments made to the Health Fund under the 2018 Agreement, plus all interest owed to the Health Fund under the 2018 Agreement. (Compl., ¶ 35; Shepard Aff., ¶ 14.)

16. In September 2019, Miracle Express defaulted under the 2018 Agreement by failing to pay amounts owed under the 2018 Agreement and not curing the failure within the grace period. (Compl., ¶ 36; Shepard Aff., ¶ 15.) As a result of this default, Miracle Express owes the Pension Fund at least $230,705.00 for unpaid contributions (not including interest) under the 2018 Agreement (Compl., ¶ 37; Shepard Aff., ¶ 16), and Miracle Express owes the Health Fund at least $511,870.02 for unpaid contributions (not including interest) under the 2018 Agreement. (Compl., ¶ 38; Shepard Aff., ¶ 16.) These amounts are in addition to (and separate from) the contributions that the Pension Fund seeks in Count I.

**E. Miracle Express is liable to the Pension Fund for withdrawal liability (Count III).**

17. The Pension Fund determined that on or about September 28, 2025, Miracle Express permanently ceased to have an obligation to contribute to the Pension Fund and/or permanently ceased all covered operations, thereby effecting a "complete withdrawal" from the Pension Fund within the meaning of 29 U.S.C. § 1383. (Compl., ¶ 41; Shepard Aff., ¶ 25.)

18. As a result of this complete withdrawal, Miracle Express incurred withdrawal liability to the Pension Fund in the principal amount of $6,540,803.57, as determined under 29 U.S.C. § 1381(b). (Compl., ¶ 42; Shepard Aff., ¶ 25.)

19. On March 23, 2026, Miracle Express received a notice and demand for payment of the withdrawal liability issued by the Pension Fund in accordance with 29 U.S.C. §§ 1382(2) and 1399(b)(1). (Compl., ¶ 43; Shepard Aff., ¶ 26.) In the notice and demand, the Pension Fund demanded full payment of the entire amount of the withdrawal liability, or $6,540,803.57, by April

1, 2026, pursuant to 29 U.S.C. § 1399(c)(5)(B) and Appendix E § 5(e)(2) of the Pension Fund's plan document. (*Id.*)

20. Miracle Express did not timely request review of the withdrawal liability assessment pursuant to 29 U.S.C. § 1399(b)(2)(A) and has not attempted to initiate arbitration under 29 U.S.C. § 1401(a)(1). (Compl., ¶ 44; Shepard Aff., ¶ 27.) Timely requesting review is a statutory prerequisite to initiating arbitration under 29 U.S.C. § 1401(a)(1). Consequently, Miracle Express has waived its rights to dispute the withdrawal liability, and the amount demanded by the Pension Fund is due and owing pursuant to 29 U.S.C. § 1401(b)(1).

21. Miracle Express failed to make the required withdrawal liability payments (or any portion thereof) to the Pension Fund. (Compl., ¶ 46; Shepard Aff., ¶ 28.)

**F. Calculation of the requested judgment amounts.**

a. <u>29 U.S.C. § 1132(g)(2)</u>

22. Under 29 U.S.C. § 1132(g)(2), the Funds are entitled to the following relief when prevailing in an action to recover delinquent contributions:

(i) the unpaid contributions;
(ii) interest on the unpaid contributions;
(iii) an amount equal to the greater of the interest or liquidated damages as provided under the plan in an amount not in excess of twenty percent (20%) of the unpaid contributions;
(iv) reasonable attorneys' fees and costs; and
(v) such other relief as the court deems appropriate.

As such, Miracle Express is liable for the amounts listed immediately above in relation to Counts I and II. Further, pursuant to 29 U.S.C. § 1451(b), the failure of an employer to pay withdrawal liability payments when due is treated in the same manner as delinquent contributions. *Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1377 (7th Cir. 1992). Thus, under Count III as well, the Pension Fund is entitled to the amounts immediately listed above (replacing the

word "contributions" with "withdrawal liability"). An award for the amounts identified in 29 U.S.C. § 1132(g)(2) is mandatory when a fund prevails in an action to collect contributions and/or withdrawal liability. *Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1156 (7th Cir. 1989) (en banc).

b. <u>Count I: Delinquent Contributions to the Pension Fund for the period of December 31, 2023 through September 27, 2025</u>

**i. Contributions, interest, liquidated damages, and attorneys' fees and costs due to the Pension Fund under Count I**

23. Miracle Express owes the Pension Fund at least $103,651.94 for unpaid contributions (not including interest) for the period of December 31, 2023 through September 27, 2025 as a result of the conduct set forth in paragraph 11. (Compl., ¶ 30; Shepard Aff., ¶ 6.)

24. Under 29 U.S.C. § 1132(g)(2), interest is determined using the rate provided under the Pension Fund's Trust Agreement.

