# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND; and CHARLES A. WHOBREY, as Trustee, | ) | Case No. 26-cv-11188 |
| *Plaintiffs*, | ) | Judge Elaine E. Bucklo |
| v. | ) | Magistrate Judge Beth W. Jantz |
| MIRACLE EXPRESS, INC., a Minnesota corporation, | ) | |
| *Defendant*. | ) | |

**AFFIDAVIT OF DANIEL SHEPARD**

I, Daniel Shepard, having been duly sworn on oath, depose and state as follows:

1. I am the Division Manager of the Collections Division at Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund") and Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Health Fund," and together with the Pension Fund, the "Funds"). I have personal knowledge of the facts set forth below and would be competent to testify as to these facts if called as a witness in this matter.

2. I am responsible for managing the collection of delinquent contributions owed to the Funds and the collection of withdrawal liability owed to the Pension Fund, including the delinquencies owed by Miracle Express, Inc. ("Miracle Express"). If an employer has withdrawn from the Pension Fund, one of my staff members or I calculate the withdrawal liability due and notify the employer of the assessment in accordance with 29 U.S.C. § 1399(b)(1).

3. The files maintained for every delinquent or withdrawn employer, including the files for Miracle Express, are under my dominion and control.

**Background**

4. As the Funds' records show, Miracle Express has been a party to a series of collective bargaining agreements, as well as a participation agreement, with Local Union No. 120, a labor organization affiliated with the International Brotherhood of Teamsters, under which Miracle Express has been required (and remains required) to make contributions to the Health Fund on behalf of certain of its employees. The same agreements required Miracle Express to make contributions to the Pension Fund, until Miracle Express's September 28, 2025 complete withdrawal from the Pension Fund, discussed below.

5. As the Funds' records show, Miracle Express agreed to be bound by the terms of the Funds' Trust Agreements.

**Count I: Delinquent contributions to the Pension Fund for the period of December 31, 2023 through September 27, 2025**

6. Miracle Express owes the Pension Fund at least $103,651.94 for unpaid contributions (not including interest) for the period of December 31, 2023 through September 27, 2025.

7. Under the Pension Fund's Trust Agreement, pre-judgment interest on unpaid contributions is computed and charged at the greater of: (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth day of the month for which the interest is charged; or (b) an annualized rate of seven-and-one-half percent (7.5%). (Article XIV, Section 4 of the Pension Fund's Trust Agreement, a copy of which is attached hereto as Exhibit 1.)

8. Miracle Express owes the Pension Fund $10,883.15 in accrued interest through November 23, 2026, in connection with the $103,651.94 in unpaid contributions to the Pension Fund. (A true and accurate copy of the interest calculation is attached hereto as Exhibit 2.)

9. The Pension Fund's Trust Agreement provides that any judgment for delinquent contributions shall include an amount equal to the greater of either the unpaid interest or liquidated damages equal to twenty percent (20%) of the delinquent contributions. (Ex. 1, Article XIV, Section 4.)

10. Here, 20% of the $103,651.94 in unpaid contributions is $20,730.39 (i.e., $103,651.94 x 20%), which is greater than the amount of delinquent interest on the unpaid contributions ($10,883.15). Therefore, Miracle Express owes $20,730.39 in liquidated damages on the unpaid contributions.

11. Under the Pension Fund's Trust Agreement, interest on a judgment entered against an employer for delinquent contributions is computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged; or (ii) at an annualized interest rate of 7.5%, and with such interest to be compounded annually. (Ex. 1, Article XIV, Section 4.)

**Count II: Additional Delinquent Contributions to the Funds under the 2018 Agreement**

12. In 2018, the Funds and Miracle Express entered into a settlement agreement (the "2018 Agreement"). Under the 2018 Agreement, Miracle Express was required to pay the Funds additional contributions, plus interest thereon, through monthly payments to each of the Funds beginning on November 1, 2018 and continuing until the Funds had been paid in full.

13. Under the terms of the 2018 Agreement, if Miracle Express failed to timely make its monthly payments to one or both the Funds, Miracle Express would trigger a default.

14. The 2018 Agreement provides that, in the event of a default, Miracle Express would owe the Pension Fund contributions in an amount equal to $264,231.49, minus certain payments made to the Pension Fund under the 2018 Agreement, plus all interest owed to the Pension Fund

under the 2018 Agreement, and Miracle Express would owe the Health Fund contributions in an amount equal to $566,028.46, minus certain payments made to the Health Fund under the 2018 Agreement, plus all interest owed to the Health Fund under the 2018 Agreement.

15. In September 2019, Miracle Express defaulted on the 2018 Agreement by failing to pay amounts owed under the 2018 Agreement and not curing the failure within the 10-day grace period provided for in the 2018 Agreement.

16. As a result of the default, Miracle Express owes the Pension Fund $230,705.00 for unpaid additional contributions (not including interest) under the 2018 Agreement, and Miracle Express owes the Health Fund $511,870.02 for unpaid additional contributions (not including interest) under the 2018 Agreement. (A true and accurate copy of the calculation of the unpaid additional contributions is attached hereto as Exhibit 3.)

17. Using the interest rates described in paragraph 7 above, Miracle Express owes the Pension Fund $145,249.38 in accrued interest through November 23, 2026, in connection with the $230,705.00 in unpaid additional contributions. (A true and accurate copy of the interest calculation is attached hereto as Exhibit 4.)

18. As discussed, the Pension Fund's Trust Agreement provides that any judgment for delinquent contributions shall include an amount equal to the greater of either the unpaid interest or liquidated damages equal to twenty percent (20%) of the delinquent contributions. (Ex. 1, Article XIV, Section 4.)

19. Miracle Express owes the Pension Fund $145,249.38 in liquidated damages on unpaid additional contributions because the amount of delinquent interest ($145,249.38) is greater than 20% of the unpaid additional contributions, which is $46,141.00 (i.e., $230,705.00 x 20%).

20. Under the Health Fund's Trust Agreement, the Health Fund computes and charges pre-judgment interest on delinquent contributions at the greater of (a) an annualized interest rate

equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged; or (b) an annualized interest rate of seven-and-one-half percent (7.5%). (Article XI, Section 4 of the Health Fund's Trust Agreement, a copy of which is attached hereto as Exhibit 5.)

21. Miracle Express owes the Health Fund $322,267.80 in accrued interest through November 23, 2026 in connection with the $511,870.02 in unpaid additional contributions to the Health Fund. (A true and accurate copy of the interest calculation is attached hereto as Exhibit 6.)

22. The Health Fund's Trust Agreement provides that any judgment for delinquent contributions shall include an amount equal to the greater of either the unpaid interest or liquidated damages equal to twenty percent (20%) of the delinquent contributions. (Ex. 5, Article XI, Section 4.)

23. Here, 20% of the unpaid additional contributions is $102,374.00 (i.e., $511,870.02 x 20%), which is less than the amount of delinquent interest on the unpaid additional contributions ($322,267.80). Therefore, Miracle Express owes the Health Fund $322,267.80 in liquidated damages on the unpaid contributions.

24. Under the Health Fund's Trust Agreement, interest on a judgment entered against an employer for delinquent contributions to the Health Fund is computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged; or (ii) at an annualized interest rate of 7.5%, and with such interest to be compounded annually. (Ex. 5, Article XI, Section 4.)

**Count III: Withdrawal Liability to the Pension Fund**

25. The Pension Fund determined that on or about September 28, 2025, Miracle Express incurred withdrawal liability to the Pension Fund in the principal amount of $6,540,803.57.

26. On March 23, 2026, Miracle Express received a notice and demand for payment of the withdrawal liability issued by the Pension Fund in accordance with 29 U.S.C. §§ 1382(2) and 1399(b)(1). In the notice and demand, the Pension Fund demanded full payment of the entire amount of the withdrawal liability by April 1, 2026, pursuant to 29 U.S.C. § 1399(c)(5)(B) and Appendix E § 5(e)(2) of the Pension Fund's Plan.

27. Miracle Express did not timely request review of the withdrawal liability assessment pursuant to 29 U.S.C. § 1399(b)(2)(A) and has not attempted to initiate arbitration under 29 U.S.C. § 1401(a)(1).

28. Miracle Express has failed to make the required withdrawal liability payment (or any portion thereof) to the Pension Fund.

29. Under the Pension Fund's Trust Agreement, pre-judgment interest on past due withdrawal liability is computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth day of the month for which the interest is charged. (Ex. 1, Article XIV, Section 4.)

30. Using this rate, through November 23, 2026, Miracle Express owes the Pension Fund interest on the unpaid withdrawal liability in the total amount of $372,825.81. (A true and accurate copy of the interest calculation is attached hereto as Exhibit 7.)

31. The Pension Fund's Trust Agreement provides that any judgment for withdrawal liability shall include an amount equal to the greater of either the unpaid interest or liquidated

damages equal to twenty percent (20%) of the unpaid withdrawal liability. (Ex. 1, Article XIV, Section 4.)

32. Here, 20% of the withdrawal liability is $1,308,160.71 (i.e., $6,540,803.57 x 20%), which is greater than the amount of delinquent interest on the unpaid withdrawal liability ($372,825.81). Therefore, Miracle Express owes $1,308,160.71 in liquidated damages on the withdrawal liability.

33. Under the Pension Fund's Trust Agreement, interest on a judgment entered against an employer for withdrawal liability is computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, N.A. for the fifteenth (15th) day of the month for which the interest is charged, compounded annually. (Ex. 1, Article XIV, Section 4.)

**FURTHER AFFIANT SAYETH NOT.**

Daniel Shepard

Subscribed and sworn to before me,
a Notary Public, this 23 day of
November, 2026.

Notary Public

Official Seal
ELLEN HUNTER
Notary Public, State of Illinois
Commission No. 975847
My Commission Expires July 31, 2027

# EXHIBIT 1

# TRUST AGREEMENT

## CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND

**AS AMENDED THROUGH**
**DECEMBER 13, 2022**

# REVISED AND AMENDED TRUST AGREEMENT FOR CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND

This **AGREEMENT** and **DECLARATION** of **TRUST**, made and entered into this sixteenth day of March, 1955 by and between **CENTRAL CONFERENCE OF TEAMSTERS**, **SOUTHERN CONFERENCE OF TEAMSTERS**, and their affiliated Local Unions, hereinafter referred to collectively as the **"UNION"**, and the **SOUTHERN MOTOR CARRIERS LABOR RELATIONS ASSOCIATION; MOTOR CARRIERS EMPLOYERS CONFERENCE - CENTRAL STATES; CARTAGE EMPLOYERS MANAGEMENT ASSOCIATION; CLEVELAND DRAYMEN ASSOCIATION, INC.**; and **NORTHERN OHIO MOTOR TRUCK ASSOCIATION, INC.**; for and on behalf of themselves, their constituent members, and such other Employers who are or may become parties hereto, hereinafter collectively referred to as the **"EMPLOYER"**, and the individual Trustees, hereinafter referred to as the **"TRUSTEES"**, selected as hereinafter described, accepting the Trust obligations herein declared:

**W I T N E S S E T H:**

**WHEREAS**, the Union and the Employer believe that it is in the best interest of the Employees of such Employer represented by the Union, and the families and dependents of such Employees, to provide for retirement benefits and for that purpose to establish a Trust Fund as hereinafter provided; and

**WHEREAS**, the Union and the Employer have heretofore entered into collective bargaining agreements under the terms of which it is provided that the Employer shall contribute certain agreed-upon sums of money therein set forth to a Pension Fund, which shall be known as the **CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND**; and

**WHEREAS**, Employee Trustees and Employer Trustees have been designated as the Trustees of the Trust in accordance with the provisions of such Agreement.

**NOW THEREFORE**, for and in consideration of the premises and of the mutual covenants and agreements herein contained, the Union and the Employer hereby accept and adopt all of the provisions herein contained, and the Trustees declare that they will receive and hold the Employer Contributions and any other money or property which may come into their hands as Trustees (all such Employer Contributions, money and property being hereinafter referred to as "the Trust Fund"), with the powers and duties, uses, and purposes as hereinafter set forth, to-wit:

## ARTICLE I
## DEFINITION OF TERMS

**Sec. 1. Employer -** The term "Employer" as used herein shall mean any employer who is bound by this Agreement and a) a collective bargaining agreement with the Union and/or a participation agreement and/or any other agreement requiring Employer Contributions to the Fund, or b) any employer not presently a party to such collective bargaining agreement and/or participation agreement and/or other written agreement requiring Employer Contributions to the Fund who satisfies the requirements for participation as established by the Trustees and agrees to be bound by this Agreement. As indicated in section 3(b) below, the term "Employer" also includes a Union, but only with respect to those of its Employees that participate in the Fund.

**Sec. 2. Union -** The term "Union" as used herein shall mean those Local Unions, Joint Councils or other union organizations affiliated with the International Brotherhood of Teamsters and such other Local Unions, Joint Councils or other union organizations not affiliated with the International Brotherhood of Teamsters as the Trustees may agree upon, provided that all such determinations by the Board of Trustees shall be binding upon all participants and beneficiaries of the Fund and upon all other entities having or claiming any interest in the Fund.

**Sec. 3. Employee -** The term "Employee" as used herein shall include:

(a) A person who is employed under the terms and conditions of a collective bargaining agreement entered into between an Employer as herein defined and a Union as herein defined, and on whose behalf Employer Contributions are required by such collective bargaining agreement, this Agreement, a participation agreement or other written agreement or by applicable law to be made to the Fund by the Employer; or

(b) All persons employed by the Union, upon being proposed by the Union and after acceptance by the Trustees; and as to such Union personnel the Union shall be considered an Employer within the meaning of section 1 of this Article solely for the purposes of Employer Contributions and shall, on behalf of such personnel, make payments to the Trust at the times and at the rate of payment equal to that made by any other Employer who is a party to the Trust for the same benefits; or

(c) All persons employed by the Central States, Southeast and Southwest Areas Pension Fund or Central States, Southeast and Southwest Areas Health and Welfare Fund upon acceptance by the Trustees; and as to such Trust personnel the Trustees shall be deemed an Employer, solely for the purpose of contributions, within the meaning of this Agreement and Declaration of Trust and shall, on behalf of such personnel, make payments to the Trust at the times and at the rate of payment equal to that made by any other Employer who is a party to the Trust for the same benefits.

(d) All persons who are Trustees of Central States, Southeast and Southwest Areas Pension Fund or Central States, Southeast and Southwest Areas Health and Welfare Fund upon acceptance by the Trustees, as hereinafter defined; and on behalf of such persons who are Trustees, their Employers shall make or be presently required to make Employer Contributions to the Trust at the times and at the rate of payment equal to that required by any other Employer who is a party to the Trust for the same benefits.

(e) In all instances the common law test or the applicable statutory definition of master-servant relationship shall control employee status;

(f) The continuation of employee status once established shall be subject to such reasonable rules as the Trustees may adopt according to law.

**Sec. 4. Trustees** - The term "Trustees" or "Board" as used herein shall mean the Trustees designated in this Agreement and Declaration of Trust together with their successors designated and appointed in accordance with the terms of this Agreement.

**Sec. 5. Trust Fund or Fund** - The term "Trust Fund" or "Fund" as used herein shall refer to all property of whatever nature which shall be in said Trust created by this Agreement.

**Sec. 6. Employer Contributions** - The term "Employer Contributions" as used herein shall mean any payments of any type made by Employers to the Trust Fund herein created, including pension contribution payments, withdrawal liability payments and any damages owed to the Fund.

## ARTICLE II
## CREATION OF TRUST FUND AND BOARD OF TRUSTEES

**Sec. 1. Designation -** The Union and the Employer hereby create and establish, with the Trustees herein provided for, a Trust to be known as the Central States, Southeast and Southwest Areas Pension Fund which shall be comprised of assets derived from Employer Contributions made pursuant to the collective bargaining agreement and/or a participation agreement between the parties and/or this Agreement or any other written agreement (plus any additional sum or sums from Employer Contributions which may hereafter be agreed upon by the Employers and the Union set forth in written collective bargaining agreements, participation agreements and/or this Agreement or other written agreement)and such other amounts Employers are required to pay to the Fund by contract or statute, together with all insurance and annuity contracts (including dividends, refunds, or other sums payable to the Trustees on account of such insurance and annuity contracts) and all investments made and held by the Trustees on account of such insurance and annuity contracts, all investments made and held by the Trustees, all moneys received by the Trustees as Employer Contributions or as income from investments made and held by the Trustees or otherwise, and any other property received and held by the Trustees for the uses, purposes, and trusts set forth in this Agreement and Declaration of Trust, where any of the foregoing is derived from the Employer Contributions.

**Sec. 2. Board of Trustees -** There is hereby created a Board of Trustees consisting of four persons representative of the Employers and four persons representative of the Employees.

The appointment of each of the four Employer Trustees that was made prior to September 16, 2009, and that is still in effect on September 16, 2009, shall remain in effect until expiration of the term of office of such Trustee, except in the event of vacancy or removal during the term of office. In the event of a vacancy or removal occurring during a term of office in effect on September 16, 2009, the nominating authority (if applicable) and appointing authority for a Successor Trustee shall be vested in, and exercised by, the nominating authority (if applicable) and appointing authority that otherwise applies to such position upon the expiration of such term of office.

Upon expiration of the term of office of an Employer Trustee on March 31, 2010 (and on March 31 of every fifth year after each such year), the authority and responsibility to appoint such Employer Trustee to serve for a five-year term of office that will commence on April 1, 2010 (and on April 1 of every fifth year after such year) shall be vested in, and exercised by majority action by,

the other Employer Trustees then serving as Trustees, and the Successor Trustees of those Employer Trustees.

Upon expiration of the term of office of an Employer Trustee on March 31, 2011 (and on March 31 of every fifth year after each such year), The Association of Food and Dairy Retailers, Wholesalers and Manufacturers shall nominate an Employer Trustee to serve for a five-year term of office that will commence on April 1, 2011 (and on April 1 of every fifth year after such year). The power to approve said nominee for appointment shall be vested in, and exercised through majority action by, the other Employer Trustees then serving as Trustees, and the Successor Trustees of those Employer Trustees.

Upon expiration of the term of office of an Employer Trustee on March 31, 2012 (and on March 31 of every fifth year after each such year), ABF Freight System, Inc. shall nominate an Employer Trustee to serve for a five-year term of office that will commence on April 1, 2012 (and on April 1 of every fifth year after such year). The power to approve said nominee for appointment shall be vested in, and exercised through majority action by, the other Employer Trustees then serving as Trustees, and the Successor Trustees of those Employer Trustees.

Upon expiration of the term of office of an Employer Trustee on March 31, 2013 (and on March 31 of every fifth year after each such year), the authority and responsibility to appoint such Employer Trustee to serve for a five-year term of office that will commence on April 1, 2013 (and on April 1 of every fifth year after such year) shall be vested in, and exercised by majority action by, the other Employer Trustees then serving as Trustees, and the Successor Trustees of those Employer Trustees.

The Employee Trustee shall be appointed, on behalf and as representative of the Union, by the Central Trustee Appointment Board and the Southern Trustee Appointment Board, each as appointing authority, for terms of office hereinafter specified in this Section 2 of Article II of this Agreement.

In accordance with prior amendments of this Agreement, the term of office of each Trustee is a five-year period, subject to reappointment of the same Trustee or appointment of another Trustee by the appointing entity for that Trustee position at the end of such five-year period, and also subject to appointment of a Successor Trustee pursuant to this Agreement in the event of a vacancy during a five-year term of office.

Upon expiration of the term of office of an Employee Trustee on March 31 of each of 2009, 2010 and 2012 (and on March 31 of

every fifth year after each such year), the Central Trustee Appointment Board shall appoint an Employee Trustee to serve for a five-year term of office that will commence, respectively, on April 1 of 2009, 2010 and 2012 (and on April 1 of every fifth year after each such year), which appointment will be made in accordance with procedures established by the Board of Trustees. Upon expiration of the term of office of an Employee Trustee on March 31, 2011 (and on March 31 of every fifth year after 2011), the Southern Trustee Appointment Board shall appoint an Employee Trustee to serve for a five-year term of office that will commence on April 1, 2011 (and on April 1 of every fifth year after 2011), which appointment will be made in accordance with procedures established by the Board of Trustees. The authority and responsibility of the Central Trustee Appointment Board and the Southern Trustee Appointment Board, including procedures for appointment of the members of each such board and procedures for each such board's appointment of Employee Trustees, shall be established by the Board of Trustees (with appropriate abstentions), which shall be solely authorized and responsible to determine with finality whether or not any individual has been duly appointed as a member of the Central Trustee Appointment Board or the Southern Trustee Appointment Board in accordance with such procedures, to determine with finality whether or not any Employee Trustee has been duly designated and appointed in accordance with such procedures and to determine with finality the binding interpretation and/or resolution of all questions, objections, challenges and disputes that relate to application of such procedures.

**Sec. 3. Term of Trustees -** Each Trustee shall serve until expiration of his term of office established in accordance with Section 2 of Article II of this Agreement or until, on a date prior to expiration of his term of office, he shall die, become incapable of acting hereunder, resign, become disqualified for the position under applicable law or under Section 9 of Article XIV of this Agreement, or be removed as herein provided.

**Sec. 4. Manner of Acting in Event of Deadlock -** In the event a deadlock develops between the Employer and Employee Trustees, or between the Trustees, the Trustees shall appoint a neutral party empowered to break such deadlock within a reasonable length of time. Such neutral party may be appointed in advance of any such deadlock. In the event the Trustees are unable to agree upon a neutral party, or in the event such neutral party is unable to act, either the Employer or the Employee Trustees may petition the District Court of the United States for the Northern District of Illinois, Eastern Division, for appointment of a neutral person, as provided in Section 302(c) of the Labor Management Relations Act of 1947, as amended.

**Sec. 5. Vacancy in Board of Trustees -** In case of vacancies by death, legal incapacity, resignation or otherwise of the Employer Trustees or Employee Trustees, a successor thereto shall be appointed as provided in Article II, Section 2 hereof. Any Trustee or Trustees shall have the right to resign on written notice to the remaining Trustees, and to the Executive Director; said notice shall specify the effective date of such resignation, which shall be no later than fifteen (15) days after said notice is received by the Executive Director, except that said resignation shall in any event become effective no later than appointment of, and acceptance of appointment by, a Successor Trustee, in accordance with Article II, Section 7 of this Agreement.

**Sec. 6. Removal of Trustees -** Any Employer Trustee may be removed, with cause, at any time by the entity or group that has the authority under Article II, Section 2 hereof to appoint such Employer Trustee, and, in the event of such removal of any Employer Trustee, the entity or group removing such Trustee shall appoint a Successor Trustee. Any Employee Trustee may be removed, with cause, at any time by the board (either the Central Trustee Appointment Board or the Southern Trustee Appointment Board) which, in accordance with Section 2 of Article II of this Agreement, is the appointing authority upon any vacancy in, or term expiration of, the Employee Trustee position then held by the Employee Trustee being removed. The Trustees shall also have the authority and duty to act to remove a Trustee holding office in violation of law.