25. Under Article XIV, Section 4 of the Pension Fund's Trust Agreement, pre-judgment interest on delinquent contributions is computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth day of the month for which the interest is charged; or (b) an annualized rate of seven-and-one-half percent (7.5%). (Compl., ¶ 15; Shepard Aff., ¶ 7.)

26. Accordingly, Miracle Express owes the Pension Fund $10,883.15 in accrued interest through November 23, 2026 in connection with the $103,651.94 in unpaid contributions owed to the Pension Fund. (Shepard Aff., ¶ 8.)

27. Under 29 U.S.C. § 1132(g)(2), the Pension Fund is entitled to the greater of interest on the unpaid contributions or liquidated damages of up to twenty percent (20%) of the unpaid contributions as provided under the plan. Article XIV, Section 4 of the Pension Fund's Trust Agreement provides for liquidated damages in an amount equal to the greater of either the unpaid

interest or twenty percent (20%) of the unpaid contributions. (Compl., ¶ 15; Shepard Aff., ¶ 9.)

28. Here, 20% of the unpaid contributions is $20,730.39 (i.e., $103,651.94 x 20%), which is greater than the amount of delinquent interest on the unpaid contributions ($10,883.15). (Shepard Aff., ¶ 10.) Therefore, Miracle Express owes $20,730.39 in liquidated damages in relation to Count I. (*Id.*)

29. In relation to Count I, Miracle Express also owes the Pension Fund attorneys' fees in the total amount of $1,010.00 and costs in the total amount of $243.33. (Paragraphs 5 and 7 of the Affidavit of Gabrielle Pilgrim, a copy of which is attached hereto as Exhibit B ("Pilgrim Aff., ¶ _").)

30. Under the Pension Fund's Trust Agreement, interest on a judgment entered against an employer for delinquent contributions is computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged; or (ii) at an annualized interest rate of seven-and-one-half percent (7.5%), and with such interest to be compounded annually. (Compl., ¶ 15; Shepard Aff., ¶ 11.)

c. <u>Count II: Delinquent Contributions to the Funds under the 2018 Agreement</u>

**i. Contributions, interest, liquidated damages, and attorneys' fees and costs due to the Pension Fund under Count II**

31. As outlined above, Miracle Express triggered a default under the 2018 Agreement, and as a result, Miracle Express owes the Pension Fund at least $230,705.00 for additional unpaid contributions. (Compl., ¶¶ 36-37; Shepard Aff., ¶¶ 15-16.)

32. As outlined above, under 29 U.S.C. § 1132(g)(2), interest is determined using the rate provided under the Pension Fund's Trust Agreement.

33. As outlined above, under Article XIV, Section 4 of the Pension Fund's Trust Agreement, pre-judgment interest on delinquent contributions is computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth day of the month for which the interest is charged; or (b) an annualized rate of seven-and-one-half percent (7.5%). (Compl., ¶ 15; Shepard Aff., ¶ 7.)

34. Accordingly, Miracle Express owes the Pension Fund $145,249.38 in accrued interest through November 23, 2026 in connection with the $230,705.00 in additional unpaid contributions to the Pension Fund. (Shepard Aff., ¶ 17.)

35. As outlined above, under 29 U.S.C. § 1132(g)(2), the Pension Fund is entitled to the greater of interest on the unpaid contributions or liquidated damages of up to twenty percent (20%) of the unpaid contributions as provided under the plan. Article XIV, Section 4 of the Pension Fund's Trust Agreement provides for liquidated damages in an amount equal to the greater of either the unpaid interest or twenty percent (20%) of the unpaid contributions. (Compl., ¶ 15; Shepard Aff., ¶ 18.)

36. Here, 20% of the additional unpaid contributions is $46,141.00 (i.e., $230,705.00 x 20%), which is less than the amount of delinquent interest on the unpaid additional contributions ($145,249.38). (Shepard Aff., ¶ 19.) Therefore, Miracle Express owes the Pension Fund $145,249.38 in liquidated damages in relation to Count II. (*Id.*)

37. In relation to Count II, Miracle Express also owes the Pension Fund attorneys' fees in the total amount of $505.00 and costs in the total amount of $121.67. (Pilgrim Aff., ¶¶ 5, 7.)

38. As outlined above, under the Pension Fund's Trust Agreement, interest on a judgment entered against an employer for delinquent contributions is computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two

percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged; or (ii) at an annualized interest rate of seven-and-one-half percent (7.5%), and with such interest to be compounded annually. (Compl., ¶ 15; Shepard Aff., ¶ 11.)