**Sec. 7. Designation of Successor Trustee -** In the event of a vacancy under either Section 5 or Section 6 above, the Successor Trustee shall be designated in writing by the appointing authority, and such Successor Trustee shall accept such appointment in writing in a form satisfactory to the Trustees. The term of office of any Successor Trustee appointed during an unexpired term of his predecessor Trustee shall be the remainder of that unexpired term. Both the designation and acceptance shall be filed with the Executive Director of the Fund.

**Sec. 8. Limitation of Liability of Trustees -** No Trustee shall be liable or responsible for any acts or defaults of any co-Trustee, any other fiduciary, any party-in-interest or any other person except in accordance with applicable law.

**Sec. 9. Office of the Fund -** The sole and principal office of the Fund shall be in Chicago, Illinois, for the transaction of business of the Fund, the exact location of which is to be made known to the parties interested in such Fund. At such office, and at such other places as may be required by law, there shall be maintained all, or any of, the books and records pertaining to the Fund and its administration.

**Sec. 10. No One is Agent Without Written Authority -** No individual or person may act as agent for the Fund unless specifically authorized in writing by the Trustees. No Employer or Union nor any representative of any Employer or Union, in such capacity, is authorized to interpret the Pension Plan, this Agreement, a participation agreement or any other written agreement relating to Employer Contributions to which the Fund is a party, nor can any such person act as agent of the Trustees. Only the Board of Trustees is authorized to interpret the Pension Plan, this Agreement, a participation agreement or other written agreement relating to Employer Contributions to which the Fund is a party within the scope of its authority.

## ARTICLE III
## EMPLOYER CONTRIBUTIONS AND COLLECTIONS

**Sec. 1.** Amount of Employer Contributions - Each Employer shall remit continuing and prompt Employer Contributions to the Trust Fund as required by the applicable collective bargaining agreement, participation agreement, this Agreement and/or other written agreement to which the Employer is a party, applicable law and all rules and requirements for participation by Employers in the Fund as established and interpreted by the Trustees in accordance with their authority. The Employer shall be liable for the entire contribution amount even if the collective bargaining agreement requires the Employees to pay a portion of the contribution amount.

In addition to Employer Contributions owed to the Fund under the terms of any agreement (including, without limitation, Employer Contributions owed under the terms of a collective bargaining agreement, participation agreement, this Agreement or any other written agreement), Employer Contributions shall be owed for any period for which the Fund must provide Contributory Service Credit or benefit accrual toward a Contribution Based Benefit to an Employee, (including Employer Contributions that would have otherwise been paid on an Employee who is a re-employed service member or former service member but for his/her absence during a period of uniformed service as defined at 32 C.F.R. §104.3). Such Employer Contributions shall be due and owing to the Fund at the same time and at the same rate as such Employer Contributions would be due under the applicable agreement as though the Employer Contributions were required under the terms of that agreement.

The Trustees are authorized to reject any collective bargaining agreement, participation agreement or other agreement and/or terminate the participation of an Employer (and all contributions from the Employer) whenever they determine that the agreement is unlawful and/or inconsistent with any rule or

requirement for participation by Employers in the Fund and/or that the Employer is engaged in one or more practices or arrangements that threaten to cause economic harm to, and/or impairment of the actuarial soundness of, the Fund (including but not limited to any arrangement in which the Employer is obligated to make Employer Contributions to the Trust Fund on behalf of some but not all of the Employer's bargaining unit employees, and any arrangement in which the Employer is obligated to make Employer Contributions to the Trust Fund at different contribution rates for different groups of the Employer's bargaining unit employees)and/or that continued participation by the Employer is not in the best interest of the Fund. Any such rejection and/or termination by the Trustees of a collective bargaining agreement, participation agreement or other agreement shall be effective as of the date determined by the Trustees (which effective date may be retroactive to the initial date of the term of the rejected agreement) and shall result in the termination of the affected group and all Employees of the Employer in the affected group from further participation in the Fund on and after such effective date. The rejection/termination of one or more of the Employer's groups that participate in the Fund under this provision shall not affect the continued participation of any other group of the Employer that participates in the Fund.

Upon execution of each new or successive collective bargaining agreement, including but not limited to interim agreements and memoranda of understanding between the parties, each Employer shall promptly submit such contract by certified mail to the:

Contracts Department
Central States, Southeast and
Southwest Areas Pension Fund
8647 West Higgins Road
Chicago, IL 60631

Any agreement or understanding between the parties that in any way alters or affects the Employer's contribution obligation as set forth in the collective bargaining agreement, this Agreement, a participation agreement and/or any other written agreement shall be submitted promptly to the Fund in the same manner as the collective bargaining agreement; any such agreement or understanding between the parties that has not been disclosed to the Fund as required by this paragraph shall not be binding on the Trustees and shall not affect the terms of the disclosed collective bargaining agreement, the disclosed participation agreement, this Agreement or other disclosed written agreement which shall all be enforceable for their stated duration without regard to any undisclosed agreement. Except as provided in this Section, Section 7(b) of Article III and Section 20 of Article IV, the obligation to make such Employer Contributions shall

continue (and cannot be retroactively reduced or eliminated) after termination of the collective bargaining agreement until the date the Fund receives from the Employer (at the address specified above sent by certified mail with return receipt requested: a) a collective bargaining agreement signed by both the Employer and the Union that eliminates the duty to contribute to the Fund or b) written notification that accurately indicates that negotiations with the Union have reached impasse after collective bargaining agreement termination and the Employer has lawfully implemented a proposal to withdraw from the Fund. Such Employer Contributions shall not be required during a strike or lockout, unless the Union and Employer mutually agree otherwise in writing.

**Sec. 2. Time of Payment -** The Trustees shall, by regulation, fix the time for payment of contributions.

**Sec. 3. Receipt of Payment and Other Property of Trust -** The Trustees are hereby designated as the persons to receive the payments heretofore or hereafter made by the Employers to the Trust Fund, and the Trustees are hereby vested with all right, title and interest in and to such moneys and all interest accrued thereon, and are authorized to receive and be paid the same. The Trustees agree to receive all such payments, deposits, moneys, insurance and annuity contracts, and other assets and properties described or referred to in Article II and this Article, and to hold same in Trust hereunder for the uses and purposes of the Trust herein created.

**Sec. 4. Collections and Enforcement of Payment -** The Trustees, or such committee of the Trustees as the Board of Trustees shall appoint, or the Executive Director when directed by such committee or by the Trustees, shall have the power to demand and collect the Employer Contributions owed to the Trust Fund by the Employers to the Fund. Said Board of Trustees shall take such steps, including the institution and prosecution of, and intervention in, any legal proceedings as the Trustees in their discretion deem in the best interest of the Fund to effectuate the collection or preservation of Employer Contributions or other amounts which may be owed to the Trust Fund, without prejudice, however, to the rights of the Union to take whatever steps which may be deemed necessary for such purpose. The Fund shall not be required to arbitrate any disputes concerning Employer Contributions except for withdrawal liability disputes as required by 29 U.S.C. §1401. The Trustees are authorized to receive all Employer Contributions or other amounts which may be owed to the Trust Fund and apply and reapply such Employer Contributions in the best interest of the Fund. Nothing herein shall give any Employer the right to designate how any Employer Contributions shall be applied. The Employer waives any right to a

jury trial in any action it brings against the Fund and/or any of its Trustees or in any action brought by the Fund and/or any of its Trustees against the Employer.

**Sec. 5. Production of Records -** Each Employer shall promptly furnish to the Trustees, upon reasonable demand, with access to the documents that are necessary to determine whether the Employer is in compliance with all of its obligations under this Agreement and any rules of the Fund as well as any Participation Agreement, Collective Bargaining Agreement or other Agreement relating to participation in the Fund. The records the Employer shall provide include, without limitation, payroll records (including the names and last known addresses of its Employees, their Social Security numbers, the hours worked by each Employee and past industry employment history in its files), information relating to vendors (including vendor invoices and the Employer's cash disbursement journal) and such other information as the Trustees may reasonably require in connection with the administration of the Trust. The Trustees may, by their representatives, examine the pertinent records of each Employer at the Employer's place of business whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust. All Employers shall annually furnish to the Trustees, if requested by them, a statement showing whether:

(a) the organization is a corporation and the names of all of its officers;

(b) if not a corporation, a certificate stating that it is either a partnership or an individual proprietorship and the names of the partners or the name of the individual proprietor.

The Union will comply with any reasonable request of the Trustees to examine those records of the Union which may indicate the employment record of any Employee whose status is in dispute.

**Sec. 6.** Whenever there is litigation challenging the Trustees' exercise of their authority to reject a collective bargaining agreement, participation agreement or other agreement and/or terminate the participation of one or more of an Employer's groups and effect the termination of all Employees of the Employer in the affected group or groups from further participation in the Fund on and after an effective date determined by the Trustees, and there is related litigation to which the Trustees (or any of the Trustees) and/or the Fund and the Employer are parties (regardless of which entity or entities commenced the litigation), the Trustees and the Fund, at the conclusion of the litigation by judgment or settlement (except by a judgment that in effect invalidates the Trustees' rejection of the collective bargaining

agreement, participation agreement or other agreement and/or termination of participation), shall be entitled to recover from the Employer a payment in the amount of the attorneys' fees and litigation costs incurred by the Trustees and/or the Fund in the course of the litigation. In addition, the Employer shall be liable for any attorneys’ fees and costs in any litigation or arbitration filed by the Fund or filed by or initiated by the Employer (including declaratory judgment actions) in which the Fund prevails, including but not limited to suits or arbitrations relating to withdrawal liability, delinquent contribution payments or contribution refunds, audit demands and any retaliation claims (including retaliation claims under §510 of ERISA). The duty imposed upon an Employer to pay fees and costs applies to a declaratory judgment action as well as a suit brought by an Employer that is dismissed for any reason with or without prejudice including cases dismissed for improper venue or lack of subject matter or personal jurisdiction. Each Employer waives any claim that the Fund or its Trustees are liable for the Employer’s attorneys’ fees or costs based upon 29 U.S.C. §1132(g)(2) in any litigation involving the Employer and the Fund or its Trustees.

**Sec. 7.**

(a) An Employer is obliged to contribute to the Fund for the entire term of any collective bargaining agreement or participation agreement or any other written agreement accepted by the Fund (including any extension of a collective bargaining agreement through an evergreen clause or through an extension agreement of eighteen months or less) on the terms stated in that collective bargaining agreement, except as provided in subpart (b) of this Section 7 and Section 20 of Article IV of this Agreement. The following provisions contained in any agreement shall not be enforceable against the Fund (regardless of when the agreement was entered into): a) a provision contained in either a collective bargaining agreement or participation agreement or any agreement entered into by an Employer and Union subsequent to the collective bargaining agreement that purports to authorize the elimination or reduction of the duty to contribute to the Fund before the termination of the collective bargaining agreement and/or participation agreement and/or other agreement under its duration provision (including any extension through an evergreen clause)and b) a provision of an agreement that purports to eliminate or reduce the duty to contribute to the Fund contained in an agreement that extends a collective bargaining agreement for a period of eighteen months or less from its termination.

(b) An Employer's obligation to contribute to the Fund will immediately cease in the event the Union loses its status as bargaining representative of the Employees through an election conducted by a government agency or a valid disclaimer of interest by the Union. In the event the Union loses its representative status through an election, the duty to contribute shall cease on the day the election results are certified by the governmental agency. This provision shall supersede any contrary provision in any agreement, including any collective bargaining agreement, participation agreement, this Agreement and the certification clause of the Fund's billing forms.

**Sec. 8.** The remedy of the termination of an Employer's participation set forth in Article III, Section 1 and Article IV, Section 20 is not the Fund's exclusive remedy in the event of a violation of the Fund's adverse selection rule. The Fund shall also be entitled to collect additional Employer Contributions from an Employer that violates the Fund's adverse selection rule in an amount equal to the Employer Contributions that would have been paid to the Fund but for the adverse selection rule violation. The Employer Contributions paid under this section shall be treated as contributions required to be made for the purposes of computing withdrawal liability under 29 U.S.C. §§ 1381-1451 and contribution base units on any contributions paid under this section shall be calculated by dividing the amount paid under this section by the applicable contribution rate.

**Sec. 9.** The provisions of any separate agreement between the Fund and an Employer that require an Employer to contribute to the Fund for a specified period of time and/or at a specified contribution level shall control over any contrary provision of this Article.

## ARTICLE IV
## POWERS AND DUTIES OF TRUSTEES

**Sec. 1.** The Trustees shall have authority to control and manage the operation and administration of the Trust in accordance with applicable law.

**Sec. 2.** The Trustees shall hold, manage, care for, and protect the Trust Fund and collect the income therefrom and Employer Contributions thereto, except to the extent that any of these functions or responsibilities are assigned to another entity or entities pursuant to any provision of this Article.

**Sec. 3.**

(a) The Trustees appoint BlackRock Financial Management, Inc. (hereinafter identified as "BlackRock") as a Named Fiduciary of the Fund as defined in Section 402 of the Employee Retirement Income Security Act of 1974, with such rights, powers, authority, duties and responsibilities as are stated in an agreement with such Named Fiduciary (hereinafter identified as a "Named Fiduciary Agreement"), an agreement which was entered by the Trustees with BlackRock effective as of October 11, 2022, and as are stated in an Amended and Restated Consent Decree entered September 12, 2022 (hereinafter identified as "the Consent Decree") as that agreement and the Consent Decree were heretofore and are hereafter amended. The appointment of BlackRock as a Named Fiduciary of the Fund shall remain effective until termination or resignation in accordance with the Named Fiduciary Agreement to which BlackRock is a party.

(b) Assets of the Fund shall be managed by one or more investment managers, as defined in Section 3(38) of the Employee Retirement Income Security Act of 1974, each such investment manager to be appointed by BlackRock.

(c) Each investment manager appointed by BlackRock in its capacity as a Named Fiduciary of the Fund, shall have the power and authority, in its sole discretion, to invest and reinvest the principal and income of the Trust Fund, delegated to it for management, in such securities, common and preferred stock, fixed income securities, mortgages, notes, real estate or other property as shall be permissible investments in accordance with applicable law and agreements, including the specific terms and conditions of its agreement as an investment manager of the Fund, and may sell or otherwise dispose of such securities or property at any time and from time to time as it determines to be in accordance with its fiduciary obligations.

(d) With respect to all assets of the Fund, except those assets which are then subject to the exercise by BlackRock of its rights, powers, authority, duties and responsibilities as a Named Fiduciary of the Fund, the Trustees shall have the power, in their sole discretion, to invest and reinvest all or any part of the Trust Fund in such securities and other property as shall be permissible investments by them in accordance with applicable law, and may sell or otherwise dispose of such securities or other property at any time and from time

to time as they determine to be in accordance with their fiduciary obligations.

(e) The overall investment policy objective of the Fund is to invest and manage the assets of the Trust Fund in a prudent and conservative yet productive manner, in order to enhance the ability of the Fund to meet its obligations to participants and beneficiaries. Subject to the overall investment policy objective of the Fund, BlackRock shall develop the short-term and long-term investment objectives and policies of the Fund for the assets of the Fund for which it is responsible, in accordance with the Consent Decree, after consultation with the Trustees and with appropriate regard for the actuarial requirements of the Fund.

**Sec. 4.** With respect to all assets of the Fund, except those assets which are then subject to the exercise by BlackRock of its rights, powers, authority, duties and responsibilities as a Named Fiduciary of the Fund, any part of the Trust Fund which is not invested shall be deposited by the Trustees in such depository or depositories as the Trustees shall from time to time select and any such deposit or deposits, or disbursements therefrom, shall be made in the name of the Trust in the manner designated by the Trustees and upon the signature(s) designated by the Trustees.

**Sec. 5.** The Trustees shall keep true and accurate books of account and a record of all their transactions.

**Sec. 6.** The Trustees shall engage one or more independent qualified public accountants and enrolled actuaries to perform all services required by and in accordance with applicable law and such other services as the Trustees deem necessary.

**Sec. 7.** The Trustees, to the extent permitted by applicable law, shall incur no liability in acting upon any instrument, application, notice, request, signed letter, telegram, or other paper or document believed by them to be genuine and to contain a true statement of facts, and to be signed by the proper person.

**Sec. 8.** Any Trustee, to the extent permitted by applicable law, may rely upon any instrument in writing purporting to have been signed by a majority of the Trustees as conclusive evidence of the fact that a majority of the Trustees have taken the action stated to have been taken in such instrument.

**Sec. 9.** The Trustees are hereby authorized to formulate and promulgate any and all necessary rules and regulations which they deem necessary or desirable to facilitate the proper administration of the Trust, provided the same are not inconsistent with the terms

of this Agreement, and the Articles in the Central States, Southeast and Southwest Areas Agreements creating the Pension Fund. All rules and regulations adopted by action of the Trustees for the administration of the Trust Fund shall be binding upon all parties hereto, all parties dealing with the Trust, and all persons claiming any benefits hereunder. The Trustees are vested with discretionary and final authority in adopting rules and regulations for the administration of the Trust Fund.

**Sec. 10.** Any Successor Trustee appointed in accordance with the provisions of this Agreement, upon accepting in writing the terms of this Trust, in a form satisfactory to the Trustees, shall be vested with all of the rights, powers and duties of his predecessor.

**Sec. 11.**

(a) The Trustees may assign, from time to time, various administrative matters to such committees and subcommittees of Trustees, or to such other individuals or organizations, as they may deem necessary or appropriate in their sole discretion. The Trustees may also assign and delegate, from time to time, specified trustee responsibilities to committees and subcommittees of Trustees, as they deem necessary or appropriate in their sole discretion. Committees and subcommittees of Trustees shall consist of an equal number of Employer and Employee Trustees.

(b) The Trustees may establish a Public Advisory Board consisting of four (4) persons, two (2) to be designated by a majority of the Employer Trustees and two (2) to be designated by a majority of the Employee Trustees. Such Public Advisory Board, if established, shall act solely in an advisory and consultant capacity and shall not have or exercise any fiduciary powers, responsibilities or duties. None of the members of said Board, individually or collectively, shall have or exercise any discretionary authority or discretionary control respecting management of the Fund, or have or exercise any authority or control respecting management or disposition of any assets of the Fund, or render any investment advice for any fee or other consideration, or have or exercise any discretionary authority or discretionary responsibility in the administration of the Fund. The Trustees shall establish procedures for submission of matters to the Public Advisory Board, if established, for advice and consultation by said Board. Any payment of compensation and expenses for members of said Board shall be determined by the Trustees.

(c) The Trustees shall appoint an Executive Director, who shall, subject to the directions of the Trustees with respect thereto, be responsible to the Trustees and/or any committee thereof for coordinating the administration of the Fund's assets, office and personnel, for the coordination and administration of accounting and actuarial services, for the preparation of all reports and other documents required to be filed or issued in accordance with law, for the performance of ministerial duties in conformance therewith, and for such other duties duly assigned to him by action of the Trustees. The Executive Director shall be the custodian of the documents and other records of the Fund. To the extent this subsection is contrary to or inconsistent with a Named Fiduciary Agreement, in its description of authority and responsibilities of the Executive Director, this subsection shall be inapplicable.

(d) There shall exist an internal audit division of the Fund, for review of administrative expenditures, benefit disbursements and the allocation of income between investments, administration and benefits, and for such other responsibilities as may be assigned by the Executive Director.

**Sec. 12.** No party dealing with the Trustees shall be obligated:

(a) to see the application to the trust purposes, herein stated, of any money or property belonging to the Trust Fund, or

(b) to see that the terms of this Agreement have been complied with, or

(c) to inquire into the necessity or expediency of any act of the Trustees.

Every instrument executed by the Trustees shall be conclusive evidence in favor of every person relying thereon:

(1) that at the time of the delivery of said instrument the Trust was in full force and effect,

(2) that the instrument was executed in accordance with the terms and conditions of this Agreement, and

(3) that the Trustees were duly authorized and empowered to execute the instrument.

**Sec. 13.** The Trustees shall, by regulation, establish rules relating to payments of Employer Contributions by Employers for Employees during periods of such Employees' illness or disability and related matters but not contrary to applicable collective bargaining agreements.

**Sec. 14.** The Trustees are hereby empowered, in addition to such other powers as are set forth herein or conferred by law:

(a) To enter into any and all contracts and agreements for carrying out the terms of this Agreement and Declaration of Trust and for the administration of the Trust Fund, and to do all acts as they, in their discretion, may deem necessary or advisable, and such contracts and agreements and acts shall be binding and conclusive on the parties hereto and on the Employees involved.

(b) To keep property and securities registered in the names of the Trustees or in the name of any other individual or entity duly designated by the Trustees.

(c) To establish and accumulate as part of the Trust Fund a reserve or reserves, adequate, in the opinion of the Trustees and in accordance with applicable law, to carry out the purposes of such Trust.

(d) To pay out of the funds of the Trust all real and personal property taxes, income taxes, and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Trust Fund, or any money, property, or securities forming a part thereof.

(e) To do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or proper for the protection of the property held hereunder.

(f) To sell, exchange, lease, convey, mortgage or dispose of any property, whether real or personal, at any time forming a part of the Trust Fund upon such terms as they may deem proper, and to execute and deliver any and all instruments of conveyance, lease, mortgage and transfer in connection therewith, except that the powers enumerated in this subsection shall not be exercisable by the Trustees with respect to those assets of the Fund as are then subject to the exercise by BlackRock of its rights, powers, authority, duties and responsibilities as a Named Fiduciary of the Fund.

**Sec. 15.** The Trustees shall be entitled to receive reasonable compensation for services rendered, and the reimbursement of expenses properly and actually incurred, in the performance of their duties to the Fund; except that no Trustee who already receives full-time pay from an Employer or an association of Employers or from the Union shall receive compensation from the Fund, except for reimbursement of expenses properly and actually incurred.

**Sec. 16.** The Trustees shall use and apply the Trust Fund for the following purposes:

(a) To pay or provide for -

(1) the payment of all reasonable and necessary expenses of collecting the Employer Contributions and administering the affairs of this Trust, including the employment of such administrative, legal, actuarial, expert, and clerical assistance as may be reasonably necessary,

(2) the purchasing, owning or leasing of such premises as may be necessary for the operation of the affairs of the Trust, and

(3) the purchase or leasing of such materials, supplies and equipment as the Trustees, in their discretion, find necessary or appropriate to the performance of their duties.