**ii. Contributions, interest, liquidated damages, and attorneys' fees and costs due to the Health Fund under Count II**

39. As outlined above, Miracle Express triggered a default under the 2018 Agreement, and as a result, Miracle Express owes the Health Fund at least $511,870.02 for unpaid contributions (not including interest). (Compl., ¶¶ 36, 38; Shepard Aff., ¶¶ 15-16.)

40. Pursuant to 29 U.S.C. § 1132(g)(2), the Health Fund charges and computes interest at the rate set by the Health Fund's Trust Agreement.

41. Under Article XI, Section 4 of the Health Fund's Trust Agreement, the Health Fund computes and charges pre-judgment interest on delinquent contributions at the greater of (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged; or (b) an annualized interest rate of seven-and-one-half percent (7.5%). (Compl., ¶ 16; Shepard Aff., ¶ 20.)

42. Accordingly, Miracle Express owes the Health Fund $322,267.80 in accrued interest through November 23, 2026 in connection with the $511,870.02 in unpaid contributions owed to the Health Fund. (Shepard Aff., ¶ 21.)

43. Under 29 U.S.C. § 1132(g)(2), the Health Fund is entitled to the greater of interest on the unpaid contributions or liquidated damages of up to twenty percent (20%) of the unpaid contributions as provided under the plan. Article XI, Section 4 of the Health Fund's Trust Agreement provides for liquidated damages in an amount equal to the greater of either the unpaid

interest or twenty percent (20%) of the unpaid additional contributions. (Compl., ¶ 16; Shepard Aff., ¶ 22.)

44. Here, 20% of the unpaid additional contributions is $102,374.00 (i.e., $511,820.02 x 20%), which is less than the amount of delinquent interest on the unpaid additional contributions ($322,267.80). (Shepard Aff., ¶ 23.) Therefore, Miracle Express owes the Health Fund $322,267.80 in liquidated damages in relation to Count II. (*Id.*)

45. In relation to Count II, Miracle Express also owes the Health Fund attorneys' fees in the total amount of $505.00 and costs in the total amount of $121.67. (Pilgrim Aff., ¶¶ 5, 7.)

46. Under the Health Fund's Trust Agreement, interest on a judgment entered against an employer for delinquent contributions to the Health Fund is computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged; or (ii) at an annualized interest rate of seven-and-one-half percent (7.5%), and with such interest to be compounded annually. (Compl., ¶ 16; Shepard Aff., ¶ 24.)

d. <u>Count III: Withdrawal Liability to the Pension Fund</u>

**i. Withdrawal liability, interest, liquidated damages, and attorneys' fees and costs due to the Pension Fund under Count III**

47. Pursuant to 29 U.S.C. § 1132(g)(2), Miracle Express owes the Pension Fund the principal balance of $6,540,803.57 for the withdrawal liability. (Compl., ¶¶ 42-46; Shepard Aff., ¶¶ 25-28.)

48. Under 29 U.S.C. § 1132(g)(2), interest is determined using the rate provided under the Pension Fund's Trust Agreement.

49. Under Article XIV, Section 4 of the Pension Fund's Trust Agreement, pre-

judgment interest on unpaid withdrawal liability is computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth day of the month for which the interest is charged. (Shepard Aff., ¶ 29.)

50. Accordingly, Miracle Express owes the Pension Fund $372,825.81 in accrued interest through November 23, 2026 in connection with the unpaid withdrawal liability. (Shepard Aff., ¶ 30.)

51. Under 29 U.S.C. § 1132(g)(2), the Pension Fund is entitled to the greater of interest on the unpaid withdrawal liability or liquidated damages of up to twenty percent (20%) of the withdrawal liability as provided under the plan. Article XIV, Section 4 of the Pension Fund's Trust Agreement provides for liquidated damages in an amount equal to the greater of either the unpaid interest or twenty percent (20%) of the withdrawal liability. (Compl., ¶ 15; Shepard Aff., ¶ 31.)

52. Here, 20% of the withdrawal liability is $1,308,160.71 (i.e., $6,540,803.57 x 20%), which is greater than the amount of delinquent interest on the withdrawal liability ($372,825.81). (Shepard Aff., ¶ 32.) Therefore, Miracle Express owes $1,308,160.71 in liquidated damages on the withdrawal liability. (*Id.*)

53. In relation to Count III, Miracle Express also owes the Pension Fund attorneys' fees in the total amount of $1,010.00 and costs in the total amount of $243.33. (Pilgrim Aff., ¶¶ 5, 7.)

54. Under the Pension Fund's Trust Agreement, interest on a judgment entered against an employer for withdrawal liability is computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, N.A. for

the fifteenth (15th) day of the month for which the interest is charged, compounded annually. (Shepard Aff., ¶ 33.)