(b) To pay or provide for the payment of retirement and related benefits to eligible Employees in accordance with the terms, provisions and conditions of the Pension Plan to be formulated and agreed upon hereunder by the Trustees.

**Sec. 17.** The Trustees, by majority action, shall have the power to construe the provisions of this Agreement, any participation agreement, the Pension Plan, any Agreement drafted by the Fund or to which the Fund is party and rules or regulations of the Pension Fund; and any construction adopted by the Trustees in good faith shall be binding upon the Union, Employees and Employers. The Trustees are vested with discretionary and final authority in construing plan documents of the Pension Fund and any other agreement, rule or regulation described in this section 17.

**Sec. 18.** The Trustees, by resolution, shall provide for fidelity bonds, in such amounts as they may determine, for their employees and for the Trustees, the cost of which shall be paid by the Fund. The Trustees may purchase insurance coverage to protect

the Fund from liability arising out of any error or omission of any Trustee or employee of the Trust, in accordance with applicable law, the cost of which policy shall be paid by the Fund.

**Sec. 19.** The Trustees shall provide participants and beneficiaries such information as is required by law.

**Sec. 20.** The Trustees are authorized to reject any collective bargaining agreement, participation agreement and/or terminate the participation of an Employer (and all Employer Contributions from the Employer) whenever they determine that the agreement is unlawful and/or inconsistent with any rule or requirement for participation by Employers in the Fund and/or that the Employer is engaged in one or more practices or arrangements that threaten to cause economic harm to, and/or impairment of the actuarial soundness of, the Fund (including but not limited to any arrangement in which the Employer is obligated to make Employer Contributions to the Trust Fund on behalf of some but not all of the Employer's bargaining unit employees, and any arrangement in which the Employer is obligated to make Employer Contributions to the Trust Fund at different contribution rates for different groups of the Employer's bargaining unit employees) and/or they determine that continued participation by the Employer is not in the best interest of the Fund. Any such rejection and/or termination by the Trustees of a collective bargaining agreement, participation agreement or other agreement shall be effective as of the date determined by the Trustees (which effective date may be retroactive to the initial date of the term of the rejected agreement) and shall result in the termination of the affected group and all Employees of the Employer in the affected group from further participation in the Fund on and after such effective date. The rejection/termination of one or more of the Employer’s groups that participate in the Fund under this provision shall not affect the continued participation of any other group of the Employer that participates in the Fund.

**Sec. 21.** The Trustees are granted the discretionary authority to waive enforcement/compliance of any right conferred for the benefit of the Fund by any agreement, including this Trust Agreement (and including any rule of the Fund) when they determine that the waiver is in the best interests of the Fund. Any such waiver shall not establish a course of performance or be evidence of the intent of any provision of any agreement or rule or evidence of inconsistent conduct by the Trustees or the Fund.

## ARTICLE V
## CONTROVERSIES AND DISPUTES

**Sec. 1.** In any controversy, claim, demand, suit at law, or other proceeding between any participant, beneficiary, or any other person and the Trustees, the Trustees shall be entitled to rely upon any facts appearing in the records of the Trustees, any instruments on file with the Trustees, with the Union or with the Employers, any facts certified to the Trustees by the Union or the Employers, any facts which are of public record, and any other evidence pertinent to the issue involved.

**Sec. 2.** All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the Fund or the operation thereof, whether as to any claim for any benefits preferred by any participant, beneficiary, or any other person, or whether as to the construction of the language or meaning of the rules and regulations adopted by the Trustees or of this instrument, or as to any writing (including a collective bargaining agreement or other Union-Employer agreement in cases where the interpretation is necessary in order to determine the application of the terms of this Agreement, a Participation Agreement, the Plan or any other Fund document or agreement to the provisions of the collective bargaining agreement or other Union-Employer agreement), decision, instrument or accounts in connection with the operation of the Trust Fund or otherwise, shall be submitted to the Trustees, or to a committee of Trustees, and the decision of the Trustees or of such committee thereof shall be binding upon all parties or persons dealing with the Fund or claiming any benefit thereunder. The Trustees are vested with discretionary and final authority in making all such decisions, including Trustee decisions upon claims for benefits by participants and beneficiaries of the Pension Fund and other claimants, and including Trustee decisions construing plan documents of the Pension Fund. To the extent this section is contrary to or inconsistent with a Named Fiduciary Agreement, this section shall be inapplicable.

**Sec. 3.** The Trustees may, in their sole discretion, compromise or settle any claim or controversy in such manner as they think best, and any decision made by the Trustees in compromise or settlement of a claim or controversy, or any compromise or settlement agreement entered into by the Trustees, shall be conclusive and binding on all parties interested in this Trust. To the extent this section is contrary to or inconsistent with a Named Fiduciary Agreement, this section shall be inapplicable.

## ARTICLE VI
## OPERATION OF BOARD OF TRUSTEES

**Sec. 1. Officers -** The Board of Trustees shall at each meeting designate a presiding Chairman. The Chairmanship shall be rotated between the Employee Trustees and the Employer Trustees.

**Sec. 2. Quorum -** A quorum of the Trustees for the transaction of business, except as otherwise specifically provided herein, shall consist of at least four Trustees, two of whom shall be representative of the Employers and two of whom shall be representative of the Employees. A quorum of a committee shall consist of a majority of the members thereof. Upon each matter voted upon at any meeting of the Trustees, the Employee Trustees and the Employer Trustees shall each have the same number of votes based upon the larger number of Employee or Employer Trustees in attendance, as the case may be; provided, however, that the vote or votes cast by each such Trustee shall be cast as an individual Trustee and not as a part of a block. All actions of the Trustees at meetings shall be by majority vote of those present and voting, a quorum being present. No Trustee may vote by proxy.

**Sec. 3. Records of Trustee Action -** The Trustees shall make and maintain a record of the actions of the Trustees taken at any meeting thereof. Any action, which may be taken at a meeting of the Trustees, may be taken without a meeting of the Trustees if a consent in writing, setting forth the action so taken, should be distributed to all of the Trustees and should be signed by five of the Trustees, said written consent evidencing the substance of the action of the Trustees so taken.

**Sec. 4. Reports -** All reports required by law to be signed by one or more Trustees shall be signed by all of the Trustees, provided that all of the Trustees may appoint in writing one or more of their number to sign such report on behalf of the Trustees.

**Sec. 5. Power to Act in Case of Vacancy -** No vacancy or vacancies in the Board of Trustees shall impair the power of the remaining Trustees, acting in the manner provided by this Agreement, to administer the affairs of the Trust notwithstanding the existence of such vacancy or vacancies.

**Sec. 6. Expenses -** All proper and necessary expenses incurred by any former or incumbent Trustee, including costs of defense in litigation arising out of the Trusteeship of this Fund, and also including costs incurred by any former or incumbent Trustee in providing testimony or information about administration of this Fund in any investigation, trial or other proceeding, shall be paid out of the Trust Fund, as a matter of right of any such former or

incumbent Trustee, to the extent permitted by applicable law. As used in the preceding sentence, the term "costs" includes, but is not limited to, reasonable attorneys' fees.

**Sec. 7. Meetings -** Regular meetings of the Board of Trustees shall be held in the months of January, March, May, July, September and November on such days as the Trustees determine. Any two (2) Trustees may request a meeting of the Trustees at any time by notifying the Executive Director, who shall arrange the time and place thereof. Written notices of meetings may be delivered in person, by mail, or by telegram. Meetings of the Trustees may also be held at any time without notice if all the Trustees consent thereto.

## ARTICLE VII
## ESTABLISHMENT OF PENSION PLAN

**Sec. 1. Formulation of Plan -** The Trustees shall formulate a Pension Plan for the payment of such retirement pension benefits, permanent disability pension benefits, death benefits, and related benefits, as are feasible. Such Pension Plan shall at all times comply with all applicable federal statutes and regulations and with the provisions of this Trust Agreement. The Trustees shall not be under any obligation to pay any pension if the payment of such pension will result in loss of the Fund's tax-exempt status under the then applicable Internal Revenue Code and any regulations or rulings issued pursuant thereto. The Trustees shall draft procedures, regulations, and conditions for the operation of the Pension Plan, including, by way of illustration and not limitation: conditions of eligibility for covered Employees, procedures for claiming benefits, schedules of type and amount of benefits to be paid, and procedures for the distribution of benefits. The Trustees may also provide for the payment of partial pensions, and may enter into agreements with trustees of other pension plans which conform to the applicable sections of the then applicable Internal Revenue Code for purposes of tax deductions, for the reciprocal recognition of service credits and payments of pension benefits based upon such service credits.

**Sec. 2. Amendment of Plan -** The Pension Plan may be amended by the Trustees from time to time, provided that such amendments comply with the applicable sections of the then applicable Internal Revenue Code, all applicable federal statutes and regulations, the contract articles creating the Pension Fund, and the purposes set forth in this Agreement. Additionally and not by way of limitation, the Trustees may amend the Pension Plan, in future, or retroactively, where they deem it necessary to maintain the continuation of the Fund's tax-exempt status or to preserve compliance with the then applicable Internal Revenue Code,

applicable federal statutes, and any regulations or rulings issued with respect thereto. A copy of each amendment of the Pension Plan shall be adopted and filed by the Trustees as part of the records and minutes of the Trustees, and one copy thereof shall be distributed to the Union and to each Employer or Employer group signatory to this Trust Agreement.

## ARTICLE VIII
## SPENDTHRIFT CLAUSE

All benefit payments to participants or beneficiaries, if and when such payments shall become due, shall, except as to persons under legal disability, or as provided in this section and in Article IX, be paid to such participants or beneficiaries in person and shall not be grantable, transferable, or otherwise assignable in anticipation of payment thereof, in whole or in part, by the voluntary or involuntary acts of any such participants or beneficiaries, or by operation of law, and shall not be liable or taken for any obligation of such participants or beneficiaries. Upon receipt of written direction from any eligible recipient of monthly benefit payments, the Pension Fund will participate in an arrangement to make deductions from each monthly benefit payment, as authorized and directed by the recipient, and to transfer the amount of each such deduction to the Central States, Southeast and Southwest Areas Health and Welfare Fund as the recipient's monthly contribution to retain eligibility for coverage pursuant to the retiree benefit plan established by that fund. This deduction / transfer arrangement is effective commencing October 1, 1988 and will continue, relative to each such recipient who authorizes and directs it, until the Pension Fund receives the recipient's written cancellation of such authority and direction (or the earlier termination of benefits). Any authority and direction to the Pension Fund by a recipient of monthly benefit payments, to make such deductions and transfers, is revocable at any time by the recipient.

## ARTICLE IX
## PAYMENTS TO PERSONS UNDER LEGAL DISABILITY

In case any benefit payments hereunder become payable to a person under legal disability, or to a person not adjudicated incompetent but, by reason of mental or physical disability, in the opinion of the Trustees, is unable to administer properly such payments, then such payments may be paid out by the Trustees for the benefit of such person in such of the following ways as they think best, and the Trustees shall have no duty or obligation to see that the payments are used or applied for the purpose or purposes for which paid:

(a) directly to any such person;

(b) to the legally appointed guardian or conservator of such person;

(c) to any spouse, parent, brother, or sister of such person for his welfare, support and maintenance;

(d) by the Trustees using such payments directly for the support, maintenance and welfare of any such person.

**ARTICLE X**
**AMENDMENT OF AGREEMENT**

It is anticipated that in the administration of this Trust conditions may arise that are not foreseen at the time of the execution of this Agreement, and it is the intention of the parties that the power of amendment, which is hereinafter given, be exercised in order to carry out the provisions of this Trust, among which is to pay the largest benefits possible, which are consistent with the number of participants becoming and likely to become eligible for such payments, the amounts of funds which are available and which will probably become available, and the following of sound actuarial practice. Therefore, the power is given to the Trustees to amend this Agreement by majority vote, at any time and from time to time, and all parties to the Trust, and all persons claiming an interest thereunder, shall be bound thereby, and no participant, Employee member, beneficiary, or any other person shall have any vested interest or right in the Trust Fund or in any payment from the Trust Fund, except as provided by law. The Trustees have full authority to amend, repeal, add to, or take away any right of payment, retroactively or otherwise, that they deem proper for the preservation of this Trust; provided, however, in no event shall the Trust Fund be used for any purpose other than the purposes set forth in this Trust Agreement, and for the purposes of paying the necessary expenses incurred in the administration of this Trust. All amendments to this Agreement shall comply with applicable sections of the Internal Revenue Code, other applicable federal statutes and the Contract Articles creating the Pension Fund.

**ARTICLE XI**
**TERMINATION OF TRUST**

**Sec. 1.** This Trust shall cease and terminate upon the happening of any one or more of the following events:

(a) In the event the Trust Fund shall be, in the opinion of the Trustees, inadequate to carry out the intent and purposes of this Agreement, or to meet the payments due

or to become due under this Agreement to persons already drawing benefits.

(b) In the event there are no individuals living who can qualify as Employees hereunder.

**Sec. 2.** In the event this Trust shall terminate for any of the reasons set forth in Section 1 of this Article XI, the Trustees shall allocate the Trust Fund among participants and beneficiaries of the Pension Plan in the following order:

(a) First, to that portion of each individual's accrued benefit this is derived from the participant's contributions to the Pension Plan.

(b) Second, in the case of benefits payable as an annuity –

(1) In the case of the benefit of a participant or beneficiary which was in pay status as of the beginning of the 3-year period ending on the determination date of the Pension Plan, to each such benefit based on the provisions of the Pension Plan (as in effect during the 5-year period ending on such date) under which such benefit would be the least.

(2) In the case of a participant's or beneficiary's benefit which would have been in pay status as of the beginning of the 3-year period ending on the termination date of the Pension Plan if the participant had retired prior to the beginning of the 3-year period and if his benefits had commenced (in the normal form of an annuity under the Pension Plan) as of the beginning of such period, to each such benefit based on the provisions of the Pension Plan (as in effect during the 5-year period ending on such date) under which such benefit would be the least.

For the purpose of subparagraph (1) the lowest benefit in pay status during a 3-year period shall be considered the benefit in pay status for such period.

(c) Third, to all other nonforfeitable benefits (other than benefits becoming nonforfeitable solely on account of termination of the Pension Plan) subject to the limitation that such nonforfeitable benefits shall not have an actuarial value which exceeds the actuarial value

of a monthly benefit in the form of a life annuity commencing at age 65 equal to the lesser of -

(1) his average monthly gross income from his Employer during the 5 consecutive calendar year period during which his gross income from that Employer was greater than during any other such period with that Employer, or

(2) $750 multiplied by a fraction, the numerator of which is the contribution and benefit base (determined under Section 230 of the Social Security Act) in effect at the time the Pension Plan terminates and the denominator of which is such contribution and benefit base in effect in calendar year 1974.

(d) Fourth, to all other nonforfeitable benefits under the Pension Plan.

(e) Fifth, to all other benefits under the Pension Plan.

(f) If the assets available for allocation under any priority category (other than 2 (d) and 2 (e) above) are insufficient to satisfy in full the benefits of all individuals, the assets shall be allocated pro rata among such individuals on the basis of the present value as of the termination date of their respective benefits. To the extent funded, the rights of all participants to benefits accrued as of the date of termination are nonforfeitable.

## ARTICLE XII
## EXTENSION OF PLAN

**Sec. 1. Extension of Trust -** The Trustees are authorized to extend the coverage of this Agreement and Trust to such other Employers and Employees as the Trustees shall agree upon, provided such Employers and Employees are required to conform to the terms and conditions of this Trust and to make the same rate of payments required of the Employers herein, for the same benefits.

**Sec. 2. Reciprocity Agreements -** The Trustees shall be authorized to enter into reciprocity agreements with other labor organizations and other pension funds in which such labor organizations participate.

**Sec. 3. Merger -** The Trustees shall have the power to merge with any other fund established for similar purposes as this Fund, under terms and conditions mutually agreeable to the respective Boards of Trustees. No participant's or beneficiary's accrued

benefit will be lower immediately after the effective date of any such merger than the benefit immediately before that date.

**ARTICLE XIII**
**VESTING OF RIGHTS**

The Trustees shall establish standards for the vesting of benefits which conform to no less than the minimum standards required by law. No Employee or other person shall have any vested interest or right in the Trust Fund except as provided by the Trustees in conformance with applicable law.

**ARTICLE XIV**
**MISCELLANEOUS**

**Sec. 1.** The Trustees may issue a credit for contributions that have been billed to an Employer if (1) the related work history was reported by mistake of fact or law (other than a mistake about plan qualification or tax-exempt status pursuant to the Internal Revenue Code) as determined by the Trustees and (2) the request for credit is received within ten years after the related work history was billed. If an Employer no longer has an obligation to contribute to the Fund and has satisfied his withdrawal liability assessment, the Trustees may refund contributions paid by an Employer to the Trust if (1) such contributions were made by a mistake of fact or law (other than a mistake about plan qualification or tax-exempt status pursuant to the Internal Revenue Code) as determined by the Trustees and (2) application therefor is received within ten years after payment of the contributions. An Employer shall not have a right to a refund of contributions made more than ten years prior to his application therefor. The amount to be returned to the Employer, by credit or refund, is the excess of the amount contributed or paid over the amount that would have been contributed or paid had no mistake been made (this amount is the excess contribution or overpayment). Interest or earnings attributable to an excess contribution shall not be returned to the Employer, and the amount credited to or returned to the Employer must be reduced by a) any losses sustained by the Fund attributable to an excess contribution and b) the amount of any benefit payments made by the Fund that would not have been made but for the excess payment. For purposes of the previous sentence, plan-wide investment experience may be applied to the excess contribution in calculating losses. In no event shall Employers, directly or indirectly, participate in the disposition of the Trust Fund or receive any benefits from the Trust Fund.

**Sec. 2.** The Union or the Employer may, at any time, demand of the Trustees an accounting with respect to any and all accounts upon agreement to pay necessary expenses thereof. The Trustees

shall be entitled, at any time, to have a judicial settlement of their accounts and judicial determination of any questions in connection with the administration or distribution thereof. Any Trustee who has resigned, been removed from office, or not been reappointed shall execute all instruments necessary to transfer the Trust Fund.

**Sec. 3.** In the event any question or dispute shall arise as to the proper person or persons to whom any payments shall be made hereunder, the Trustees may withhold such payment until an adjudication of such question or dispute, satisfactory to the Trustees, in their sole discretion, shall have been made, or the Trustees shall have been adequately indemnified against loss to their satisfaction.

**Sec. 4.** Non-payment by an Employer of any moneys due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any Employer Contributions due to the Trustees from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law. The interest payable by an Employer with respect to past due Employer Contributions (other than withdrawal liability) prior to the entry of a judgment, shall be computed and charged to the Employer (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater). The prejudgment interest payable by an employer with respect to past due withdrawal liability shall be computed and charged to the Employer at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged. Any judgment against an Employer for Employer Contributions owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid Employer Contributions. The interest rate after entry of a judgment against an Employer for Employer Contributions (other than withdrawal liability) shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b)

at an annualized interest rate of 7.5% (whichever is greater), and such interest shall be compounded annually. The interest rate after entry of a judgment against an employer for withdrawal liability shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, and such interest shall be compounded annually.

**Sec. 5.** Where used in this Agreement, words in the masculine shall be read and construed as in the feminine, and words in the singular shall be read and construed as though used in the plural, in all cases where such construction would so apply.

**Sec. 6.** The Article titles are included solely for convenience and shall, in no event, be construed to affect or modify any part of the provisions of this Agreement or be construed as part thereof.

**Sec. 7.** This Agreement shall in all respects be construed according to and governed by the laws of the State of Illinois, including but not limited to the laws applicable to the rate of interest in the State of Illinois, except as such laws may be preempted by the laws and regulations of the United States. In all actions taken by the Trustees to enforce the terms of this Trust Agreement, including but not limited to actions to collect delinquent Employer Contributions from employers or to conduct audits of contributing employers' records as authorized by Article III of this Agreement, the ten-year Statute of Limitations applicable to actions on written contracts in the State of Illinois shall apply, provided that the limitations period for any such action shall not begin to accrue until the date upon which the Trustees and the Fund receive explicit written notice of the cause of action, claim and liability to which the limitations period is applicable. Each Employer shall accurately and completely report the work history of its eligible Employees and shall not report anyone who is not an Employee and shall not report any Employee for any period Employer Contributions are not due under the terms of the agreements that have been disclosed to the Fund. In the event an Employer's reporting error (including errors of commission and omission) causes the Fund to pay benefits that are not owed under the Plan, the Employer agrees to reimburse the Fund the amount of the benefit payment plus interest at the rate set forth in Section 4 of this Article, less the amount of the erroneous contribution paid by the Employer.

**Sec. 8.** The method of computation of any employer withdrawal liability imposed by the Multiemployer Pension Plan Amendments Act

of 1980 and payable to the Trust Fund shall be as set forth in Appendix E to the Pension Plan as may be amended from time to time.

**Sec. 9.** No person shall serve, or be permitted to serve, as an administrator, fiduciary, officer, trustee, custodian, counsel, agent, employee, adviser, provider of goods or services or consultant of the Fund, or as its representative in any capacity, or to serve in any capacity that involves decision making authority or custody or control of the moneys, funds or assets of the Fund, if such person has been convicted of: robbery, bribery, extortion, embezzlement, fraud, grand larceny, burglary, arson, a felony violation of Federal or State law involving substances defined in section 802(6) of title 21 of the United States Code (hereinafter referred to as the "Code"), murder, rape, kidnapping, perjury, assault with intent to kill, any crime described in section 80a-9(a)(1) of title 15 of the Code, a violation of any provision of the Employee Retirement Income Security Act of 1974, a violation of section 186 of title 29 of the Code, a violation of chapter 63 of title 18 of the Code, a violation of sections 874, 1027, 1503, 1505, 1506, 1510, 1951 or 1954 of title 18 of the Code, a violation of the Labor-Management Reporting and Disclosure Act of 1959, or any felony involving abuse or misuse of such person's labor organization or employee benefit plan position or employment; or conspiracy to commit any such crimes; or attempt to commit any such crimes, or a crime in which any of the foregoing crimes is an element; or a misdemeanor involving a breach of fiduciary responsibility. Upon conviction of any of the crimes described in the preceding sentence, such person shall immediately be disqualified from serving the Fund in any capacity described in the preceding sentence, and any such service shall immediately be terminated; provided that, upon final reversal of such conviction, such person, unless otherwise ineligible, shall thereafter be eligible to serve the Fund; and provided further that this disqualification shall continue in effect until ten (10) years after such conviction or after the end of imprisonment on such conviction, whichever is the later, unless, prior to the end of such ten-year period, in the case of a person so convicted or imprisoned, (a) his citizenship rights, having been revoked as a result of such conviction, have been fully restored, or (b) the United States Parole Commission, pursuant to applicable law, determines that such person's service would not be contrary to the best interests of the Fund.