**G. Request for Default Judgment**

55. Based on the foregoing, Plaintiffs ask this Court to find Miracle Express in default and enter a default judgment against Miracle Express. The amount of the judgment requested in favor of the Pension Fund is $8,881,392.66, plus post-judgment interest. The amount of judgment requested in favor of the Health Fund is $1,157,032.29, plus post-judgment interest.

56. A copy of a proposed judgment order is attached hereto as Exhibit C. The proposed judgment order has also been submitted to the Court's proposed order email address.

**WHEREFORE**, Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund, Central States, Southeast and Southwest Areas Health and Welfare Fund, and Charles A. Whobrey, Trustee, respectfully request that this Court:

(a) Enter default against Defendant Miracle Express, Inc.;

(b) Enter a default judgment against Defendant Miracle Express, Inc. and in favor of Plaintiffs Central States, Southeast and Southwest Areas Pension Fund and Charles A. Whobrey, Trustee, in the total amount of $8,881,392.66. This total amount consists of: (i) unpaid contributions and withdrawal liability principal of $6,875,160.51 (i.e., the total principal due to the Pension Fund under Count I ($103,651.94), Count II ($230,705.00), and Count III ($6,540,803.57)); (ii) pre-judgment interest through November 23, 2026 in the amount of $528,958.34 (i.e., the total pre-judgment interest due to the Pension Fund under Count I ($10,883.15), Count II ($145,249.38), and Count III ($372,825.81)); (iii) liquidated damages in the amount of $1,474,140.48 (i.e., the total liquidated damages due to the Pension Fund under Count I ($20,730.39), Count II ($145,249.38), and Count III ($1,308,160.71)); (iv) attorneys' fees

in the amount of $2,525.00 (i.e., the total in fees due to the Pension Fund under Count I ($1,010.00), Count II ($505.00) and Count III ($1,010.00)); and (v) costs in the amount of $608.33 (i.e., the total in costs due to the Pension Fund under Count I ($243.33), Count II ($121.67), and Count III ($243.33));

(c) Award Plaintiff Central States, Southeast and Southwest Areas Pension Fund post-judgment interest on the portion ($658,349.24) of the $8,881,392.66 judgment balance associated with unpaid contributions and related amounts under Counts I and II at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged, or (ii) at an annualized interest rate of seven-and-one-half percent (7.5%), and with such interest to be compounded annually;

(d) Award Plaintiff Central States, Southeast and Southwest Areas Pension Fund post-judgment interest on the portion ($8,223,043.42) of the $8,881,392.66 judgment balance associated with unpaid withdrawal liability and related amounts under Count III at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged, compounded annually;

(e) Enter a default judgment for unpaid contributions and related amounts under Count II against Miracle Express, Inc. and in favor of Plaintiffs Central States, Southeast and Southwest Areas Health and Welfare Fund and Charles A. Whobrey, Trustee, in the total amount of $1,157,032.29. This total amount consists of: (i) unpaid contributions of $511,870.02 (the total principal due to the Health Fund under Count II); (ii) interest through November 23, 2026 in the amount of $322,267.80 (the total pre-judgment interest due to the Health Fund under Count II);

(iii) liquidated damages in the amount of $322,267.80 (the total liquidated damages due to the Health Fund under Count II); (iv) attorneys' fees in the amount of $505.00 (the total in fees due to the Health Fund under Count II); and (v) costs in the amount of $121.67 (the total in costs due to the Health Fund under Count II);

(f) Award Plaintiff Central States, Southeast and Southwest Areas Health and Welfare Fund post-judgment interest on the judgment balance of $1,157,032.29 under Count II at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged, or (ii) at an annualized interest rate of seven-and-one-half percent (7.5%), and with such interest to be compounded annually; and

(g) Such further or different relief as this Court may deem proper and just.

Respectfully submitted,

*/s/ Gabrielle Pilgrim*
Gabrielle Pilgrim (ARDC #6346422)
CENTRAL STATES FUNDS
Law Department
8647 W. Higgins Road, 8th Floor
Chicago, Illinois 60631
847-939-2508
gpilgrim@centralstatesfunds.org
*ATTORNEY FOR PLAINTIFFS*

November 24, 2026

**CERTIFICATE OF SERVICE**

I, Gabrielle Pilgrim, one of the attorneys for Plaintiffs, certify that on November 24, 2026, I caused the foregoing *Motion for Entry of Default and Default Judgment* to be filed electronically. This filing was served upon all parties indicated on the electronic filing receipt via the Court's electronic filing system and mailed via UPS Second Day Air to:

Miracle Express, Inc.
c/o Stan Krupke, as Chief Executive Officer
18200 Eidelweiss Street
Northwest, Oak Grove, MN 55011

/s/ *Gabrielle Pilgrim*
Gabrielle Pilgrim
One of the Funds' Attorneys