**Sec. 10.** Each Employer and Union (including former participating Employers and Unions) consents to personal jurisdiction and venue in the United States District Court for the Northern District of Illinois, Eastern Division, with respect to any suit filed by the Fund in that forum of any nature (including suits involving Employer Contributions, or a demand for any audit)

and agrees that said forum is the most convenient forum for such suit. Any lawsuit brought by an Employer or Union or a former participating Employer or Union challenging any action or decision of the Trustees or the Fund of any nature, including but not limited to suits challenging the assessment or collection of withdrawal liability, a contribution billing, a decision to terminate the participation of an Employer (or refusal to accept an Employer or a labor agreement) or a decision with respect to a contribution refund request, must be filed only in the United States District Court for the Northern District of Illinois, Eastern Division, and it is agreed that said forum is the most convenient forum for the lawsuit. Any lawsuit brought by a participant or beneficiary of the Fund or a former participant or beneficiary of the Fund which involves in whole or in part a challenge to a decision of the Trustees to terminate the participation of an Employer or Union (or refusal to accept an Employer, Union or a labor agreement) must be filed in the United States District Court for the Northern District of Illinois, Eastern Division, and it is agreed that said forum is the most convenient forum for the lawsuit.

**Sec. 11.** A participating Employer and Union that contributes to the Fund shall be bound by the provisions of this Agreement and the obligations imposed by this Agreement shall survive the termination of the participation in the Fund. To the extent there is a conflict between this Agreement and any provisions of a collective bargaining agreement and/or a participation agreement and/or any other union-employer agreement, this Agreement shall control.

**Sec. 12.** An Employer shall be required to pay audit fees and audit costs if litigation is required to obtain access to any records that are requested in connection with an audit and/or if litigation is required to collect additional billings that result from the audit. Audit fees will be calculated at the market rate for the metropolitan Chicago area.

## ARTICLE XV
## BENEFICIAL RIGHTS

No Employer or Union, or Employees, shall have any right, title or interest in or to the Trust Fund or any part thereof other than vesting under the Pension Plan except in accordance with applicable law. There shall be no pro rata or other distribution of any of the assets of the Fund as a result of any Union, Employer or group of Employees of Employers ceasing their participation in this Fund for any purpose or reason, except as required by law.

## ARTICLE XVI
## SAVINGS CLAUSE

Should any provision of this Declaration of Trust be held to be unlawful, or unlawful as to any person or instance, such fact shall not adversely affect the other provisions herein contained or the application of such provision to any other person or instance, unless such illegality shall make impossible the functioning of the Pension Plan. No Trustee shall be held liable for any act done or performed in pursuance of any provision hereof prior to the time such act or provision shall be held unlawful by a court of competent jurisdiction.

# APPENDIX

## INDEX OF ALL AMENDMENTS TO THE TRUST AGREEMENT OF CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND ADOPTED AFTER DECEMBER 12, 1974

| Article | Section | Date of Trustees' Meeting (Minute Item No.) |
|---|---|---|
| Preamble, 3rd "Whereas" clause | | October 11, 1976 (Item No. 5). |
| Preamble, Now Therefore clause | | March 15, 2016 (Item No. 14). |
| I | 1 | March 15, 2016 (Item No. 14). |
| I | 2 | October 11, 1976 (Item No. 5); and October 19, 1994 (Item No. 40); and September 14, 2021 (Item No. 34). |
| I | 3 | July 18, 1979 (Item No. 51); and March 15, 2016 (Item No. 14). |
| I | 6 | March 15, 2016 (Item No. 14). |
| II | 1 | March 15, 2016 (Item No. 14). |
| II | 2 | October 11, 1976 (Item No. 5); August 15, 1979 (Item No. 70); October 18-19, 1982 (Item No. 8); March 17-18, 1983 (Item No. 31); April 19-20, 1983 (Item No. 28); August 19-20, 1986 (Item No. 32); December 19, 1988 (Item No. 24); February 16, 1993 (Item No. 23); October 19, 1994 (Item No. 40); March 30, 1998 (Item No. 12); February 22, 2005 (Item No. 34); December 13, 2007 (Item No. 8); and September 16, 2009 (Item No. 21). |

| **Article** | **Section** | **Date of Trustees' Meeting (Minute Item No.)** |
| --- | --- | --- |
| II | 3 | October 18-19, 1982 (Item No. 8); and April 19-20, 1983 (Item No. 31). |
| II | 5 | October 11, 1976 (Item No. 5). |
| II | 6 | March 17-18, 1983 (Item No. 31); October 19, 1994 (Item No. 40); February 22, 2005 (Item No. 34); and September 16, 2009 (Item No. 21). |
| II | 7 | March 17-18, 1983 (Item No. 31). |
| II | 10 | March 15, 2016 (Item No. 14). |
| III | 1 | May 26-27, 1987 (Item No. 34); December 19, 1997 (Item No. 36); September 21, 2006 (Item No. 8); and March 15, 2016 (Item No. 14); and September 14, 2021 (Item No. 34). |
| III | 2 | March 15, 2016 (Item No. 14). |
| III | 4 | April 20-21, 1982 (Item No. 18); and March 15, 2016 (Item No. 14). |
| III | 5 | January 19, 2000 (Item No. 10); September 14, 2021 (Item No. 34). |
| III | 6 | November 13, 1997 (Item No. 12); September 21, 2006 (Item No. 8); and March 15, 2016 (Item No. 14); September 14, 2021 (Item No. 34). |
| III | 7 | January 18, 2005 (Item No. 8); and March 15, 2016 (Item No. 14). |
| III | 8 | May 17, 2011 (Item No. 10); and March 15, 2016 (Item No. 14). |
| III | 9 | March 15, 2016 (Item No. 14). |
| IV | 2 | September 15, 1977 (Item No. 31); and March 15, 2016 (Item No. 14). |

| Article | Section | Date of Trustees' Meeting (Minute Item No.) |
|---|---|---|
| IV | 3 | September 15, 1977 (Item No. 31); November 16, 1977 (Item No. 27); November 16-17, 1983 (Item No. 18); December 15, 1986 (Item No. 17); February 16-17, 1987 (Item No. 16); April 21-22, 1987 (Item No. 16); September 26-27, 1988 (Item No. 14); October 26-27, 1989 (Item No. 25; July 16-17, 1990 (Item No. 11); July 21, 1992 (Item No. 8); November 30, 1993 (Item No. 12); November 19, 1998 (Item No. 14); May 19, 1999 (Item No. 16); October 20, 1999 (Item No. 17); May 21, 2003 (Item No. 36); September 16, 2003 (Item No. 13); May 17, 2005 (Item No. 13); November 13, 2007 (Item No. 14); December 13, 2007 (Item No. 11); November 8, 2011 (Item No. 18); and December 13, 2022.(Item No. 2A) |
| IV | 4 | September 15, 1977 (Item No. 31); November 17, 1983 (Item No. 18); November 19, 1998 (Item No. 14); May 19, 1999 (Item No. 16); October 20, 1999 (Item No. 17); May 21, 2003 (Item No. 36); May 17, 2005 (Item No. 13); November 13, 2007(Item No. 14); December 13, 2007 (Item No. 11); November 8, 2011(Item No. 18); and December 13, 2022 (Item No. 2A). |
| IV | 9 | March 23, 1989 (Item No. 22); and March 15, 2016 (Item No. 14). |
| IV | 11 | October 11, 1976 (Item No. 5); September 15, 1977 (Item No. 31); March 16, 1978 (Item No. 20); November 16-17, 1983 (Item No. 18); and November 19, 1998 (Item No. 14). |
| IV | 13 | March 15, 2016 (Item No. 14). |

| **Article** | **Section** | **Date of Trustees' Meeting (Minute Item No.)** |
|---|---|---|
| IV | 14 | September 15, 1977 (Item No. 31); November 16-17, 1983 (Item No. 18); November 19, 1998 (Item No. 14); May 19, 1999 (Item No. 16); October 20, 1999 (Item No. 17); May 21, 2003 (Item No. 36); November 13, 2007 (Item No. 14); December 13, 2007 (Item No. 11); November 8, 2011 (Item No. 18); and December 13, 2022 (Item No. 2A). |
| IV | 15 | March 18-19, 1980 (Item 41). |
| IV | 16 | March 15, 2016 (Item No. 14). |
| IV | 17 | March 23, 1989 (Item No. 22); and March 15, 2016 (Item No. 14). |
| IV | 20 | December 19, 1997 (Item No. 36); September 21, 2006 (Item No. 8); and March 15, 2016 (Item No. 14); and September 14, 2021 (Item No. 34). |
| IV | 21 | March 15, 2016 (Item No. 14). |
| V | 2 | October 11, 1976 (Item No. 5); September 17, 1977 (Item No. 31); November 16-17, 1983 (Item No. 18); March 23, 1989 (Item No. 22); November 19, 1998 (Item No. 14); September 21, 2006 (Item No. 8); and March 15, 2016 (Item No. 14). |
| V | 3 | September 15, 1977 (Item No. 31; November 16-17, 1983 (Item No. 18); and November 19, 1998 (Item No. 14). |
| VI | 2 | September 19, 1979 (Item No. 60); July 14, 1998 (Item No. 8); and December 13, 2007 (Item No. 8). |
| VI | 3 | June 19-21, 1980 (Item No. 23); July 14, 1998 (Item No. 8); and December 13, 2007 Item No. 8). |

| Article | Section | Date of Trustees' Meeting (Minute Item No.) |
|---|---|---|
| VI | 6 | October 11, 1976 (Item No. 5). |
| VI | 7 | October 11, 1976 (Item No. 5); November 16, 1976 (Item Nos. 28 and 32); and January 18, 2006 (Item No. 10). |
| VII | | October 11, 1976 (Item No. 5); and July 21, 1988 (Item No. 23). |
| XII | 1 | February 18-20, 1981 (Item No. 36); and March 15, 2016 (Item No. 14). |
| XII | 2 | February 18-20, 1981 (Item No. 36). |
| XII | 3 | February 18-20, 1981 (Item No. 36); and May 30, 1986 (Item No. 29). |
| XIV | 1 | December 16-17, 1980 (Item No. 81); April, 23-24, 1986 (Item No. 42); and November 20, 2002 (Item No. 11). |
| XIV | 4 | January 17-19, 1980 (Item No. 26); October 21-22, 1980 (Item No. 47); March 16-17, 1982 (Item No. 39); July 20-21, 1982 (Item No. 27); January 17-18, 1989 (Item No. 32) July 23, 1997 (Item No. 15); February 9, 2010 (Item No. 9); and March 15, 2016 (Item No. 14). |
| XIV | 7 | March 24, 1985 (Item No. 30); November 20, 2002 (Item No. 11); September 21, 2006 (Item No. 8); and March 15, 2016 (Item No. 14). |
| XIV | 8 | June 21, 1978 (Item No. 33); January 20-21, 1981 (Item No. 23); and November 8, 2011 (Item No. 18). |
| XIV | 9 | October 18-19, 1982 (Item No. 8). |
| XIV | 10 | December 10, 2003 (Item No. 8); and March 15, 2016 (Item No. 14). |

| Article | Section | Date of Trustees' Meeting (Minute Item No.) |
|---|---|---|
| XIV | 11 | September 21, 2006 (Item No. 8); and March 15, 2016 (Item No. 14). |
| XIV | 12 | September 21, 2006 (Item No. 8). |
| XVI | | March 15, 2016 (Item No. 14). |

# EXHIBIT 2

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS**
**PENSION FUND**

**BREAKDOWN OF CONTRIBUTIONS OUTSTANDING**
**AS OF NOVEMBER 23, 2026**

**MIRACLE EXPRESS INC**
**ACCOUNT NO. 6237001-0205**

| TRANS. NO. | DESCRIPTION | PRINCIPAL AMOUNT | PAYMENTS APPLIED | DATE POSTED | INT. THRU 11/23/2026 | PAYMENTS APPLIED | DATE POSTED | BALANCE DUE |
|---|---|---|---|---|---|---|---|---|
| 4604626 | Billing Rpt 2024-01 | $5,472.00 | $2,449.78 | 5/2/2025 | $891.53 | $29.83 | 3/11/2024 | **$1,312.45** |
| | | | $1,833.48 | 9/16/2025 | | $50.24 | 4/11/2024 | |
| | | | | | | $48.67 | 5/13/2024 | |
| | | | | | | $36.11 | 6/5/2024 | |
| | | | | | | $78.50 | 7/25/2024 | |
| | | | | | | $40.82 | 8/20/2024 | |
| | | | | | | $4.71 | 8/23/2024 | |
| | | | | | | $59.66 | 9/30/2024 | |
| | | | | | | $25.05 | 10/16/2024 | |
| | | | | | | $45.00 | 11/15/2024 | |
| | | | | | | $26.28 | 12/3/2024 | |
| | | | | | | $35.04 | 12/27/2024 | |
| | | | | | | $44.78 | 1/27/2025 | |
| | | | | | | $49.70 | 3/3/2025 | |
| | | | | | | $51.12 | 4/8/2025 | |
| | | | | | | $4.26 | 4/11/2025 | |
| | | | | | | $19.88 | 4/25/2025 | |
| | | | | | | $9.94 | 5/2/2025 | |
| | | | | | | $108.23 | 9/16/2025 | |
| 4625142 | Billing Rpt 2024-02 | $5,472.00 | | | $1,385.61 | $34.54 | 4/11/2024 | **$6,049.01** |
| | | | | | | $48.67 | 5/13/2024 | |
| | | | | | | $36.11 | 6/5/2024 | |
| | | | | | | $78.50 | 7/25/2024 | |
| | | | | | | $40.82 | 8/20/2024 | |
| | | | | | | $4.71 | 8/23/2024 | |
| | | | | | | $59.66 | 9/30/2024 | |
| | | | | | | $25.05 | 10/16/2024 | |
| | | | | | | $45.00 | 11/15/2024 | |
| | | | | | | $26.28 | 12/3/2024 | |

| TRANS. NO. | DESCRIPTION | PRINCIPAL AMOUNT | PAYMENTS APPLIED | DATE POSTED | INT. THRU 11/23/2026 | PAYMENTS APPLIED | DATE POSTED | BALANCE DUE |
|---|---|---|---|---|---|---|---|---|
| | | | | | | $35.04 | 12/27/2024 | |
| | | | | | | $44.78 | 1/27/2025 | |
| | | | | | | $49.70 | 3/3/2025 | |
| | | | | | | $51.12 | 4/8/2025 | |
| | | | | | | $4.26 | 4/11/2025 | |
| | | | | | | $19.88 | 4/25/2025 | |
| | | | | | | $9.94 | 5/2/2025 | |
| | | | | | | $194.54 | 9/16/2025 | |
| 4639424 | Billing Rpt 2024-03 | $6,840.00 | | | $1,674.72 | $43.34 | 5/13/2024 | **$7,562.11** |
| | | | | | | $45.31 | 6/5/2024 | |
| | | | | | | $98.50 | 7/25/2024 | |
| | | | | | | $51.22 | 8/20/2024 | |
| | | | | | | $5.91 | 8/23/2024 | |
| | | | | | | $74.86 | 9/30/2024 | |
| | | | | | | $31.42 | 10/16/2024 | |
| | | | | | | $56.10 | 11/15/2024 | |
| | | | | | | $32.94 | 12/3/2024 | |
| | | | | | | $43.92 | 12/27/2024 | |
| | | | | | | $56.13 | 1/27/2025 | |
| | | | | | | $62.30 | 3/3/2025 | |
| | | | | | | $64.08 | 4/8/2025 | |
| | | | | | | $5.34 | 4/11/2025 | |
| | | | | | | $24.92 | 4/25/2025 | |
| | | | | | | $12.46 | 5/2/2025 | |
| | | | | | | $243.86 | 9/16/2025 | |
| 4652289 | Billing Rpt 2024-04 | $5,472.00 | | | $1,289.84 | $23.55 | 6/5/2024 | **$6,049.01** |
| | | | | | | $78.50 | 7/25/2024 | |
| | | | | | | $40.82 | 8/20/2024 | |
| | | | | | | $4.71 | 8/23/2024 | |
| | | | | | | $59.66 | 9/30/2024 | |
| | | | | | | $25.05 | 10/16/2024 | |
| | | | | | | $45.00 | 11/15/2024 | |
| | | | | | | $26.28 | 12/3/2024 | |
| | | | | | | $35.04 | 12/27/2024 | |
| | | | | | | $44.78 | 1/27/2025 | |
| | | | | | | $49.70 | 3/3/2025 | |
| | | | | | | $51.12 | 4/8/2025 | |
| | | | | | | $4.26 | 4/11/2025 | |

| TRANS. NO. | DESCRIPTION | PRINCIPAL AMOUNT | PAYMENTS APPLIED | DATE POSTED | INT. THRU 11/23/2026 | PAYMENTS APPLIED | DATE POSTED | BALANCE DUE |
|---|---|---|---|---|---|---|---|---|
| | | | | | | $19.88 | 4/25/2025 | |
| | | | | | | $9.94 | 5/2/2025 | |
| | | | | | | $194.54 | 9/16/2025 | |
| 4665099 | Billing Rpt 2024-05 | $5,472.00 | | | $1,241.17 | $53.38 | 7/25/2024 | **$6,049.01** |
| | | | | | | $40.82 | 8/20/2024 | |
| | | | | | | $4.71 | 8/23/2024 | |
| | | | | | | $59.66 | 9/30/2024 | |
| | | | | | | $25.05 | 10/16/2024 | |
| | | | | | | $45.00 | 11/15/2024 | |
| | | | | | | $26.28 | 12/3/2024 | |
| | | | | | | $35.04 | 12/27/2024 | |
| | | | | | | $44.78 | 1/27/2025 | |
| | | | | | | $49.70 | 3/3/2025 | |
| | | | | | | $51.12 | 4/8/2025 | |
| | | | | | | $4.26 | 4/11/2025 | |
| | | | | | | $19.88 | 4/25/2025 | |
| | | | | | | $9.94 | 5/2/2025 | |
| | | | | | | $194.54 | 9/16/2025 | |
| 4677381 | Billing Rpt 2024-06 | $6,840.00 | | | $1,495.45 | $7.88 | 7/25/2024 | **$7,562.11** |
| | | | | | | $51.22 | 8/20/2024 | |
| | | | | | | $5.91 | 8/23/2024 | |
| | | | | | | $74.86 | 9/30/2024 | |
| | | | | | | $31.42 | 10/16/2024 | |
| | | | | | | $56.10 | 11/15/2024 | |
| | | | | | | $32.94 | 12/3/2024 | |
| | | | | | | $43.92 | 12/27/2024 | |
| | | | | | | $56.13 | 1/27/2025 | |
| | | | | | | $62.30 | 3/3/2025 | |
| | | | | | | $64.08 | 4/8/2025 | |
| | | | | | | $5.34 | 4/11/2025 | |
| | | | | | | $24.92 | 4/25/2025 | |
| | | | | | | $12.46 | 5/2/2025 | |
| | | | | | | $243.86 | 9/16/2025 | |
| 4690764 | Billing Rpt 2024-07 | $5,472.00 | | | $1,145.40 | $62.80 | 9/30/2024 | **$6,049.01** |
| | | | | | | $25.05 | 10/16/2024 | |
| | | | | | | $45.00 | 11/15/2024 | |
| | | | | | | $26.28 | 12/3/2024 | |

| TRANS. NO. | DESCRIPTION | PRINCIPAL AMOUNT | PAYMENTS APPLIED | DATE POSTED | INT. THRU 11/23/2026 | PAYMENTS APPLIED | DATE POSTED | BALANCE DUE |
|---|---|---|---|---|---|---|---|---|
| | | | | | | $35.04 | 12/27/2024 | |
| | | | | | | $44.78 | 1/27/2025 | |
| | | | | | | $49.70 | 3/3/2025 | |
| | | | | | | $51.12 | 4/8/2025 | |
| | | | | | | $4.26 | 4/11/2025 | |
| | | | | | | $19.88 | 4/25/2025 | |
| | | | | | | $9.94 | 5/2/2025 | |
| | | | | | | $194.54 | 9/16/2025 | |
| 4703817 | Billing Rpt 2024-08 | $6,840.00 | | | $1,373.31 | $17.73 | 9/30/2024 | **$7,562.11** |
| | | | | | | $31.42 | 10/16/2024 | |
| | | | | | | $56.10 | 11/15/2024 | |
| | | | | | | $32.94 | 12/3/2024 | |
| | | | | | | $43.92 | 12/27/2024 | |
| | | | | | | $56.13 | 1/27/2025 | |
| | | | | | | $62.30 | 3/3/2025 | |
| | | | | | | $64.08 | 4/8/2025 | |
| | | | | | | $5.34 | 4/11/2025 | |
| | | | | | | $24.92 | 4/25/2025 | |
| | | | | | | $12.46 | 5/2/2025 | |
| | | | | | | $243.86 | 9/16/2025 | |
| 4717272 | Billing Rpt 2024-09 | $5,472.00 | | | $1,050.05 | $37.50 | 11/15/2024 | **$6,049.01** |
| | | | | | | $26.28 | 12/3/2024 | |
| | | | | | | $35.04 | 12/27/2024 | |
| | | | | | | $44.78 | 1/27/2025 | |
| | | | | | | $49.70 | 3/3/2025 | |
| | | | | | | $51.12 | 4/8/2025 | |
| | | | | | | $4.26 | 4/11/2025 | |
| | | | | | | $19.88 | 4/25/2025 | |
| | | | | | | $9.94 | 5/2/2025 | |
| | | | | | | $194.54 | 9/16/2025 | |
| 4727441 | Billing Rpt 2024-10 | $5,335.20 | | | $981.49 | $17.16 | 12/3/2024 | **$5,898.88** |
| | | | | | | $34.32 | 12/27/2024 | |
| | | | | | | $43.85 | 1/27/2025 | |
| | | | | | | $48.65 | 3/3/2025 | |
| | | | | | | $50.04 | 4/8/2025 | |
| | | | | | | $4.17 | 4/11/2025 | |
| | | | | | | $19.46 | 4/25/2025 | |

| TRANS. NO. | DESCRIPTION | PRINCIPAL AMOUNT | PAYMENTS APPLIED | DATE POSTED | INT. THRU 11/23/2026 | PAYMENTS APPLIED | DATE POSTED | BALANCE DUE |
|---|---|---|---|---|---|---|---|---|
| | | | | | | $9.73 | 5/2/2025 | |
| | | | | | | $190.43 | 9/16/2025 | |
| 4743159 | Billing Rpt 2024-11 | $5,130.00 | | | $902.49 | $8.22 | 12/27/2024 | **$5,671.28** |
| | | | | | | $42.11 | 1/27/2025 | |
| | | | | | | $46.90 | 3/3/2025 | |
| | | | | | | $48.24 | 4/8/2025 | |
| | | | | | | $4.02 | 4/11/2025 | |
| | | | | | | $18.76 | 4/25/2025 | |
| | | | | | | $9.38 | 5/2/2025 | |
| | | | | | | $183.58 | 9/16/2025 | |
| 4755913 | Billing Rpt 2024-12 | $4,104.00 | | | $686.55 | $6.42 | 1/27/2025 | **$4,535.89** |
| | | | | | | $37.45 | 3/3/2025 | |
| | | | | | | $38.52 | 4/8/2025 | |
| | | | | | | $3.21 | 4/11/2025 | |
| | | | | | | $14.98 | 4/25/2025 | |
| | | | | | | $7.49 | 5/2/2025 | |
| | | | | | | $146.59 | 9/16/2025 | |
| 4781026 | Billing Rpt 2025-01 | $4,104.00 | | | $653.38 | $10.70 | 3/3/2025 | **$4,535.89** |
| | | | | | | $38.52 | 4/8/2025 | |
| | | | | | | $3.21 | 4/11/2025 | |
| | | | | | | $14.98 | 4/25/2025 | |
| | | | | | | $7.49 | 5/2/2025 | |
| | | | | | | $146.59 | 9/16/2025 | |
| 4809802 | Billing Rpt 2025-02 | $4,104.00 | | | $623.42 | $19.26 | 4/8/2025 | **$4,535.89** |
| | | | | | | $3.21 | 4/11/2025 | |
| | | | | | | $14.98 | 4/25/2025 | |
| | | | | | | $7.49 | 5/2/2025 | |
| | | | | | | $146.59 | 9/16/2025 | |
| 4822964 | Billing Rpt 2025-03 | $5,130.00 | | | $739.60 | $5.36 | 4/25/2025 | **$5,671.28** |
| | | | | | | $9.38 | 5/2/2025 | |
| | | | | | | $183.58 | 9/16/2025 | |
| 4836319 | Billing Rpt 2025-04 | $4,104.00 | | | $558.15 | $126.26 | 9/16/2025 | **$4,535.89** |
| 4848503 | Billing Rpt 2025-05 | $5,130.00 | | | $657.86 | $116.58 | 9/16/2025 | **$5,671.28** |

| TRANS. NO. | DESCRIPTION | PRINCIPAL AMOUNT | | PAYMENTS APPLIED | DATE POSTED | INT. THRU 11/23/2026 | PAYMENTS APPLIED | DATE POSTED | BALANCE DUE |
|---|---|---|---|---|---|---|---|---|---|
| 4842703 | NSF Fee | $25.00 | | $25.00 | 9/16/2025 | | | | **$0.00** |
| 4862327 | Billing Rpt 2025-06 | $4,104.00 | | | | $492.88 | $60.99 | 9/16/2025 | **$4,535.89** |
| 4875508 | Billing Rpt 2025-07 | $4,104.00 | | | | $459.71 | $27.82 | 9/16/2025 | **$4,535.89** |
| 4888917 | Billing Rpt 2025-08 | $5,130.00 | | | | $534.58 | | | **$5,664.58** |
| 4902641 | Billing Rpt 2025-09 | $4,104.00 | ** | | | $394.62 | | | **$4,498.62** |
| | **TOTALS** | **$144,629.20** | | **$40,977.26** | | **$24,030.38** | **$13,147.23** | | **$114,535.09** |
| | | PRIN BAL | | $103,651.94 | | INT BAL | $10,883.15 | | |

# EXHIBIT 3

| | HEALTH FUND | PENSION FUND | TOTAL |
|---|---|---|---|
| Historic Delinquency | $566,028.46 | $264,231.49 | $830,259.95 |
| Less Payments | ($67,357.60) | ($54,537.10) | ($121,894.70) |
| Interest * | $13,199.16 | $21,010.61 | $34,209.77 |
| Event of Default Balance | $511,870.02 | $230,705.00 | $742,575.02 |

* - Interest was calculated on the Settlement Payment (as defined in the 2018 Agreement) through 9/11/19, which is 10 days after Miracle's failure to pay the full $5,000 payment that was due by 9/1/26 (the "Event of Default").

# EXHIBIT 4

**MIRACLE EXPRESS**
**INTEREST ON THE DELINQUENT CONTRIBUTIONS - 2018 AGREEEMENT (PENSION)**
**09/11/19 - 11/23/26**

| DATE | PRINCIPAL | MONTH INTEREST | ACCUMULATED INTEREST |
|---|---|---|---|
| Sep-19 | $230,705.00 | $948.10 | $948.10 |
| Oct-19 | $230,705.00 | $1,469.56 | $2,417.66 |
| Nov-19 | $230,705.00 | $1,422.15 | $3,839.82 |
| Dec-19 | $230,705.00 | $1,469.56 | $5,309.38 |
| Jan-20 | $230,705.00 | $1,469.56 | $6,778.93 |
| Feb-20 | $230,705.00 | $1,327.34 | $8,106.28 |
| Mar-20 | $230,705.00 | $1,469.56 | $9,575.84 |
| Apr-20 | $230,705.00 | $1,422.15 | $10,997.99 |
| May-20 | $230,705.00 | $1,469.56 | $12,467.55 |
| Jun-20 | $230,705.00 | $1,422.15 | $13,889.71 |
| Jul-20 | $230,705.00 | $1,469.56 | $15,359.26 |
| Aug-20 | $230,705.00 | $1,469.56 | $16,828.82 |
| Sep-20 | $230,705.00 | $1,422.15 | $18,250.98 |
| Oct-20 | $230,705.00 | $1,469.56 | $19,720.54 |
| Nov-20 | $230,705.00 | $1,422.15 | $21,142.69 |
| Dec-20 | $230,705.00 | $1,469.56 | $22,612.25 |
| Jan-21 | $230,705.00 | $1,469.56 | $24,081.81 |
| Feb-21 | $230,705.00 | $1,327.34 | $25,409.15 |
| Mar-21 | $230,705.00 | $1,469.56 | $26,878.71 |
| Apr-21 | $230,705.00 | $1,422.15 | $28,300.87 |
| May-21 | $230,705.00 | $1,469.56 | $29,770.43 |
| Jun-21 | $230,705.00 | $1,422.15 | $31,192.58 |
| Jul-21 | $230,705.00 | $1,469.56 | $32,662.14 |
| Aug-21 | $230,705.00 | $1,469.56 | $34,131.70 |
| Sep-21 | $230,705.00 | $1,422.15 | $35,553.85 |
| Oct-21 | $230,705.00 | $1,469.56 | $37,023.41 |
| Nov-21 | $230,705.00 | $1,422.15 | $38,445.57 |
| Dec-21 | $230,705.00 | $1,469.56 | $39,915.13 |
| Jan-22 | $230,705.00 | $1,469.56 | $41,384.68 |
| Feb-22 | $230,705.00 | $1,327.34 | $42,712.03 |
| Mar-22 | $230,705.00 | $1,469.56 | $44,181.59 |
| Apr-22 | $230,705.00 | $1,422.15 | $45,603.74 |
| May-22 | $230,705.00 | $1,469.56 | $47,073.30 |
| Jun-22 | $230,705.00 | $1,422.15 | $48,495.46 |
| Jul-22 | $230,705.00 | $1,469.56 | $49,965.01 |
| Aug-22 | $230,705.00 | $1,469.56 | $51,434.57 |
| Sep-22 | $230,705.00 | $1,422.15 | $52,856.73 |
| Oct-22 | $230,705.00 | $1,616.52 | $54,473.25 |
| Nov-22 | $230,705.00 | $1,706.58 | $56,179.83 |

**MIRACLE EXPRESS**
**INTEREST ON THE DELINQUENT CONTRIBUTIONS - 2018 AGREEEMENT (PENSION)**
**09/11/19 - 11/23/26**

| DATE | PRINCIPAL | MONTH INTEREST | ACCUMULATED INTEREST |
|---|---|---|---|
| Dec-22 | $230,705.00 | $1,861.44 | $58,041.27 |
| Jan-23 | $230,705.00 | $1,861.44 | $59,902.71 |
| Feb-23 | $230,705.00 | $1,725.55 | $61,628.26 |
| Mar-23 | $230,705.00 | $1,910.43 | $63,538.69 |
| Apr-23 | $230,705.00 | $1,896.21 | $65,434.90 |
| May-23 | $230,705.00 | $2,008.40 | $67,443.30 |
| Jun-23 | $230,705.00 | $1,943.61 | $69,386.91 |
| Jul-23 | $230,705.00 | $2,008.40 | $71,395.31 |
| Aug-23 | $230,705.00 | $2,057.38 | $73,452.69 |
| Sep-23 | $230,705.00 | $1,991.02 | $75,443.71 |
| Oct-23 | $230,705.00 | $2,057.38 | $77,501.09 |
| Nov-23 | $230,705.00 | $1,991.02 | $79,492.11 |
| Dec-23 | $230,705.00 | $2,057.38 | $81,549.49 |
| Jan-24 | $230,705.00 | $2,057.38 | $83,606.87 |
| Feb-24 | $230,705.00 | $1,924.65 | $85,531.52 |
| Mar-24 | $230,705.00 | $2,057.38 | $87,588.90 |
| Apr-24 | $230,705.00 | $1,991.02 | $89,579.92 |
| May-24 | $230,705.00 | $2,057.38 | $91,637.30 |
| Jun-24 | $230,705.00 | $1,991.02 | $93,628.32 |
| Jul-24 | $230,705.00 | $2,057.38 | $95,685.70 |
| Aug-24 | $230,705.00 | $2,057.38 | $97,743.08 |
| Sep-24 | $230,705.00 | $1,991.02 | $99,734.10 |
| Oct-24 | $230,705.00 | $1,959.41 | $101,693.51 |
| Nov-24 | $230,705.00 | $1,848.80 | $103,542.31 |
| Dec-24 | $230,705.00 | $1,910.43 | $105,452.74 |
| Jan-25 | $230,705.00 | $1,861.44 | $107,314.18 |
| Feb-25 | $230,705.00 | $1,681.30 | $108,995.48 |
| Mar-25 | $230,705.00 | $1,861.44 | $110,856.92 |
| Apr-25 | $230,705.00 | $1,801.40 | $112,658.32 |
| May-25 | $230,705.00 | $1,861.44 | $114,519.76 |
| Jun-25 | $230,705.00 | $1,801.40 | $116,321.16 |
| Jul-25 | $230,705.00 | $1,861.44 | $118,182.60 |
| Aug-25 | $230,705.00 | $1,861.44 | $120,044.04 |
| Sep-25 | $230,705.00 | $1,801.40 | $121,845.44 |
| Oct-25 | $230,705.00 | $1,812.46 | $123,657.90 |
| Nov-25 | $230,705.00 | $1,706.58 | $125,364.48 |
| Dec-25 | $230,705.00 | $1,714.49 | $127,078.97 |
| Jan-26 | $230,705.00 | $1,714.49 | $128,793.46 |
| Feb-26 | $230,705.00 | $1,548.57 | $130,342.03 |

**MIRACLE EXPRESS**
**INTEREST ON THE DELINQUENT CONTRIBUTIONS - 2018 AGREEEMENT (PENSION)**
**09/11/19 - 11/23/26**

| DATE | PRINCIPAL | MONTH INTEREST | ACCUMULATED INTEREST |
|---|---|---|---|
| Mar-26 | $230,705.00 | $1,714.49 | $132,056.52 |
| Apr-26 | $230,705.00 | $1,659.18 | $133,715.70 |
| May-26 | $230,705.00 | $1,714.49 | $135,430.19 |
| Jun-26 | $230,705.00 | $1,659.18 | $137,089.37 |
| Jul-26 | $230,705.00 | $1,714.49 | $138,803.86 |
| Aug-26 | $230,705.00 | $1,714.49 | $140,518.35 |
| Sep-26 | $230,705.00 | $1,659.18 | $142,177.53 |
| Oct-26 | $230,705.00 | $1,763.47 | $143,941.00 |
| Nov-26 | $230,705.00 | $1,308.38 | $145,249.38 |

# EXHIBIT 5

# TRUST AGREEMENT

## CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS
## HEALTH AND WELFARE FUND

AS AMENDED THROUGH
DECEMBER 13, 2022

**REVISED AND AMENDED TRUST AGREEMENT FOR CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND**

This **AGREEMENT** and **DECLARATION** of **TRUST**, made and entered into this 14th day of March, 1950, by and between **CENTRAL CONFERENCE OF TEAMSTERS, SOUTHERN CONFERENCE OF TEAMSTERS,** and their affiliated Local Unions, hereinafter referred to collectively as the **"UNION"**, and the **SOUTHERN MOTOR CARRIERS LABOR RELATIONS ASSOCIATION** and **MOTOR CARRIERS EMPLOYERS CONFERENCE - CENTRAL STATES**; for and on behalf of themselves, their constituent members, and such other Employers who are or may become parties hereto, hereinafter collectively referred to as the **"EMPLOYER"**, and the individual Trustees, hereinafter referred to as the **"TRUSTEES"**, selected as hereinafter described, accepting the Trust obligations herein declared:

**W I T N E S S E T H:**

**WHEREAS**, the Union and the Employer believe that it is in the best interest of the Employees of such Employer represented by the Union, and the families and dependents of such Employees, to provide for health and welfare benefits and for that purpose to establish a Trust Fund as hereinafter provided;

**WHEREAS**, the Union and the Employer have heretofore entered into collective bargaining agreements under the terms of which it is provided that the Employer shall contribute certain agreed-upon sums of money therein set forth to a Health and Welfare Fund, which shall be known as the **CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND**;

**WHEREAS**, Employee Trustees and Employer Trustees have been designated as the Trustees of the Trust in accordance with the provisions of such Agreement;

**WHEREAS**, prior to January 1, 2014 the Fund had certain obligations to provide health and welfare benefits under the plans (the "Old Plans") that included one set of provisions and eligibility rules for the active Employees and their dependents, and a separate set of provisions and eligibility rules for retired Employees and their dependents;

**WHEREAS**, effective as of January 1, 2013, the Trustees have eliminated the Fund's obligations under the Old Plans to provide health and welfare benefits to retired Employees and their dependents ("Retiree Obligations")and have renamed the resulting plan the Central States, Southeast and Southwest Areas Health and Welfare Active Plan, which will provide health and welfare benefits to active Employees and will be the successor to all rights, title and interest of the Old Plans, subject to the elimination of the Old Plans' Retiree Obligations;

**WHEREAS**, effective as of January 1, 2014 the Trustees have established a new and separate employee benefit plan that will provide health and welfare benefits only to retired Employees and

their dependents, named the Central States, Southeast and Southwest Areas Health and Welfare Retiree Plan; and

**WHEREAS**, as provided in Article II of this Trust agreement, the Active Plan and the Retiree Plan hold interests in the Active Subaccount and the Retiree Subaccount, respectively, which Subaccounts have been established under the Fund.

**NOW THEREFORE**, for and in consideration of the premises and of the mutual covenants and agreements herein contained, the Union and the Employer hereby accept and adopt all of the provisions herein contained, and the Trustees declare that they will receive and hold the contributions and any other money or property which may come into their hands as Trustees (all such contributions, money and property being hereinafter referred to as "the Trust Fund"), with the powers and duties, uses, and purposes as hereinafter set forth, to-wit:

## ARTICLE I
## DEFINITION OF TERMS

**Sec. 1. Employer** - The term "Employer" as used herein shall mean any association or individual Employer who is bound by this Agreement and a) a collective bargaining agreement with the Union and/or a participation agreement and/or other written agreement requiring Employer Contributions to the Fund, or b) any employer not presently a party to such collective bargaining agreement and/or participation agreement with the Union and/or other written agreement requiring Employer Contributions to the Fund who satisfies the requirements for participation as established by the Trustees. As indicated in section 3(b) below, the term “Employer” also includes a Union but only with respect to those of its Employees that participate in the Fund.

**Sec. 2. Union** - The term "Union" as used herein shall mean those Local Unions, Joint Councils or other union organizations affiliated with the International Brotherhood of Teamsters and such other Local Unions, Joint Councils or other union organizations not affiliated with the International Brotherhood of Teamsters as the Trustees may agree upon, provided that all such determinations by the Board of Trustees shall be binding upon all participants and beneficiaries of the Fund and upon all other entities having or claiming any interest in the Fund.

**Sec. 3. Employee** - The term "Employee" as used herein shall include:

(a) All persons employed by an Employer, including an association of Employers, as herein defined, under the terms and conditions of a Collective Bargaining Agreement entered into between the Employer and a Union, as herein defined, and such other employees of the Employer as are proposed by the Employer and accepted by the Trustees pursuant to a written agreement, on whose behalf payments are required by agreement of the

Employer, including this Agreement, a participation agreement, other written agreement or by applicable law to be made to the Fund by the Employer; or

(b) All persons employed by the Union, upon being proposed by the Union and after acceptance by the Trustees; and as to such Union personnel the Union shall be considered as Employer, within the meaning of Section 1 of this Article of this Agreement solely for the purposes of Employer Contributions and shall, on behalf of such personnel, make Employer Contributions to the Trust at the times and at the rate of payment equal to that made by any other Employer who is a party to the Trust for the same benefits; or

(c) All persons employed by the Central States, Southeast and Southwest Areas Health and Welfare Fund or Central States, Southeast and Southwest Areas by the Pension Fund upon acceptance by the Trustees; and as to such Trust personnel the Trustees shall be deemed an Employer, solely for the purpose of contributions, within the meaning of this Agreement and Declaration of Trust and shall, on behalf of such personnel, make payments to the Trust at the times and at the rate of payment equal to that made by any other Employer who is a party to the Trust for the same benefits;

(d) All persons who are Trustees of Central States, Southeast and Southwest Areas Health and Welfare Fund or Central States, Southeast and Southwest Areas Pension Fund upon acceptance by the Trustees, as hereinafter defined; and on behalf of such persons who are Trustees, their employers shall make or be presently required to make contributions to the Trust at the times and at the rate of payment equal to that required by any other Employer who is a party to the Trust for the same benefits;

(e) All persons formerly employed by an Employer who are eligible to receive benefits under the Central States, Southeast and Southwest Areas Health and Welfare Fund Retiree Plan;

(f) In all instances the common law test, or the applicable statutory definition, of master-servant relationship shall control employee status;

(g) The continuation of employee status once established shall be subject to such reasonable rules as the Trustees may adopt according to law.

**Sec. 4. Trustees -** The term "Trustees" or "Board" as used herein shall mean the Trustees designated in this Agreement and Declaration of Trust, together with their successors designated and appointed in accordance with the terms of this Agreement.

**Sec. 5. Trust or Trust Fund or Fund -** The term "Trust" or "Trust Fund" or "Fund" as used herein shall refer to all property of whatever nature which shall be in said Trust created by this Agreement.

**Sec. 6. Employer Contributions -** The term "Employer Contributions" as used herein shall mean any payments of any type made by Employers to the Trust Fund herein created.

**Sec. 7. Active Plan -** The term "Active Plan" as used herein shall mean the Central States, Southeast and Southwest Areas Health and Welfare Fund Active Plan.

**Sec. 8. Retiree Plan -** The term "Retiree Plan" as used herein shall mean the Central States, Southeast and Southwest Areas Health and Welfare Fund Retiree Plan.

**Sec. 9. Plan –** The term "Plan" shall mean the Active Plan, Retiree Plan or both, as applicable.

**Sec. 10. Active Plan Subaccount –** The term "Active Plan Subaccount" as used herein shall mean the interest of the Active Plan in a separate account within the Trust Fund.

**Sec. 11. Retiree Plan Subaccount –** The term "Retiree Plan Subaccount" as used herein shall mean the interest of the Retiree Plan in a separate account within the Trust Fund.

## ARTICLE II
## CREATION OF TRUST FUND AND BOARD OF TRUSTEES

**Sec. 1. Designation -** The Union and the Employer hereby create and establish, with the Trustees herein provided for, a Trust to be known as the **Central States, Southeast and Southwest Areas Health and Welfare Fund** which shall be comprised of assets of two separate plans, the Active Plan and the Retiree Plan, derived directly or indirectly from Employer Contributions made pursuant to the collective bargaining agreement and/or participation agreement and/or this Agreement or any other written agreement requiring Employer Contributions (plus any additional sum or sums from Employer Contributions which may hereafter be agreed in writing, together with all insurance and annuity contracts (including dividends, refunds, or other sums payable to the Trustees on account of such insurance and annuity contracts) and all investments made and held by the Trustees on account of such insurance and annuity contracts, all investments made and held by the Trustees, all moneys received by the Trustees as Employer Contributions or as income from investments made and held by the Trustees or otherwise, and any other property received and held by the Trustees for the uses, purposes, and trusts set forth in this Agreement and Declaration of Trust, where any of the foregoing is derived from the Employer Contributions.

(a) The Trustees shall be designated as such and have the duties and powers described herein with respect to each of the Plans.

(b) Each reference to Trust, Trust Fund or Fund hereunder shall be deemed to refer to each of the Subaccounts independently. Each reference to "plan" or Plan herein shall be deemed to refer to each of the Plans independently.

**Sec. 2. Subaccounts -** The Trustees hereby create and establish the Active Plan Subaccount and the Retiree Plan Subaccount under the Trust Fund in which the interest held by the Active Plan and the Retiree Plan, respectively.

(a) The assets of each Plan and Subaccount shall be segregated on the books of the Trust Fund and held for the exclusive benefit of the respective Plan and its participants and beneficiaries. All transfers to, withdrawals from, and other transactions regarding the Trust Fund shall be conducted in such a way that the proportionate interest in the Trust Fund of each Plan and Subaccount and the fair market value of that interest may be determined at any time. The Subaccount of each Plan shall be debited or credited (as the case may be) (i) for the entire amount of every Employer Contribution received on behalf of that Plan, every benefit payment, or other expense attributable solely to that Plan, and every other transaction relating only to that Plan; and (ii) for its proportionate share of every item of collected or accrued income, gain or loss, and general expense in the case of commingled investments; and other transactions attributable to the Trust Fund as a whole.

(b) Amounts credited to the Active Plan Subaccount and the Retiree Plan Subaccount may be invested by the Trustees in common with the assets of each other. Income, gains and losses associated with the investment of such amounts shall be allocated proportionately to each Subaccount as determined by the Trustees.

(c) In connection with the amendment of the Active Plan to eliminate retiree benefits and the establishment of the Retiree Plan to provide such benefits, the Trustees shall cause, in accordance with Article IX hereunder such assets to be transferred from the Active Subaccount to the Retiree Subaccount as they deem appropriate.

**Sec. 3. Board of Trustees -** There is hereby created a Board of Trustees consisting of four persons representative of the Employers and four persons representative of the Employees.

The appointment of each of the four Employer Trustees that was made prior to September 16, 2009, and that is still in effect

on September 16, 2009, shall remain in effect until expiration of the term of office of such Trustee, except in the event of vacancy or removal during the term of office. In the event of a vacancy or removal occurring during a term of office in effect on September 16, 2009, the nominating authority (if applicable) and appointing authority for a Successor Trustee shall be vested in, and exercised by, the nominating authority (if applicable) and appointing authority that otherwise applies to such position upon the expiration of such term of office.

Upon expiration of the term of office of an Employer Trustee on March 31, 2010 (and on March 31 of every fifth year after each such year), the authority and responsibility to appoint such Employer Trustee to serve for a five-year term of office that will commence on April 1, 2010 (and on April 1 of every fifth year after such year) shall be vested in, and exercised by majority action by, the other Employer Trustees then serving as Trustees, and the Successor Trustees of those Employer Trustees.

Upon expiration of the term of office of an Employer Trustee on March 31, 2011 (and on March 31 of every fifth year after each such year), The Association of Food and Dairy Retailers, Wholesalers and Manufacturers ("Food Association") shall nominate an Employer Trustee to serve for a five-year term of office that will commence on April 1, 2011 (and on April 1 of every fifth year after such year). The power to approve said nominee for appointment shall be vested in, and exercised through majority action by, the other Employer Trustees then serving as Trustees, and the Successor Trustees of those Employer Trustees. However, in the event of a vacancy (due to resignation or any other cause) in the Employer Trustee office held by the individual nominated by the Food Association at any time prior to March 31, 2016, the nominating authority of the Food Association shall be null and void, and United States Parcel Service, Inc. ("UPS") shall nominate an individual to serve as Employer Trustee for the remainder of the five-year term of office as Employer Trustee that commenced on April 1, 2011 (and April 1 of every fifth year after such year). The power to approve said nominee for appointment shall be vested in, and exercised through majority action by, the other Employer Trustees, and the Successor Trustees of those Employer Trustees.

Upon expiration of the term of office of an Employer Trustee on March 31, 2012 (and on March 31 of every fifth year after each such year), ABF Freight System, Inc. shall nominate an Employer Trustee to serve for a five-year term of office that will commence on April 1, 2012 (and on April 1 of every fifth year after such year). The power to approve said nominee for appointment shall be vested in, and exercised through majority action by, the other Employer Trustees then serving as Trustees, and the Successor Trustees of those Employer Trustees.

Upon expiration of the term of office of an Employer Trustee on March 31, 2013 (and on March 31 of every fifth year after each such year), the authority and responsibility to appoint such

Employer Trustee to serve for a five-year term of office that will commence on April 1, 2013 (and on April 1 of every fifth year after such year) shall be vested in, and exercised by majority action by, the other Employer Trustees then serving as Trustees, and the Successor Trustees of those Employer Trustees.

The Employee Trustee shall be appointed, on behalf and as representative of the Union, by the Central Trustee Appointment Board and the Southern Trustee Appointment Board, each as appointing authority, for terms of office hereinafter specified in this Section 3 of Article II of this Agreement.

In accordance with prior amendments of this Agreement, the term of office of each Trustee is a five-year period, subject to reappointment of the same Trustee or appointment of another Trustee by the appointing entity for that Trustee position at the end of such five-year period, and also subject to appointment of a Successor Trustee pursuant to this Agreement in the event of a vacancy during a five-year term of office.

Upon expiration of the term of office of an Employee Trustee on March 31 of each of 2009, 2010 and 2012 (and on March 31 of every fifth year after each such year), the Central Trustee Appointment Board shall appoint an Employee Trustee to serve for a five-year term of office that will commence, respectively, on April 1 of 2009, 2010 and 2012 (and on April 1 of every fifth year after each such year), which appointment will be made in accordance with procedures established by the Board of Trustees. Upon expiration of the term of office of an Employee Trustee on March 31, 2011 (and on March 31 of every fifth year after 2011), the Southern Trustee Appointment Board shall appoint an Employee Trustee to serve for a five-year term of office that will commence on April 1, 2011 (and on April 1 of every fifth year after 2011), which appointment will be made in accordance with procedures established by the Board of Trustees. The authority and responsibility of the Central Trustee Appointment Board and the Southern Trustee Appointment Board, including procedures for appointment of the members of each such board and procedures for each such board’s appointment of Employee Trustees, shall be established by the Board of Trustees (with appropriate abstentions), which shall be solely authorized and responsible to determine with finality whether or not any individual has been duly appointed as a member of the Central Trustee Appointment Board or the Southern Trustee Appointment Board in accordance with such procedures, to determine with finality whether or not any Employee Trustee has been duly designated and appointed in accordance with such procedures and to determine with finality the binding interpretation and/or resolution of all questions, objections, challenges and disputes that relate to application of such procedures.

**Sec. 4. Term of Trustees** - Each Trustee shall serve until expiration of his term of office established in accordance with Section 3 of Article II of this Agreement or until, on a date prior to expiration of his term of office, he shall die, become

incapable of acting hereunder, resign, become disqualified for the position under applicable law or under Section 8 of Article XI of this Agreement, or be removed as herein provided.

**Sec. 5. Manner of Acting in Event of Deadlock -** In the event a deadlock develops between the Employer and Employee Trustees, or between the Trustees, the Trustees shall appoint a neutral party empowered to break such deadlock within a reasonable length of time. Such neutral party may be appointed in advance of any such deadlock. In the event the Trustees are unable to agree upon a neutral party, or in the event such neutral party is unable to act, either the Employer or the Employee Trustees may petition the District Court of the United States for the Northern District of Illinois, Eastern Division, for appointment of a neutral person, as provided in Section 302(c) of the Labor Management Relations Act of 1947, as amended.

**Sec. 6. Vacancy in Board of Trustees -** In case of vacancies by death, legal incapacity, resignation or otherwise of the Employer Trustees or Employee Trustees, a successor thereto shall be appointed as provided in Article II, Section 3 hereof. Any Trustee or Trustees shall have the right to resign on written notice to the remaining Trustees, and to the Executive Director; said notice shall specify the effective date of such resignation, which shall be no later than fifteen (15) days after said notice is received by the Executive Director, except that said resignation shall in any event become effective no later than appointment of, and acceptance of appointment by, a Successor Trustee, in accordance with Article II, Section 8 of this Agreement.

**Sec. 7. Removal of Trustees -** Any Employer Trustee may be removed, with cause, at any time by the entity or group that has the authority under Article II, Section 3 hereof to appoint such Employer Trustee, and, in the event of such removal of any Employer Trustee, the entity or group removing such Trustee shall appoint a Successor Trustee. Any Employee Trustee may be removed, with cause, at any time by the board (either the Central Trustee Appointment Board or the Southern Trustee Appointment Board) which, in accordance with Section 3 of Article II of this Agreement, is the appointing authority upon any vacancy in, or term expiration of, the Employee Trustee position then held by the Employee Trustee being removed. The Trustees shall also have the authority and duty to act to remove a Trustee holding office in violation of law.

**Sec. 8. Designation of Successor Trustee -** In the event of a vacancy under either Section 6 or Section 7 above, the Successor Trustee shall be designated in writing by the appointing authority, and such Successor Trustee shall accept such appointment in writing in a form satisfactory to the Trustees. The term of office of any Successor Trustee appointed during an unexpired term of his predecessor Trustee shall be the remainder of that unexpired term. Both the designation and acceptance shall be filed with the Executive Director of the Fund.

**Sec. 9. Limitation of Liability of Trustees -** No Trustee shall be liable or responsible for any acts or defaults of any co-Trustee, any other fiduciary, any party-in-interest or any other person except in accordance with applicable law.

**Sec. 10. Office of the Fund -** The sole and principal office of the Fund shall be in Chicago, Illinois, for the transaction of business of the Fund, the exact location of which is to be made known to the parties interested in such Fund. At such office, and at such other places as may be required by law, there shall be maintained all, or any of, the books and records pertaining to the Fund and its administration.

**Sec. 11. No One is Agent Without Written Authority -** No individual or person may act as agent for the Fund unless specifically authorized in writing by the Trustees. No Employer or Union nor any representative of any Employer or Union, in such capacity, is authorized to interpret the Active or Retiree Health and Welfare Plan, this Agreement, a participation agreement or other agreement with the Fund nor can any such person act as agent of the Trustees. Only the Board of Trustees is authorized to interpret the Active or Retiree Health and Welfare Plan, this Agreement, a participation agreement or other agreement with the Fund within the scope of its authority.

## ARTICLE III
## CONTRIBUTIONS AND COLLECTIONS

**Sec. 1. Amount of Contributions -** Each Employer shall remit continuing and prompt Employer Contributions to the Trust Fund as required by the applicable collective bargaining agreement, participation agreement, this Agreement and/or other written agreement to which the Employer is a party, applicable law and all rules and requirements for participation by Employers in the Fund as established and interpreted by the Trustees in accordance with their authority. The Employer shall be liable for the entire contribution amount even if the collective bargaining agreement requires the Employees to pay a portion of the contribution amount.

The Trustees are authorized to reject any collective bargaining agreement, participation agreement or other agreement and/or terminate the participation of an Employer (and all health and welfare contributions from the Employer) whenever they determine that the agreement is unlawful and/or inconsistent with any rule or requirement for participation by Employers in the Fund and/or that the Employer is engaged in one or more practices or arrangements that threaten to cause economic harm to, and/or impairment of the actuarial soundness of, the Fund (including but not limited to any arrangement in which the Employer is obligated to make health and welfare contributions to the Trust Fund on behalf of some but not all of the Employer's bargaining unit employees, and any arrangement in which the Employer is obligated to make health and welfare contributions to the Trust Fund at different contribution rates for different groups of the

Employer's Employees)and/or that continued participation by the Employer is not in the best interest of the Fund. Any such rejection and/or termination by the Trustees of a collective bargaining agreement, participation agreement or other agreement shall be effective as of the date determined by the Trustees (which effective date may be retroactive to the initial date of the term of the rejected agreement) and shall result in the termination of the affected group and all Employees of the Employer in the affected group from further participation in the Fund on and after such effective date. The rejection/termination of one or more of an Employer’s groups that participate in the Fund under this provision shall not affect the continued participation of any other group of the Employer that participates in the Fund.

Upon execution of each new or successive collective bargaining agreement, participation agreement and/or other written agreement, including but not limited to interim agreements and memoranda of understanding between the parties, each Employer shall promptly submit such contract by certified mail to the:

Contracts Department
Central States, Southeast and
Southwest Areas Health and Welfare Fund
8647 West Higgins Road
Chicago, IL 60631

Any agreement or understanding between the parties that in any way alters or affects the Employer's contribution obligation as set forth in the disclosed collective bargaining agreement, disclosed participation agreement, this Agreement or other disclosed agreement shall be submitted promptly to the Fund in the same manner as the collective bargaining agreement; any such agreement or understanding between the parties that has not been disclosed to the Fund as required by this paragraph shall not be binding on the Fund and shall not affect the terms of the disclosed agreements which alone shall be enforceable. Except as provided in this Section, Section 7 of Article III and Section 20 of Article IV, the obligation to make such contributions shall continue (and cannot be retroactively reduced or eliminated) after termination of the collective bargaining agreement until the date the Fund receives from the Employer (sent to the above address by certified mail with return receipt requested): a) a collective bargaining agreement signed by the Union and the Employer that eliminates or reduces the duty to contribute to the Fund or b) written notification that accurately indicates that negotiations with the Union have reached impasse after collective bargaining agreement termination and the Employer has lawfully implemented a proposal to withdraw from the Fund or reduce its contributions. Health and Welfare contributions shall not be required in case of strike after collective bargaining agreement termination, unless the Union and Employer mutually agree otherwise in writing.

In addition to any Employer Contributions otherwise owed to the Fund under the terms of any agreement (including, without

limitation, contributions owed under the terms of a collective bargaining agreement, participation agreement, or this agreement), contributions shall also be owed by an Employer to the Fund for any period for which the Fund must provide coverage to an individual (including, without limitation, a participant or beneficiary) under any provision of law (including, without limitation, the Patient Protection and Affordable Care Act, Public Law 111-148, as amended by the Health Care and Education Affordability Reconciliation Act of 2010, Public Law 111-152) notwithstanding the fact that such contributions would not otherwise be due under the terms of any agreement or would be contrary to the terms of such agreement(s). Such contributions shall be due and owing to the Fund at the same time and at the same rate as such contributions would be due under the applicable agreement as though the contributions were required under the terms of that agreement.

**Sec. 2. Time of Payment -** The Trustees shall, by regulation, fix the time for payment of contributions.

**Sec. 3. Receipt of Payment and Other Property of Trust -** The Trustees are hereby designated as the persons to receive the payments heretofore or hereafter made by the Employers to the Trust Fund, and the Trustees are hereby vested with all right, title and interest in and to such moneys and all interest accrued thereon, and are authorized to receive and be paid the same. The Trustees agree to receive all such payments, deposits, moneys, insurance and other assets and properties described or referred to in Article II and this Article, and to hold same in Trust hereunder for the uses and purposes of the Trust herein created.

**Sec. 4. Collections and Enforcement of Payment -** The Trustees, or such committee of the Trustees as the Board of Trustees shall appoint, or the Executive Director when directed by such committee or by the Trustees, shall have the power to demand and collect the Employer Contributions of the Employers to the Fund. Said Board of Trustees shall take such steps, including the institution and prosecution of, and intervention in, any legal proceedings as the Trustees in their discretion deem in the best interest of the Fund to effectuate the collection or preservation of Employer Contributions or other amounts which may be owed to the Trust Fund, without prejudice, however, to the rights of the Union to take whatever steps which may be deemed necessary for such purpose. The Fund shall not be required to exhaust the dispute resolution procedures set forth in any collective bargaining agreement. The Trustees are authorized to receive all Employer Contributions and apply and reapply such Employer Contributions in the best interest of the Fund. Nothing herein shall give any Employer the right to designate how any Employer Contributions shall be applied. An Employer waives any right to a jury trial in any action it brings against the Fund and/or its Trustees or in any action brought by the Fund and/or any of its Trustees against the Employer.

**Sec. 5. Production of Records -** Each Employer shall promptly furnish to the Trustees, upon reasonable demand, with access to the documents that are necessary to determine whether the Employer is in compliance with all its obligations under this Agreement and any rules of the Fund as well as any Participation Agreement, Collective Bargaining Agreement or other Agreement relating to the participation in the Fund. The records the Employer shall provide include, without limitation, payroll records (including names and last known addresses of its Employees, their Social Security numbers, the hours worked by each Employee and past industry employment history in its files), information relating to vendors (including vendor invoices and the Employer’s cash disbursement journal) and such other information as the Trustees may reasonably require in connection with the administration of the Trust. The Trustees may, by their representatives, examine the pertinent records of each Employer at the Employer's place of business whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust. All Employers shall annually furnish to the Trustees, if requested by them, a statement showing whether:

(a) the organization is a corporation and the names of all of its officers;

(b) if not a corporation, a certificate stating that it is either a partnership or an individual proprietorship and the names of the partners or the name of the individual proprietor.

The Union will comply with any reasonable request of the Trustees to examine those records of the Union which may indicate the employment record of any Employee whose status is in dispute.

**Sec. 6.** Whenever there is litigation challenging the Trustees’ exercise of their authority to reject a collective bargaining agreement, participation agreement or other agreement and/or terminate the participation of one or more of an Employer’s groups and effect the termination of all Employees of the Employer in the affected group or groups from further participation in the Fund on and after an effective date determined by the Trustees, and there is related litigation to which the Trustees (or any of the Trustees) and/or the Fund and the Employer are parties (regardless of which entity or entities commenced the litigation), the Trustees and the Fund, at the conclusion of the litigation by judgment or settlement (except by a judgment that in effect invalidates the Trustees' rejection of the collective bargaining agreement, participation agreement or other agreement and/or termination of participation), shall be entitled to recover from the Employer a payment in the amount of the attorneys' fees and litigation costs incurred by the Trustees and/or the Fund in the course of the litigation. In addition, the Employer shall be liable for any attorneys’ fees and costs in any litigation or arbitration filed by the Fund or filed by or initiated by the Employer (including declaratory judgment actions) in which the

Fund prevails, including but not limited to suits or arbitrations relating to withdrawal liability, delinquent contribution payments or contribution refunds, audit demands and any retaliation claims (including retaliation claims under §510 of ERISA). The duty imposed upon an Employer to pay fees and costs applies to a declaratory judgment action as well as a suit brought by an Employer that is dismissed for any reason with or without prejudice including cases dismissed for improper venue or lack of subject matter or personal jurisdiction. Each Employer waives any claim that the Fund or its Trustees are liable for the Employer's attorneys' fees or costs based upon 29 U.S.C. §1132(g)(2) in any litigation involving the Employer and the Fund or its Trustees.

**Sec. 7.** An Employer's obligation to contribute to the Fund will immediately cease in the event the Union loses its status as bargaining representative of the Employees through an election conducted by a government agency or a valid disclaimer of interest by the Union. In the event the Union loses its representative status through an election, the duty to contribute shall cease on the day the election results are certified by the government agency. This provision shall supersede any contrary provision in any agreement, including any collective bargaining agreement, participation agreement, this Agreement and the certification clause of the Fund's billing forms.

**Sec. 8.** The remedy of the termination of an Employer's participation set forth in Article III, Section 1 and Article IV, Section 20 is not the Fund's exclusive remedy in the event of a violation of the Fund's adverse selection rule. The Fund shall also be entitled to collect additional Employer Contributions from an Employer that violates the Fund's adverse selection rule in an amount equal to the Employer Contributions that would have been paid to the Fund but for the adverse selection rule violation.

## ARTICLE IV
## POWERS AND DUTIES OF TRUSTEES

**Sec. 1.** The Trustees shall have authority to control and manage the operation and administration of the Trust in accordance with applicable law.

**Sec. 2.** The Trustees shall hold, manage, care for, and protect the Trust Fund and collect the income therefrom and contributions thereto, except to the extent that any of these functions or responsibilities are assigned to another entity or entities pursuant to any provision of this Article.

**Sec. 3.**

(a) The Trustees appoint Northern Trust Investments, Inc. (hereinafter identified as "Northern Trust") as a Named Fiduciary of the Fund as defined in Section 402 of the Employee Retirement Income Security Act of 1974, with such rights, powers, authority, duties and

responsibilities as are stated in an agreement with such Named Fiduciary (hereinafter identified as a "Named Fiduciary Agreement"), an agreement which was entered by the Trustees with Northern Trust in September 2022, and as are stated in the Amended and Restated Consent Decree (hereinafter identified as "the Consent Decree") entered September 12, 2022, as that agreement and the Consent Decree were heretofore and are hereafter amended. The appointment of Northern Trust as a Named Fiduciary of the Fund shall remain effective until termination or resignation in accordance with the Named Fiduciary Agreement to which Northern Trust is a party.

(b) Assets of the Fund shall be managed by one or more investment managers, as defined in Section 3(38) of the Employee Retirement Income Security Act of 1974, each such investment manager to be appointed by Northern Trust.

(c) Each investment manager appointed by Northern Trust in its capacity as a Named Fiduciary of the Fund shall have the power and authority, in its sole discretion, to invest and reinvest the principal and income of the Trust Fund, delegated to it for management, in such securities, common and preferred stock, fixed income securities, mortgages, notes, real estate or other property as shall be permissible investments in accordance with applicable law and agreements, including the specific terms and conditions of its agreement as an investment manager of the Fund, and may sell or otherwise dispose of such securities or property at any time and from time to time as it determines to be in accordance with its fiduciary obligations.

(d) The Trustees are authorized to procure from such solvent insurance company or companies as they may designate, a group health, accident and life policy or policies including, in their discretion, dependent coverages; the Trustees may also purchase, lease, manage or contract for any other programs or facilities which are to be used or devoted to the general health and welfare of the Employees and their families, including, without limitation, participation in, or adoption of, privately or governmentally sponsored health programs and also including self-insurance. The amounts of such policy or policies, or purchases or programs, shall be within the discretion of the Trustees.

(e) With respect to all assets of the Fund, except those assets which are then subject to the exercise by

Northern Trust of its rights, powers, authority, duties and responsibilities as a Named Fiduciary of the Fund, the Trustees shall have the power, in their sole discretion, to invest and reinvest all or any part of the Trust Fund in such securities and other property as shall be permissible investments by them in accordance with applicable law, and may sell or otherwise dispose of such securities or other property at any time and from time to time as they determine to be in accordance with their fiduciary obligations.

(f) The overall investment policy objective of the Fund is to invest and manage the assets of the Trust Fund in a prudent and conservative yet productive manner, in order to enhance the ability of the Fund to meet its obligations to participants and beneficiaries. Subject to the overall investment policy objective of the Fund, Northern Trust shall develop the short-term and long-term investment objectives and policies of the Fund for the assets of the Fund for which it is responsible, in accordance with the Consent Decree, after consultation with the Trustees and with appropriate regard for the actuarial requirements of the Fund.

**Sec. 4.** With respect to all assets of the Fund except those assets which are then subject to the exercise by Northern Trust of its rights, powers, authority, duties and responsibilities as a Named Fiduciary of the Fund, any part of the Trust Fund which is not invested shall be deposited by the Trustees in such depository or depositories as the Trustees shall from time to time select, and any such deposit or deposits, or disbursements therefrom, shall be made in the name of the Trust in the manner designated by the Trustees and upon the signature(s) designated by the Trustees.

**Sec. 5.** The Trustees shall keep true and accurate books of account and a record of all their transactions.

**Sec. 6.** The Trustees shall engage one or more independent qualified public accountants and enrolled actuaries to perform all services required by and in accordance with applicable law and such other services as the Trustees deem necessary.

**Sec. 7.** The Trustees, to the extent permitted by applicable law, shall incur no liability in acting upon any instrument, application, notice, request, signed letter, telegram, or other paper or document believed by them to be genuine and to contain a true statement of facts, and to be signed by the proper person.

**Sec. 8.** Any Trustee, to the extent permitted by applicable law, may rely upon any instrument in writing purporting to have been signed by a majority of the Trustees as conclusive evidence

of the fact that a majority of the Trustees have taken the action stated to have been taken in such instrument.

**Sec. 9.** The Trustees are hereby authorized to formulate and promulgate any and all necessary rules and regulations which they deem necessary or desirable to facilitate the proper administration of the Trust, provided the same are not inconsistent with the terms of the Agreement, and the Articles in the Central States, Southeast and Southwest Areas Agreement creating the Health and Welfare Fund. All rules and regulations adopted by action of the Trustees for the administration of the Trust Fund shall be binding upon all parties hereto, all parties dealing with the Trust, and all persons claiming any benefits hereunder. The Trustees are vested with discretionary and final authority in adopting rules and regulations for the administration of the Trust Fund.

**Sec. 10.** Any Successor Trustee appointed in accordance with the provisions of this Agreement, upon accepting in writing the terms of this Trust, in a form satisfactory to the Trustees, shall be vested with all of the rights, powers and duties of his predecessor.

**Sec. 11.**

(a) The Trustees may assign, from time to time, various administrative matters to such committees and subcommittees of Trustees, or to such other individuals or organizations, as they may deem necessary or appropriate in their sole discretion. The Trustees may also assign and delegate, from time to time, specified trustee responsibilities to committees and subcommittees of Trustees, as they deem necessary or appropriate in their sole discretion. Committees and subcommittees of Trustees shall consist of an equal number of Employer and Employee Trustees.

(b) The Trustees may establish a Public Advisory Board consisting of four (4) persons, two (2) to be designated by a majority of the Employer Trustees and two (2) to be designated by a majority of the Employee Trustees. Such Public Advisory Board, if established, shall act solely in an advisory and consultant capacity and shall not have or exercise any fiduciary powers, responsibilities or duties. None of the members of said Board, individually or collectively, shall have or exercise any discretionary authority or discretionary control respecting management of the Fund, or have or exercise any authority or control respecting management or disposition of any assets of the Fund, or render any investment advice for any fee or other consideration, or have or exercise any discretionary authority or discretionary responsibility in the administration of the Fund. The Trustees shall establish procedures for submission of matters to the Public Advisory Board, if

established, for advice and consultation by said Board. Any payment of compensation and expenses for members of said Board shall be determined by the Trustees.

(c) The Trustees shall appoint an Executive Director, who shall, subject to the directions of the Trustees with respect thereto, be responsible to the Trustees and/or any committee thereof for coordinating the administration of the Fund's assets, office and personnel, for the coordination and administration of accounting and actuarial services, for the preparation of all reports and other documents required to be filed or issued in accordance with law, for the performance of ministerial duties in conformance therewith, and for such other duties duly assigned to him by action of the Trustees. The Executive Director shall be the custodian of the documents and other records of the Fund. To the extent this subsection is contrary to or inconsistent with any agreement between the Fund and an investment manager, in its description of authority and responsibilities of the Executive Director, this subsection shall be inapplicable.

(d) There shall exist an internal audit division of the Fund, for review of administrative expenditures, benefit disbursements and the allocation of income between investments, administration and benefits, and for such other responsibilities as may be assigned by the Executive Director.

**Sec. 12.** No party dealing with the Trustees shall be obligated:

(a) to see the application to the trust purposes, herein stated, of any money or property belonging to the Trust Fund, or

(b) to see that the terms of this Agreement have been complied with, or

(c) to inquire into the necessity or expediency of any act of the Trustees. Every instrument executed by the Trustees shall be conclusive evidence in favor of every person relying thereon:

(1) that at the time of the delivery of said instrument the Trust was in full force and effect,

(2) that the instrument was executed in accordance with the terms and conditions of this Agreement, and

(3) that the Trustees were duly authorized and empowered to execute the instrument.

**Sec. 13.** The Trustees shall, by regulation, establish rules relating to payments of Employer Contributions by Employers for Employees during periods of such Employees' illness or disability and related matters, but not contrary to applicable collective bargaining agreements.

**Sec. 14.** The Trustees are hereby empowered, in addition to such other powers as are set forth herein or conferred by law:

(a) To enter into any and all contracts and agreements for carrying out the terms of this Agreement and Declaration of Trust and for the administration of the Trust Fund, and to do all acts as they, in their discretion, may deem necessary or advisable, and such contracts and agreements and acts shall be binding and conclusive on the parties hereto and on the Employees involved.

(b) To keep property and securities registered in the names of the Trustees or in the name of any other individual or entity duly designated by the Trustees.

(c) To establish and accumulate as part of the Trust Fund a reserve or reserves, adequate, in the opinion of the Trustees and in accordance with applicable law, to carry out the purposes of such Trust.

(d) To pay out of the funds of the Trust all real and personal property taxes, income taxes, and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Trust Fund, or any money, property, or securities forming a part thereof.

(e) To do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or proper for the protection of the property held hereunder.

(f) To sell, exchange, lease, convey, mortgage or dispose of any property, whether real or personal, at any time forming a part of the Trust Fund upon such terms as they may deem proper, and to execute and deliver any and all instruments of conveyance, lease, mortgage and transfer in connection therewith, except that the powers enumerated in this subsection shall not be exercisable by the Trustees with respect to those assets of the Fund as are then subject to the exercise by any investment manager of its rights, powers, authority, duties and responsibilities as an investment manager of the Fund.

(g) To sell, exchange, lease, convey, mortgage or dispose of any property, whether real or personal, at any time forming a part of the Trust Fund upon such terms as they may deem proper, and to execute and deliver any and all instruments of conveyance, lease, mortgage and transfer

in connection therewith, except that the powers enumerated in this subsection shall not be exercisable by the Trustees with respect to those assets of the Fund as are then subject to the exercise by Northern Trust of its rights, powers, authority, duties and responsibilities as a Named Fiduciary of the Fund.

**Sec. 15.** The Trustees shall be entitled to receive reasonable compensation for services rendered, and the reimbursement of expenses properly and actually incurred, in the performance of their duties to the Fund; except that no Trustee who already receives full-time pay from an Employer or an association of Employers or from the Union shall receive compensation from the Fund, except for reimbursement of expenses properly and actually incurred.

**Sec. 16.** The Trustees shall use and apply the Trust Fund for the following purposes:

(a) To pay or provide for -

(1) the payment of all reasonable and necessary expenses of collecting the Employer Contributions and administering the affairs of this Trust, including the employment of such administrative, legal, actuarial, expert, and clerical assistance as may be reasonably necessary,

(2) the purchasing, owning or leasing of such premises as may be necessary for the operation of the affairs of the Trust, and

(3) the purchase or leasing of such materials, supplies and equipment as the Trustees, in their discretion, find necessary or appropriate to the performance of their duties.

(b) To pay or provide for the payment of health and welfare and related benefits to eligible Employees in accordance with the terms, provisions and conditions of the Health and Welfare Plan to be formulated and agreed upon hereunder by the Trustees.

**Sec. 17.** The Trustees, by majority action, shall have the power to construe the provisions of this Agreement, any participation agreement, any agreement drafted by the Fund or to which the Fund is a party and the rules and regulations of the Fund and the terms and regulations of the Active and Retiree Health and Welfare Plans; and any construction adopted by the Trustees in good faith shall be binding upon the Union, Employees and Employers. The Trustees are vested with discretionary and final authority in construing plan documents of the Health and Welfare Fund and any other agreement, rule or regulation described in this section 17.

**Sec. 18.** The Trustees, by resolution, shall provide for fidelity bonds, in such amounts as they may determine, for their employees and for the Trustees, the cost of which shall be paid by the Fund. The Trustees may purchase insurance coverage to protect the Fund from liability arising out of any error or omission of any Trustee or employee of the Trust, in accordance with applicable law, the cost of which policy shall be paid by the Fund.

**Sec. 19.** The Trustees shall provide participants and beneficiaries such information as is required by law.

**Sec. 20.** The Trustees are authorized to reject any collective bargaining agreement, participation agreement and/or terminate the participation of an Employer (and all Employer Contributions from the Employer) whenever they determine that the agreement is unlawful and/or inconsistent with any rule or requirement for participation by Employers in the Fund and/or that the Employer is engaged in one or more practices or arrangements that threaten to cause economic harm to, and/or impairment of the actuarial soundness of, the Fund (including but not limited to any arrangement in which the Employer is obligated to make Employer Contributions to the Trust Fund on behalf of some but not all of the Employer's bargaining unit employees, and any arrangement in which the Employer is obligated to make Employer Contributions to the Trust Fund at different contribution rates for different groups of the Employer's bargaining unit employees)and/or they determine that continued participation by the Employer is not in the best interest of the Fund. Any such rejection and/or termination by the Trustees of a collective bargaining agreement, participation agreement or other agreement shall be effective as of the date determined by the Trustees (which effective date may be retroactive to the initial date of the term of the rejected agreement) and shall result in the termination of the affected group and all Employees of the Employer in the affected group from further participation in the Fund on and after such effective date. The rejection/termination of one or more of an Employer’s groups that participate in the Fund under this provision shall not affect the continued participation of any other group of the Employer that participates in the Fund.

**Sec. 21.** The Trustees are granted the discretionary authority to waive enforcement/compliance of any right conferred for the benefit of the Fund by any agreement, including this Trust Agreement (and including any rule of the Fund) when they determine that the waiver is in the best interests of the Fund. Any such waiver shall not establish a course of performance or be evidence of the intent of any provision of any agreement or rule or evidence of inconsistent conduct by the Trustees or the Fund.

## ARTICLE V
## CONTROVERSIES AND DISPUTES

**Sec. 1.** In any controversy, claim, demand, suit at law, or other proceeding between any participant, beneficiary, or any

other person and the Trustees, the Trustees shall be entitled to rely upon any facts appearing in the records of the Trustees, any instruments on file with the Trustees, with the Union or with the Employers, any facts certified to the Trustees by the Union or the Employers, any facts which are of public record, and any other evidence pertinent to the issue involved.

**Sec. 2.** All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the Fund or the operation thereof, whether as to any claim for any benefits preferred by any participant, beneficiary, or any other person, or whether as to the construction of the language or meaning of the rules and regulations adopted by the Trustees or of this instrument, or as to any writing (including a collective bargaining agreement or other Union-Employer agreement in cases where the interpretation is necessary in order to determine the application of the terms of this Agreement, a participation agreement, the active or retiree plan or any other Fund document to the provisions of the collective bargaining agreement or other Union-Employer agreement), decision, instrument or accounts in connection with the operation of the Trust Fund or otherwise, shall be submitted to the Trustees, or to a committee of Trustees, and the decision of the Trustees or of such committee thereof shall be binding upon all parties or persons dealing with the Fund or claiming any benefit thereunder. The Trustees are vested with discretionary and final authority in making all such decisions, including Trustee decisions upon claims for benefits by participants and beneficiaries of the Fund and including Trustee decisions construing plan documents of the Fund. To the extent this section is contrary to or inconsistent with any agreement between the Fund and an investment manager, this section shall be inapplicable.

**Sec. 3.** The Trustees may, in their sole discretion, compromise or settle any claim or controversy in such manner as they think best, and any decision made by the Trustees in compromise or settlement of a claim or controversy, or any compromise or settlement agreement entered into by the Trustees, shall be conclusive and binding on all parties interested in this Trust. To the extent this section is contrary to or inconsistent with any agreement between the Fund and an investment manager, this section shall be inapplicable.

## ARTICLE VI
## OPERATION OF BOARD OF TRUSTEES

**Sec. 1. Officers -** The Board of Trustees shall at each meeting designate a presiding Chairman. The Chairmanship shall be rotated between the Employee Trustees and the Employer Trustees.

**Sec. 2. Quorum -** A quorum of the Trustees for the transaction of business, except as otherwise specifically provided herein, shall consist of at least four Trustees, two of whom shall be representative of the Employers and two of whom shall be representative of the Employees. A quorum of a committee shall

consist of a majority of the members thereof. Upon each matter voted upon at any meeting of the Trustees, the Employer Trustees and the Employee Trustees shall each have the same number of votes based upon the larger number of Employee or Employer Trustees in attendance, as the case may be; provided, however, that the vote or votes cast by each such Trustee shall be cast as an individual Trustee and not as a part of a block. All actions of the Trustees at meetings shall be by majority vote of those present and voting, a quorum being present. No Trustee may vote by proxy.

**Sec. 3. Records of Trustee Action -** The Trustees shall make and maintain a record of the actions of the Trustees taken at any meeting thereof. Any action, which may be taken at a meeting of the Trustees, may be taken without a meeting of the Trustees if a consent in writing, setting forth the action so taken, should be distributed to all of the Trustees and should be signed by five of the Trustees, said written consent evidencing the substance of the action of the Trustees so taken.

**Sec. 4. Reports -** All reports required by law to be signed by one or more Trustees shall be signed by all of the Trustees, provided that all of the Trustees may appoint in writing one or more of their number to sign such report on behalf of the Trustees.

**Sec. 5. Power to Act in Case of Vacancy -** No vacancy or vacancies in the Board of Trustees shall impair the power of the remaining Trustees, acting in the manner provided by this Agreement, to administer the affairs of the Trust notwithstanding the existence of such vacancy or vacancies.

**Sec. 6. Expenses -** All proper and necessary expenses incurred by any former or incumbent Trustee, including costs of defense in litigation arising out of the Trusteeship of this Fund, and also including costs incurred by any former or incumbent Trustee in providing testimony or information about administration of this Fund in any investigation, trial or other proceeding, shall be paid out of the Trust Fund, as a matter of right of any such former or incumbent Trustee, to the extent permitted by applicable law. As used in the preceding sentence, the term "costs" includes, but is not limited to, reasonable attorneys' fees.

**Sec. 7. Meetings -** Regular meetings of the Board of Trustees shall be held in the months of January, March, May, July, September and November on such days as the Trustees determine. Any two (2) Trustees may request a meeting of the Trustees at any time by notifying the Executive Director, who shall arrange the time and place thereof. Written notices of meetings may be delivered in person, by mail, or by telegram. Meetings of the Trustees may also be held at any time without notice if all the Trustees consent thereto.

## ARTICLE VII
## INCLUSION OF OTHER EMPLOYERS UNDER PLAN

**Sec. 1. Extension of Trust -** The Trustees are authorized to extend the coverage of this Agreement and Trust to other Employers and Employees as the Trustees shall agree upon, provided such parties are required to conform to the terms and conditions of the Trust and to the terms and conditions, including required contribution rates, the Trustees establish for the parties' participation.

**Sec. 2. Reciprocity Agreements -** The Trustees shall be authorized to enter into reciprocity agreements with other labor organizations and other welfare funds in which such labor organizations participate.

**Sec. 3. Merger -** The Trustees shall have the power to merge with any other fund established for similar purposes as this Fund, under terms and conditions mutually agreeable to the respective Boards of Trustees.

## ARTICLE VIII
## BENEFICIAL RIGHTS

**Sec. 1. No Right, Title, or Interest of Employers and Union –** No Employer or Union, or Employees, shall have the right, title or interest in or to the Trust Fund or any part thereof. There shall be no pro-rata or other distribution of any of the assets of the Fund as a result of any Union, Employer or Group of Employees or Employers ceasing their participation in this Fund for any purpose or reason, except as required by law.

**Sec. 2. Limitations upon Beneficial Rights of Employees -** No Employee, participant or any beneficiary of a participant shall have any right, title or interest in or to the Trust Fund or any part thereof, provided, however, that any participant who shall be covered by an insurance plan, or his beneficiaries under such plan, shall be entitled to the benefits in the forms and amounts and subject to the terms and conditions of such insurance plan and of this Trust; provided further, however, that the benefits shall be free from the interference and control of any creditor, and no benefits shall be subject to any assignment or other anticipation, nor to seizure or to sale under any legal, equitable or any other process, and in the event that any claim or benefit shall, because of any debt incurred by or resulting from any other claim or liability against any participant or beneficiary, by reason of any sale, assignment, transfer, encumbrance, anticipation or other disposition made or attempted by said participant or beneficiary, or by reason of any seizure or sale or attempted sale under any legal, equitable or other process, or in any suit or proceeding become payable, or be liable to become payable to any person other than the participant or beneficiary for whom the same is intended, as provided herein, pursuant hereto, the Trustees shall have power to withhold payment of such benefit to such participant or beneficiary until such assignment, transfer, encumbrance,

anticipation or other disposition, writ or legal process is cancelled or withdrawn in such manner as shall be satisfactory to the Trustees. Until so cancelled or withdrawn, the Trustees shall have the right to use and apply the benefits in a manner which to the Trustees may seem best, directly for the support and maintenance of such participant or beneficiary.

**Sec. 3. Optional Benefits Prohibited -** No Employee shall have the right, privilege or option to receive, instead of the benefits provided hereunder:

(a) Any part of the contributions payable by Employers under this Agreement;

(b) A cash consideration either upon termination of the plan or his withdrawal from it either voluntarily or through severance of employment with the particular Employer;

(c) The cash surrender value of any policy of insurance in lieu of the benefits provided in said policy.

## ARTICLE IX
## TERMINATION OF PLAN

**Sec. 1.** This Trust shall cease and terminate upon the happening of any one or more of the following events:

(a) In the event the Trust Fund shall be, in the opinion of the Trustees, inadequate to carry out the intent and purpose of this Agreement, or to meet the payments due or to become due under this Agreement to persons already drawing benefits.

(b) In the event there are no individuals living who can qualify as Employees hereunder.

**Sec. 2. Distribution on Termination -** In the event this Trust or any Plan is terminated or partially terminated, the Trustees are authorized and empowered to dispose of the Trust assets attributable to the terminated Plan (or portion thereof) in accordance with any plan, purpose or method conforming to the purposes of the Employee Retirement Income Security Act of 1974 and the objective of this Agreement, including but not limited transferring such funds to another employee benefit plan providing for similar benefits.

## ARTICLE X
## AMENDMENT OF AGREEMENT

**Sec. 1.** It is anticipated that in the administration of this Trust conditions may arise that are not foreseen at the time of the execution of this Agreement, and it is the intention of the parties that the power of amendment, which is hereinafter given, be exercised in order to carry out the provisions of this Trust,

among which is to pay the largest benefits possible, which are consistent with the number of members becoming and likely to become eligible for such payments, the amounts of funds which are available and which will probably become available, and the following of sound actuarial practice. Therefore, the power is given to the Trustees to amend this Agreement by majority vote, at any time and from time to time, and all parties to the Trust, and all persons claiming an interest thereunder shall be bound thereby, and no member, Employee member, beneficiary, or any other person shall have any vested interest or right in the Trust Fund or in any payment from the Trust Fund, except as provided by law. The Trustees have full authority to amend, repeal, add to, or take away any right of payment, retroactively or otherwise, that they deem proper for the preservation of this Trust; provided, however, in no event shall the Trust Fund be used for any purpose other than the purpose set forth in this Trust Agreement, and for the purposes of paying the necessary expenses incurred in the administration of this Trust. All amendments to this Agreement shall comply with the applicable sections of the then applicable Internal Revenue Code, applicable federal statutes, and the Contract Articles creating the Health and Welfare Fund.

## ARTICLE XI
## MISCELLANEOUS

**Sec. 1.** The Trustees may issue a credit, or in their sole discretion a refund, for Employer Contributions that have been paid by an Employer by mistake of fact or law (other than a mistake about plan qualification or tax-exempt status pursuant to the Internal Revenue Code) as determined by the Trustees and the request for credit is received within 10 years of the date the Fund received the mistaken payment. An Employer shall not have a right to a credit or refund of Employer Contributions received by the Fund more than ten years prior to his application therefor. The amount to be returned to the Employer, by credit or refund, is the excess of the amount contributed or paid over the amount that would have been contributed or paid had no mistake been made (this amount is the excess contribution or overpayment). Interest or earnings attributable to an excess contribution shall not be returned to the Employer, and the amount credited or returned to the Employer will be reduced by a) any losses sustained by the Fund attributable to an excess contribution and b) the amount of any benefit payments made by the Fund that would not have been made but for the excess contribution. For purposes of the previous sentence, plan-wide investment experience may be applied to the excess contribution in calculating losses. In no event shall the Employers, directly or indirectly, participate in the disposition of the Trust Fund or receive any benefits from the Trust Fund.

**Sec. 2.** The Union or the Employer may, at any time, demand of the Trustees an accounting with respect to any and all accounts upon agreement to pay necessary expenses thereof. The Trustees shall be entitled, at any time, to have a judicial settlement of their accounts and judicial determination of any questions in connection with their duties and obligations under this Trust, or

in connection with the administration or distribution thereof. Any Trustee who has resigned, been removed from office, or not been reappointed shall execute all instruments necessary to transfer the Trust Fund.

**Sec. 3.** In the event any question or dispute shall arise as to the proper person or persons to whom any payments shall be made hereunder, the Trustees may withhold such payment until an adjudication of such question or dispute, satisfactory to the Trustees, in their sole discretion, shall have been made, or the Trustees shall have been adequately indemnified against loss to their satisfaction.

**Sec. 4.** Non-payment by an Employer of any moneys due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any Employer Contributions from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as are permitted by law. The interest payable by an Employer, in accordance with the preceding sentence, shall be computed and charged to the Employer (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized rate of 7.5% (whichever is greater). Any judgment against an Employer for Employer Contributions owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid Employer Contributions. The interest rate after entry of a judgment against an Employer for contributions and/or other amounts due shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized rate of 7.5% (whichever is greater), and such interest shall be compounded annually.

**Sec. 5.** Where used in this Agreement, words in the masculine shall be read and construed as in the feminine, and words in the singular shall be read and construed as though used in the plural, in all cases where such construction would so apply.

**Sec. 6.** The Article titles are included solely for convenience and shall, in no event, be construed to affect or modify any part of the provisions of this Agreement or be construed as part thereof.

**Sec. 7.** This Agreement shall in all respects be construed according to and governed by the laws of the State of Illinois, including but not limited to the laws applicable to the rate of interest in the State of Illinois, except as such laws may be preempted by the laws and regulations of the United States. In all actions taken by the Trustees to enforce the terms of this Trust Agreement, including but not limited to actions to collect delinquent Employer Contributions from employers or to conduct audits of contributing employers' records as authorized by Article III of this Agreement, the ten-year Statute of Limitations applicable to actions on written contracts in the State of Illinois shall apply, provided that the limitations period for any such action shall not begin to accrue until the date upon which the Trustees and the Fund receive explicit written notice of the cause of action, claim and liability to which the limitations period is applicable. Each Employer shall accurately and completely report the work history of its eligible Employees and shall not report anyone who is not an Employee and shall not report any Employee for any period Employer Contributions are not due under the terms of the agreements that have been disclosed to the Fund. In the event an Employer’s reporting error (including errors of commission and omission) causes the Fund to pay benefits that are not owed under the Plan, the Employer agrees to reimburse the Fund the amount of the benefit payment plus interest at the rate set forth in Section 4 of this Article, less the amount of the erroneous contribution paid by the Employer.

**Sec. 8.** No person shall serve, or be permitted to serve, as an administrator, fiduciary, officer, trustee, custodian, counsel, agent, employee, adviser, provider of goods or services or consultant of the Fund, or as its representative in any capacity, or to serve in any capacity that involves decision making authority or custody or control of the moneys, funds or assets of the Fund, if such person has been convicted of: robbery, bribery, extortion, embezzlement, fraud, grand larceny, burglary, arson, a felony violation of Federal or State law involving substances defined in section 802(6) of title 21 of the United States Code (hereinafter referred to as the "Code"), murder, rape, kidnapping, perjury, assault with intent to kill, any crime described in section 80a-9(a)(1) of title 15 of the Code, a violation of any provision of the Employee Retirement Income Security Act of 1974, a violation of section 186 of title 29 of the Code, a violation of chapter 63 of title 18 of the Code, a violation of sections 874, 1027, 1503,1505, 1506, 1510, 1951 or 1954 of title 18 of the Code, a violation of the Labor-Management Reporting and Disclosure Act of 1959, or any felony involving abuse or misuse of such person's labor organization or employee benefit plan position or employment; or conspiracy to commit any such crimes; or attempt to commit any such crimes, or a crime in which any of the foregoing crimes is an element; or a misdemeanor involving a breach of fiduciary responsibility. Upon conviction of any of the crimes described in the preceding sentence, such person shall immediately be disqualified from serving the Fund in any capacity described in the preceding sentence, and any such service shall immediately be terminated; provided that, upon final reversal of such conviction,

such person, unless otherwise ineligible, shall thereafter be eligible to serve the Fund; and provided further that this disqualification shall continue in effect until ten (10) years after such conviction or after the end of imprisonment on such conviction, whichever is the later, unless, prior to the end of such ten-year period, in the case of a person so convicted or imprisoned, (a) his citizenship rights, having been revoked as a result of such conviction, have been fully restored, or (b) the United States Parole Commission, pursuant to applicable law, determines that such person's service would not be contrary to the best interests of the Fund.

**Sec. 9** Each Employer and Union (including former participating Employers and Unions) consents to personal jurisdiction and venue in the United States District Court for the Northern District of Illinois, Eastern Division, with respect to any suit filed by the Fund or any Trustee of the Fund in that forum of any nature (including suits involving Employer Contributions or a demand for any audit) and agrees that said forum is the most convenient forum for such suit. Any lawsuit brought by an Employer or Union or a former participating Employer or Union challenging any action or decision of the Trustees or the Fund of any nature, including but not limited to suits challenging an Employer Contribution billing, a decision to terminate the participation of an Employer (or refusal to accept an Employer or a labor agreement) or a decision with respect to a contribution refund request, must be filed only in the United States District Court for the Northern District of Illinois, Eastern Division, and it is agreed that said forum is the most convenient forum for the lawsuit. All lawsuits brought by a participant or beneficiary of the Fund (including any successor or assign of a participant or beneficiary), including without limitation claims under the terms of the Plan, the Trust Agreement, or the Employee Retirement Income Security Act of 1974, as amended, against the Plan (including without limitation claims against the Fund, "TeamCare", any Trustee, Plan administrator, Plan fiduciary, or Plan employee) shall be filed and maintained solely in the United States District Court for the Northern District of Illinois, Eastern Division.

**Sec.10.** A participating Employer and Union that contributes to the Fund shall be bound by the provisions of this Agreement and the obligations imposed by this Agreement shall survive the termination of the Employer's participation in the Fund. To the extent there is a conflict between this Agreement and any provisions of a collective bargaining agreement and/or a participation agreement and/or any other union-employer agreement, this Agreement shall control.

**Sec. 11.** An Employer shall be required to pay audit fees and audit costs if litigation is required to obtain access to any records that are requested in connection with an audit and/or if litigation is required to collect additional billings that result

from the audit. Audit fees will be calculated at the market rate for the metropolitan Chicago area.

**ARTICLE XII**
**SAVINGS CLAUSE**

Should any provision of this Declaration of Trust be held to be unlawful, or unlawful as to any person or instance, such fact shall not adversely effect the other provisions herein contained or the application of such provision to any other person or instance, unless such illegality shall make impossible the functioning of the Plan. No Trustee shall be held liable for any act done or performed in pursuance of any provision hereof prior to the time such act or provision shall be held unlawful by a court of competent jurisdiction.

# APPENDIX

## INDEX OF ALL AMENDMENTS TO THE TRUST AGREEMENT OF CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND ADOPTED AFTER DECEMBER 12, 1974

| Article | Section | Date of Trustees' Meeting (Minute Item No.) |
|---|---|---|
| Preamble, 3rd "Whereas" clause | | October 11, 1976 (Item No. 8). |
| Preamble "Whereas" clauses 1, 2 and 3 | | November 19, 2013 (Item No. 14). |
| I | 1 | January 20-21, 1987 (Item No. 17); and March 16, 2016 (Item No. 14). |
| I | 2 | October 11, 1976 (Item No. 8); and October 19, 1994 (Item No. 33); and September 14, 2021 (Item No. 10). |
| I | 3 | July 18, 1979 (Item No. 21); November 19, 2013 (Item No. 14); and March 16, 2016 (Item No. 14). |
| I | 5 | November 19, 2013 (Item No. 14) |
| I | 6 | March 16, 2016 (Item No. 14). |
| I | 7-11 | November 19, 2013 (Item No. 14). |
| II | 1 | November 19, 2016 (Item No. 14); and March 16, 2016 (Item No. 14). |

| Article | Section | Date of Trustees' Meeting (Minute Item No.) |
|---|---|---|
| II | 2 | October 11, 1976 (Item No. 8); February 21, 1980 (see November 23-24, 1981, Item No. 37); March 17-18, 1983 (Item No. 19); April 19-20, 1983 (Item No. 14); March 24, 1985 (Item No. 13); August 19-20, 1986 (Item No. 26); December 19, 1988 (Item No. 27); February 16, 1993 (Item No. 17); October 19, 1994 (Item No. 33); March 30, 1998 (Item No. 12); February 22, 2005 (Item No. 26); December 13, 2007 (Item No. 7); September 16, 2009 (Item No. 18); and November 19, 2013 (Item No. 14). |
| II | 3 | April 19-20, 1983 (Item No. 18); March 24, 1985 (Item No. 13); May 14, 2014 (Item No.7); November 19, Item No. 14); and March 16, 2016 (Item No. 14). |
| II | 4 | March 16, 2016 (Item No. 14) |
| II | 5 | October 11, 1976 (Item No. 8). |
| II | 6 | March 17-18, 1983 (Item No. 19); October 19, 1994 (Item No. 33); February 22, 2005 (Item No. 26); September 16, 2009 (Item No. 18); and March 16, 2016 (Item No. 14). |
| II | 7 | March 17-18, 1983 (Item No. 19); and March 16, 2016 (Item No 14). |
| II | 8 | March 16, 2016 (Item No. 14). |
| II | 10 | November 19, 2013 (Item No. 14). |
| II | 11 | March 16, 2016 (Item No. 14). |
| III | 1 | May 26-27, 1987 (Item No. 21); December 19, 1997 (Item No. 16); September 21, 2006 (Item No. 8); March 12, 2013 (Item No. 22); and March 16, 2016 (Item No. 14); and September 14, 2021 (Item No. 10). |
| III | 2 | March 16, 2016 (Item No. 14). |

| **Article** | **Section** | **Date of Trustees' Meeting (Minute Item No.)** |
|---|---|---|
| III | 4 | April 20-21, 1982 (Item No. 10); and March 16, 2016 (Item No. 14). |
| III | 5 | January 19, 2000 (Item No. 10); and September 14, 2021 (Item No. 10). |
| III | 6 | March 16, 2016 (Item No. 14); and September 14, 2021 (Item No. 10). |
| III | 7 | January 18, 2005 (Item No. 8); and March 16, 2016 (Item No. 14). |
| III | 8 | May 17, 2011 (Item No. 10); and March 16, 2016 (Item No. 14). |
| IV | 3 | January 20-21, 1987 (Item No. 16); September 16, 1993 (Item No. 13) and December 13, 2022 (Item No. 2B). |
| IV | 4 | January 20-21, 1987 (Item No. 16); September 16, 1993 (Item No. 13) and December 13, 2022 (Item No. 2B). |
| IV | 9 | March 23, 1989 (Item No. 30). |
| IV | 11 | October 11, 1976 (Item No. 8); March 16, 1978 (Item No. 19); January 20-21, 1987 (Item No. 16); and September 16, 1993 (Item No. 13). |
| IV | 13 | March 16, 2016 (Item No. 14). |
| IV | 14 | January 20-21, 1987 (Item No. 16); September 16, 1993 (Item No. 13) and December 13, 2022 (Item No. 2B). |
| IV | 15 | March 18-19, 1980 (Item No. 38). |
| IV | 16 | March 16, 2016 (Item No. 14). |
| IV | 17 | March 23, 1989 (Item No. 30); November 19, 2013 (Item No. 14); and March 16, 2016 (Item No. 14). |
| IV | 20 | December 19, 1997 (Item No. 16); September 21, 2006 (Item No. 8); and March 16, 2016 (Item No. 14) and September 14, 2021 (Item No. 10). |

| Article | Section | Date of Trustees' Meeting (Minute Item No.) |
|---|---|---|
| IV | 21 | March 16, 2016 (Item No. 14). |
| V | 2 | October 11, 1976 (Item No. 8); January 20-21, 1987 (Item No. 16); March 23, 1989 (Item No. 30); September 16, 1993 (Item No. 13); September 21, 2006 (Item No. 8); and March 16, 2016 (Item No. 14). |
| V | 3 | January 20-21, 1987 (Item No. 16); and September 16, 1993 (Item No. 13). |
| VI | 2 | July 14, 1998 (Item No. 8); and December 13, 2007 (Item No. 7). |
| VI | 3 | June 19-21, 1980 (Item No. 13); July 14, 1998 (Item No. 8); and December 13, 2007 (Item No. 7). |
| VI | 6 | October 11, 1976 (Item No. 8). |
| VI | 7 | October 11, 1976 (Item No. 8); November 16, 1976 (Item No. 15); May 20-21, 1980 (Item No. 31); January 20, 1999 (Item No. 10); and January 18, 2006 (Item No. 9). |
| VII | 1 | May 21, 2003 (Item No. 15). |
| IX | 2 | November 19, 2013 (Item No. 14) |
| X | 2 | February 18-20, 1981 (Item No. 33) ("...to authorize...the deletion of Section 2 of Article X of said trust agreement in its entirety"). |
| XI | 1 | August 19-20, 1980 (Item No. 40); December 16-17, 1980 (Item No. 66); April 23-24, 1986 (Item No. 31); November 20, 2002 (Item No. 11) and March 16, 2016 (Item No. 14). |

| Article | Section | Date of Trustees' Meeting (Minute Item No.) |
|---|---|---|
| XI | 4 | January 17-19, 1980 (Item No. 21);<br>October 21-22, 1980 (Item No. 17);<br>March 16-17, 1982 (Item No. 20);<br>July 20-21, 1982 (Item No. 27);<br>January 17-18, 1989 (Item No. 29);<br>July 23, 1997 (Item No. 4); and<br>February 9, 2010 (Item No. 9); and<br>March 16, 2016 (Item No 14). |
| XI | 7 | March 24, 1985 (Item No. 19);<br>November 20, 2002 (Item No. 11);<br>September 21, 2006 (Item No. 8); and<br>March 16, 2016 (Item No. 14). |
| XI | 8 | March 24, 1985 (Item No. 13). |
| XI | 9 | December 10, 2003 (Item No. 8); and<br>March 16, 2016 (Item No. 14); and<br>September 14, 2021 (Item No. 10). |
| XI | 10 | September 21, 2006 (Item No. 8); and<br>March 16, 2016 (Item No. 14);<br>September 14, 2021 (Item No. 10). |
| XI | 11 | September 21, 2006 (Item No. 8). |

# EXHIBIT 6

**MIRACLE EXPRESS**
**INTEREST ON THE DELINQUENT CONTRIBUTIONS - 2018 AGREEEMENT (HEALTH)**
**09/11/19 - 11/23/26**

| DATE | PRINCIPAL | MONTH INTEREST | ACCUMULATED INTEREST |
|---|---|---|---|
| Sep-19 | $511,870.02 | $2,103.58 | $2,103.58 |
| Oct-19 | $511,870.02 | $3,260.54 | $5,364.12 |
| Nov-19 | $511,870.02 | $3,155.36 | $8,519.48 |
| Dec-19 | $511,870.02 | $3,260.54 | $11,780.02 |
| Jan-20 | $511,870.02 | $3,260.54 | $15,040.56 |
| Feb-20 | $511,870.02 | $2,945.01 | $17,985.57 |
| Mar-20 | $511,870.02 | $3,260.54 | $21,246.11 |
| Apr-20 | $511,870.02 | $3,155.36 | $24,401.47 |
| May-20 | $511,870.02 | $3,260.54 | $27,662.02 |
| Jun-20 | $511,870.02 | $3,155.36 | $30,817.38 |
| Jul-20 | $511,870.02 | $3,260.54 | $34,077.92 |
| Aug-20 | $511,870.02 | $3,260.54 | $37,338.46 |
| Sep-20 | $511,870.02 | $3,155.36 | $40,493.83 |
| Oct-20 | $511,870.02 | $3,260.54 | $43,754.37 |
| Nov-20 | $511,870.02 | $3,155.36 | $46,909.73 |
| Dec-20 | $511,870.02 | $3,260.54 | $50,170.27 |
| Jan-21 | $511,870.02 | $3,260.54 | $53,430.82 |
| Feb-21 | $511,870.02 | $2,945.01 | $56,375.82 |
| Mar-21 | $511,870.02 | $3,260.54 | $59,636.36 |
| Apr-21 | $511,870.02 | $3,155.36 | $62,791.73 |
| May-21 | $511,870.02 | $3,260.54 | $66,052.27 |
| Jun-21 | $511,870.02 | $3,155.36 | $69,207.63 |
| Jul-21 | $511,870.02 | $3,260.54 | $72,468.17 |
| Aug-21 | $511,870.02 | $3,260.54 | $75,728.72 |
| Sep-21 | $511,870.02 | $3,155.36 | $78,884.08 |
| Oct-21 | $511,870.02 | $3,260.54 | $82,144.62 |
| Nov-21 | $511,870.02 | $3,155.36 | $85,299.98 |
| Dec-21 | $511,870.02 | $3,260.54 | $88,560.53 |
| Jan-22 | $511,870.02 | $3,260.54 | $91,821.07 |
| Feb-22 | $511,870.02 | $2,945.01 | $94,766.07 |
| Mar-22 | $511,870.02 | $3,260.54 | $98,026.61 |
| Apr-22 | $511,870.02 | $3,155.36 | $101,181.98 |
| May-22 | $511,870.02 | $3,260.54 | $104,442.52 |
| Jun-22 | $511,870.02 | $3,155.36 | $107,597.88 |
| Jul-22 | $511,870.02 | $3,260.54 | $110,858.42 |
| Aug-22 | $511,870.02 | $3,260.54 | $114,118.97 |
| Sep-22 | $511,870.02 | $3,155.36 | $117,274.33 |
| Oct-22 | $511,870.02 | $3,586.60 | $120,860.93 |
| Nov-22 | $511,870.02 | $3,786.44 | $124,647.37 |
| Dec-22 | $511,870.02 | $4,130.02 | $128,777.39 |
| Jan-23 | $511,870.02 | $4,130.02 | $132,907.41 |
| Feb-23 | $511,870.02 | $3,828.51 | $136,735.92 |
| Mar-23 | $511,870.02 | $4,238.70 | $140,974.62 |
| Apr-23 | $511,870.02 | $4,207.15 | $145,181.77 |

**MIRACLE EXPRESS**
**INTEREST ON THE DELINQUENT CONTRIBUTIONS - 2018 AGREEEMENT (HEALTH)**
**09/11/19 - 11/23/26**

| DATE | PRINCIPAL | MONTH INTEREST | ACCUMULATED INTEREST |
|---|---|---|---|
| May-23 | $511,870.02 | $4,456.07 | $149,637.84 |
| Jun-23 | $511,870.02 | $4,312.33 | $153,950.17 |
| Jul-23 | $511,870.02 | $4,456.07 | $158,406.24 |
| Aug-23 | $511,870.02 | $4,564.76 | $162,971.00 |
| Sep-23 | $511,870.02 | $4,417.51 | $167,388.51 |
| Oct-23 | $511,870.02 | $4,564.76 | $171,953.27 |
| Nov-23 | $511,870.02 | $4,417.51 | $176,370.78 |
| Dec-23 | $511,870.02 | $4,564.76 | $180,935.54 |
| Jan-24 | $511,870.02 | $4,564.76 | $185,500.30 |
| Feb-24 | $511,870.02 | $4,270.26 | $189,770.56 |
| Mar-24 | $511,870.02 | $4,564.76 | $194,335.32 |
| Apr-24 | $511,870.02 | $4,417.51 | $198,752.83 |
| May-24 | $511,870.02 | $4,564.76 | $203,317.59 |
| Jun-24 | $511,870.02 | $4,417.51 | $207,735.10 |
| Jul-24 | $511,870.02 | $4,564.76 | $212,299.86 |
| Aug-24 | $511,870.02 | $4,564.76 | $216,864.62 |
| Sep-24 | $511,870.02 | $4,417.51 | $221,282.13 |
| Oct-24 | $511,870.02 | $4,347.39 | $225,629.52 |
| Nov-24 | $511,870.02 | $4,101.97 | $229,731.49 |
| Dec-24 | $511,870.02 | $4,238.70 | $233,970.19 |
| Jan-25 | $511,870.02 | $4,130.02 | $238,100.21 |
| Feb-25 | $511,870.02 | $3,730.34 | $241,830.55 |
| Mar-25 | $511,870.02 | $4,130.02 | $245,960.57 |
| Apr-25 | $511,870.02 | $3,996.79 | $249,957.36 |
| May-25 | $511,870.02 | $4,130.02 | $254,087.38 |
| Jun-25 | $511,870.02 | $3,996.79 | $258,084.17 |
| Jul-25 | $511,870.02 | $4,130.02 | $262,214.19 |
| Aug-25 | $511,870.02 | $4,130.02 | $266,344.21 |
| Sep-25 | $511,870.02 | $3,996.79 | $270,341.00 |
| Oct-25 | $511,870.02 | $4,021.34 | $274,362.34 |
| Nov-25 | $511,870.02 | $3,786.44 | $278,148.78 |
| Dec-25 | $511,870.02 | $3,803.97 | $281,952.75 |
| Jan-26 | $511,870.02 | $3,803.97 | $285,756.72 |
| Feb-26 | $511,870.02 | $3,435.84 | $289,192.56 |
| Mar-26 | $511,870.02 | $3,803.97 | $292,996.53 |
| Apr-26 | $511,870.02 | $3,681.26 | $296,677.79 |
| May-26 | $511,870.02 | $3,803.97 | $300,481.76 |
| Jun-26 | $511,870.02 | $3,681.26 | $304,163.02 |
| Jul-26 | $511,870.02 | $3,803.97 | $307,966.99 |
| Aug-26 | $511,870.02 | $3,803.97 | $311,770.96 |
| Sep-26 | $511,870.02 | $3,681.26 | $315,452.22 |
| Oct-26 | $511,870.02 | $3,912.65 | $319,364.87 |
| Nov-26 | $511,870.02 | $2,902.93 | $322,267.80 |

# EXHIBIT 7

Employer Name: Miracle Express Inc
Assessment No.: 6237001-WL260023-01

Withdrawn Company: Miracle Express Inc.
Withdrawal Date: 09/28/25
Withdrawal Type: COMPLETE
1st Payment Due: 04/01/26

Assessment: $6,540,803.57
Prepayment: $0.00
Balance to Amortize: $6,540,803.57

Outstanding Principal Balance: $6,540,803.57

| Cash Application Summary | |
|---|---|
| 0.00 | - Delinquent Interest |
| 0.00 | - Amortization |
| 0.00 | - Billing Charges |
| 0.00 | - Principal |
| 0.00 | - Total Cash Applied |

| Payment No. | Payment Due Date | Payment Amount Due | Cumulative Payments Due | Payment Received Date | Amount Received | (Overage) Shortage | Delinquent Interest Rate | Delinquent Interest Charge | Delinquent Interest Received | Cumulative Delinquent Interest Due | Billing Charges | Billing Charges Received | Cumulative Billing Charges Due | Amortization Charges | Amortization Charges Received | Cumulative Amortization Charges Due | Principal Billed | Principal Received | Billed Principal Due | Cumulative Principal Received | Actual Principal Outstanding | Excess Principal Billed | Amount Billed and Outstanding |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 04/01/26 | 6,540,803.57 | 6,540,803.57 | | 0.00 | 6,540,803.57 | 0.7292% | 47,693.36 | 0.00 | 47,693.36 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,540,803.57 | 0.00 | 6,540,803.57 | 0.00 | 6,540,803.57 | 0.00 | 6,588,496.93 |
| 2 | 05/01/26 | 0.00 | 6,540,803.57 | | 0.00 | 6,588,496.93 | 0.7292% | 47,693.36 | 0.00 | 95,386.72 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,540,803.57 | 0.00 | 6,540,803.57 | 0.00 | 6,636,190.29 |
| 3 | 06/01/26 | 0.00 | 6,540,803.57 | | 0.00 | 6,636,190.29 | 0.7292% | 47,693.36 | 0.00 | 143,080.08 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,540,803.57 | 0.00 | 6,540,803.57 | 0.00 | 6,683,883.65 |
| 4 | 07/01/26 | 0.00 | 6,540,803.57 | | 0.00 | 6,683,883.65 | 0.7292% | 47,693.36 | 0.00 | 190,773.44 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,540,803.57 | 0.00 | 6,540,803.57 | 0.00 | 6,731,577.01 |
| 5 | 08/01/26 | 0.00 | 6,540,803.57 | | 0.00 | 6,731,577.01 | 0.7292% | 47,693.36 | 0.00 | 238,466.80 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,540,803.57 | 0.00 | 6,540,803.57 | 0.00 | 6,779,270.37 |
| 6 | 09/01/26 | 0.00 | 6,540,803.57 | | 0.00 | 6,779,270.37 | 0.7292% | 47,693.36 | 0.00 | 286,160.16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,540,803.57 | 0.00 | 6,540,803.57 | 0.00 | 6,826,963.73 |
| 7 | 10/01/26 | 0.00 | 6,540,803.57 | | 0.00 | 6,826,963.73 | 0.7500% | 49,056.03 | 0.00 | 335,216.19 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,540,803.57 | 0.00 | 6,540,803.57 | 0.00 | 6,876,019.76 |
| 8 | 11/01/26 | 0.00 | 6,540,803.57 | | 0.00 | 6,876,019.76 | 0.7500% | 37,609.62 | 0.00 | 372,825.81 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,540,803.57 | 0.00 | 6,540,803.57 | 0.00 | 6,913,629.38 |

Note: Delinquent interest calculated through November 23, 2026.